IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FLOYD S. BLEDSOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case. No. 16-CV-02296-DDC-GLR |
| | ) |
| JEFFERSON COUNTY, KANSAS *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF
DEFENDANT WOODS' MOTION TO DISMISS**

Defendant Jim Woods, through Assistant Attorney General Carrie A. Barney, submits this Memorandum in Support of Motion to Dismiss pursuant to District of Kansas Rule 7.6. Defendant Woods respectfully requests that all claims against him be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and qualified immunity. Defendant Woods states the following in support of his motion.

**NATURE OF THE CASE**

In late 1999, a terrible event took place. A young girl was sexually assaulted, murdered, and her body dumped in the Bledsoe family trash heap. There is a victim here and her name was Camille Arfmann. In April 2000, Floyd S. Bledsoe ("Floyd") was tried by a Jefferson County jury and convicted for the crimes committed against Camille. (¶ 86.) Floyd was sentenced to life in prison plus sixteen years. (¶ 87.) These convictions were affirmed by the Kansas Supreme Court in 2002. Plaintiff sought habeas relief from the Jefferson County Dist. Court. His writ was denied. With that denial later affirmed by the Kansas Supreme Court Plaintiff next looked to the federal courts for relief. In 2008, the U.S. Dist. Court of Kansas granted Plaintiff's petition for writ of habeas corpus pending either retrial or further federal proceedings. In 2009,

1

the Tenth Circuit Court of Appeals reversed the district court's grant of habeas relief, and Plaintiff was returned to prison to serve out his sentence.

In 2015, new technology relating to DNA uncovered evidence that semen collected from the victim's body was likely that of Plaintiff's brother, Tom Bledsoe ("Tom"). Shortly after this discovery Tom committed suicide leaving a note that indicated he was the one who "raped and killed a 14 year old girl." (¶ 92.) Based on this newly acquired evidence, Plaintiff's conviction was overturned and the case was remanded for a new trial. The Jefferson County prosecutor elected not to re-prosecute at the time, and the charges were dismissed without prejudice. As of the filing of this lawsuit, Camille Arfmann remains without justice and the case continues as an active investigation with the Kansas Bureau of Investigation ("KBI").

Plaintiff's conviction by a jury of his Jefferson County peers was affirmed numerous times by multiple courts, this, despite his repeated claims alleging prosecutorial misconduct, ineffective assistance of counsel, and fabrication of evidence. Plaintiff now brings many of these same allegations in the context of a civil lawsuit. Here, Plaintiff's claims are brought primarily pursuant to 42 U.S.C. § 1983, and seem to apply to Defendants in varying degrees with something of a shotgun approach. While it is not entirely clear how Plaintiff's attempt to "stack" defendants, with virtually nothing in the way of personal participation applies to Defendant Woods, he nonetheless asserts qualified immunity as a complete bar to the claims alleged and seeks a dismissal as a matter of law because Plaintiff fails to state a claim against him.

## STATEMENT OF FACTS

1. Jim Woods ("Woods") worked as a law enforcement officer for the KBI. (Doc. 1, Compl. ¶ 19).

2

2. In Plaintiff's Complaint, Woods is included in the definition of "KBI Defendant Officers." (Doc. 1, Compl. ¶ 19).

3. In Plaintiff's Complaint, Woods is included in the definition of "Defendant Officers." (Doc. 1, Compl. ¶ 20).

4. Woods is sued only in his individual capacity. (Doc. 1, Compl. ¶ 23).

5. Plaintiff alleges that he was wrongfully convicted of the November 1999 sexual abuse and murder of a fourteen-year-old girl named Camille Arfmann. (Doc. 1, Compl. ¶ 1).

6. Plaintiff alleges that he had an older brother, Tom, who was partially deaf and had certain intellectual limitations. (Doc. 1, Compl. ¶ 29).

7. Plaintiff alleges that the true perpetrator was his older brother, Tom. (Doc. 1, Compl. ¶ 2).

8. Plaintiff alleges that shortly after the murder, Tom confessed to the crime and turned himself in to the Jefferson County Sheriff's Department. (Doc. 1, Compl. ¶ 2).

9. Plaintiff alleges that several days after Tom's arrest, Defendant Hayes, Defendant Vanderbilt, and/or other unknown Defendants held a meeting to put into action their scheme to fabricate Tom's testimony. (Doc. 1, Compl. ¶ 49).

10. The Complaint specifically alleges that the prosecutor, Jim Vanderbilt, directly participated in and had knowledge of the scheme to fabricate Tom's testimony. (Doc. 1, Compl. ¶ 51).

11. Plaintiff alleges that, pursuant to Defendants' scheme, Tom would recant his confession and instead claim that he had run into Plaintiff on Saturday, November 6th, at a roadside intersection; that Plaintiff spontaneously confessed to the murder and provided Tom with extensive details about the crime; and that Plaintiff had persuaded Tom to take the blame

3

by threatening to expose Tom's history of viewing X-rated movies, masturbating, and attempting to have sex with a dog. (Doc. 1, Compl. ¶ 50).

12. As to Woods' personal participation, Plaintiff alleges that Woods was present when Tom, through counsel, informed those present "that Camille had been murdered and that he knew the location of her body." (Doc. 1, Compl. ¶ 37).

13. Plaintiff also alleges Woods' personal participation includes: Woods, along with others, "purposefully withheld their documentation of Tom's detailed confession." (Doc. 1, Compl. ¶ 68).

14. Plaintiff alleges that in April 2000, Plaintiff was tried in Jefferson County on charges of murder, aggravated kidnapping, and indecent liberties with a child. (Doc. 1, Compl. ¶ 86).

15. Plaintiff alleges that, based on Defendants' misconduct, he was convicted. (Doc. 1, Compl. ¶ 86).

16. Plaintiff alleges his brother, Tom Bledsoe, committed suicide and confessed to the murder of Camille Arfmann in a series of suicide notes. (Doc. 1, Compl. ¶ 92).

17. In one of Tom Bledsoe's suicide notes, addressed to "whoever cares," Tom Bledsoe stated in part: "I sent an innocent man to prison. The Jefferson County police and county attorney Jim Vanderbelt made me do it. I was told by Vanderbelt to keep my mouth shut." (Doc. 1, Compl. ¶ 92).

18. Tom Bledsoe's suicide notes do **not** implicate KBI Agents Morgan or Woods in any way. (Doc. 1, Compl. ¶ 92).

**QUESTIONS PRESENTED**

I. **Plaintiff makes only two substantive allegations involving actions by Jim Woods that indicate no wrongdoing. Is Jim Woods entitled to the protections of qualified immunity based on Plaintiff's failure to allege a clearly established constitutional violations and any personal involvement by Jim Woods?**

II. **Plaintiff fails to allege key elements of his fabrication of evidence, malicious prosecution, and conspiracy claims. Should this Court dismiss Plaintiff's claims against Jim Woods for failure to state a claim?**

III. **Does the applicable two-year statutes of limitations bar Plaintiff's claims, which accrued when he became aware that Defendants were allegedly manipulating Tom Bledsoe's recantation and implication of Plaintiff in the crimes at issue?**

**ARGUMENTS AND AUTHORITIES**

As a matter of fundamental fairness and judicial efficiency, Jim Woods should not be subjected to needless litigation on the basis of two allegations that indicate no personal involvement in constitutional violations. Qualified immunity protects all those except the plainly incompetent or those who purposefully violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The purpose of qualified immunity is to allow government employees breathing room to do their jobs reasonably without the fear of constant litigation. *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013). Qualified immunity encourages claims to "be resolved at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 233 (1991) (Stevens, J., dissenting) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

It is clear that Jim Woods' case is one in which qualified immunity should apply. In Plaintiff's Complaint, Jim Woods is mentioned specifically in only two substantive allegations:

- Later that evening, Tom, along with his lawyer, Defendant Hayes, met in a conference room at the Law Enforcement Center of the Jefferson County Sheriff's Department with Defendants Poppa, Dunnaway, Woods, and other unknown Defendants. Through Defendant Hayes, Tom informed the Defendants that Camille had been murdered and that he knew the location of her body. (Doc. 1, Compl., ¶ 37).

- For example, Defendant Jim Woods and other Defendant Officers purposefully withheld their documentation of Tom's detailed confession that he had tried to have sex with

5

Camille in his truck, that she had laughed, and that he had then shot her. (Doc. 1, Compl. ¶ 68).

These allegations fail to rise to the level of a clearly established constitutional violation and fail to indicate personal involvement of Jim Woods in a conspiracy, malicious prosecution, fabrication or withholding of evidence, or failure to intervene.

### *Motion to Dismiss Standard*

In ruling on a motion to dismiss, the Court assumes as true and all well pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a Rule 12 Motion, the complaint must contain factual assertions describing the grounds entitling the plaintiff to relief from the named defendants. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The factual assertions must be sufficient to state a claim which is plausible, not merely conceivable, on its face. *Id.*

In *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011), The 10th Circuit identified two "working principles" that underlie the *Twombly* standard. First, the Court must ignore legal conclusions, labels and formulaic recitation of the elements. *Id.* at 1214. "[A] plaintiff must offer specific factual allegations to support each claim." *Id*. Second, a plaintiff must allege facts that make his or her claim plausible: "a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Id*. (citing *Twombly*).

Plausibility depends upon the context of the Complaint. A Section 1983 plaintiff "must allege facts sufficient to show […] that the defendants plausibly violated [his] constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). This requires a plaintiff in a Section 1983 action to "make clear exactly who is alleged to have done what to whom, to provide each individual with fair

notice as to the basis of the claim against him or her, as distinguished from collective allegations against the state." *Id.* at 1250.

"When a defendant raises qualified immunity, the plaintiff must show that (1) the defendant's actions violated a constitutional or statutory right and (2) the right violated was clearly established at the time of the conduct in issue." *Martinez v. Aulepp*, No. 14-3040-CM, 2016 WL 164297, at *4 (D. Kan. Jan. 13, 2016). "This is a heavy two-part burden." *Rojas v. Anderson*, No. 12-1283, 2013 WL 3389450, at *2 (10th Cir. July 9, 2013) (quoting *Martinez v. Carr,* 479 F.3d 1292, 1294 (10th Cir.2007)). The Court, in its sound discretion, may consider these prongs in the order it chooses. *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

A "plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it; she must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Id*. (quotations omitted). The "relevant inquiry is whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007); *see also Stewart v. Beach*, 701 F.3d 1322, 1329-30 (10th Cir. 2012).

### I. Plaintiff failed to allege personal involvement or any clearly established constitutional violation by Jim Woods.

The Complaint fails to identify particular actions that Jim Woods took that show that he directly participated in the alleged due process, malicious prosecution, conspiracy to deprive unspecified constitutional rights, or failure to intervene.

> To make out viable § 1983 and *Bivens* claims *and* to overcome defendants' assertions of qualified immunity, plaintiffs here must establish that each defendant—whether by direct participation or by virtue of a policy over which he possessed supervisory responsibility—caused a violation of plaintiffs' clearly established constitutional rights, and that each defendant acted with the constitutionally requisite state of mind. Plaintiffs must do more than show that

7

>their rights "were violated" or that "defendants," as a collective and undifferentiated whole, were responsible for those violations.

*Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010)). "[I]t is particularly important" that plaintiffs "make clear exactly *who* is alleged to have done *what* to *whom*, ... as distinguished from collective allegations." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). As initial matter, there are no allegations in the Complaint that indicate Jim Woods possessed supervisory responsibility over implementation of any policy. Thus, establishing personal involvement on this basis is not a possibility.

In Counts I and II of the Complaint, Plaintiff refers to paragraphs 49-65 in support of his claims that Defendant Officers "deprived Plaintiff of his constitutional right to a fair trial by fabricating Tom's testimonial inculpation of Floyd" and "frame[d] Plaintiff for a crime he did not commit by fabricating testimonial evidence by Tom that would be used to convict Plaintiff." (Doc. 1, Compl. at 17-18, ¶¶ 106, 114). Nowhere within paragraphs 49-65 is Jim Woods mentioned specifically. Without more, Plaintiff has failed to allege direct participation by Jim Woods in the alleged fabrication of Tom Bledsoe's testimony.

With regard to Counts III and V, Plaintiff refers to paragraphs 66-84 in support of his claims that Defendant Officers "deprived Plaintiff of his constitutional right to a fair trial by withholding and suppressing exculpatory evidence and fabricating additional evidence against Plaintiff" and "deprive[d] him of his constitutional rights by maliciously causing Plaintiff's prosecution." However, Jim Woods is only specifically mentioned once within those paragraphs. Specifically, Plaintiff alleges that Jim Woods and other officers "purposefully withheld their documentation of Tom's detailed confession that he had tried to have sex with Camille in his truck, that she had laughed, and that he had then shot her." (Doc. 1, Compl. ¶ 68). However,

nowhere in the Complaint does Plaintiff allege that Jim Woods had authority or discretion to turn over such documentation. This allegation is simply insufficient to allege direct personal involvement in a due process or malicious prosecution claim.

Finally, with regard to Count VI, Plaintiff alleges that "Defendant Officers stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so." (Doc. 1, Compl. at 22, ¶ 145). At the risk of sounding like a broken record, Defendant Woods once again reiterates that Plaintiff's one substantive allegation that specifically mentions Jim Woods fails to link him to the claim that all of the Defendant Officers failed to intervene or that Jim Woods had the opportunity to do so.

With the exception of one allegation that fails to indicate that Jim Woods had authority or discretion to take the complained of actions, the Complaint fails to delineate what actions Jim Woods took "as distinguished from collective allegations." *Pahls*, 718 F.3d at 1225. Thus, this Court should dismiss Plaintiff's claims against Jim Woods on the basis of qualified immunity.

**II.    The Complaint fails to state a claim on all counts.**

Plaintiff's Complaint fails to meet the high standards of qualified immunity and *Iqbal*. He fails to plead key elements of a malicious prosecution claim—namely that Jim Woods had any malice, that Woods initiated or continued legal proceedings against Plaintiff, or that the criminal proceedings terminated in Plaintiff's favor. Likewise, Plaintiff's allegations utterly fail to connect Jim Woods to fabrication or withholding of evidence or failure to intervene. Finally, key elements of a conspiracy claim are missing from Plaintiff's Complaint—that Jim Woods was a part of any agreement to commit improper acts. For these reasons, Plaintiff's claims against Jim Woods should be dismissed for failure to state a claim.

> ### a. *Plaintiff fails to allege malicious prosecution because he does not indicate malice or any control over judicial proceedings.*

Plaintiff simply fails to allege key elements of a malicious prosecution claim against Jim Woods.

> Kansas law . . . requires a plaintiff to prove the following elements to support an action for malicious prosecution: (1) that the defendant initiated, continued, or procured criminal proceedings against the plaintiff; (2) that the defendant acted without probable cause; (3) that the defendant acted with malice-that the defendant acted for a purpose other than securing the proper adjudication of the proceedings; (4) that the proceedings terminated in favor of the plaintiff; and (5) that the plaintiff sustained damages.

*Thomas v. City of Baxter Springs, Kan.*, 369 F. Supp. 2d 1291, 1299 (D. Kan. 2005).

Plaintiff refers to no facts specifically in support of Count IV in which he claims that Defendant Officers "accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so, in violation of his rights secured by the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment." (Doc. 1, Compl. at 20, ¶ 131). As stated previously, Plaintiff only includes two substantive allegations that name Jim Woods specifically, and these allegations have no connection to the initiation, continuation, or perpetuation of judicial proceedings against Plaintiff. The two allegations do not imply that Jim Woods had any personal involvement in causing Plaintiff to be "seized and improperly subjected to judicial proceedings" as alleged in paragraph 132 of the Complaint.

Plaintiff failed to allege that Jim Woods initiated, continued, or procured criminal proceedings or that he acted with malice. As Plaintiff has pled this case against Jim Woods, it can be likened to *Arceo v. City of Junction City, Kan.*, 182 F. Supp. 2d 1062, 1088 (D. Kan. 2002), in the Court held that the key witness in the case could not "be liable for the independent decision of the prosecutor unless she made an exercise of the prosecutor's discretion impossible

10

by providing knowingly false information upon which the prosecutor based his decision." Like the witness in *Arceo*, there are no allegations in the Complaint that Jim Woods "made an exercise of the prosecutor's discretion impossible by providing knowingly false information upon which the prosecutor based his decision."

Even taken as true, the allegations that Jim Woods was present for Tom Bledsoe's confession and that Jim Woods allegedly withheld documentation of Tom's detailed confession fails to show that he provided false information to the prosecutor that took away the prosecutor's discretion. In fact, the Complaint specifically alleges that the prosecutor, Jim Vanderbilt, directly participated in and had knowledge of the above scheme to fabricate Tom's testimony. (Doc. 1, Compl. ¶ 51). Although Plaintiff pled that, in the alternative, Defendant Officers concealed the scheme from Defendant Vanderbilt, this still fails to implicate Jim Woods specifically. *See* (*Id*.). This is the case because the Complaint fails to allege that Jim Woods knowingly provided false information to Vanderbilt thereby taking away Vanderbilt's discretion to prosecute. Like in *Arceo*, this Court should hold that there are no allegations here that demonstrate that Jim Woods' behavior had any connection to the prosecutor's decision to prosecute. *See Arceo*, 182 F. Supp. 2d at 1089 ("Lueker's allegedly fraudulent behavior did not act to initiate or procure the prosecution because the prosecutor did not base his decision to prosecute on any false evidence generated by Lueker's allegedly fraudulent scheme.").

Finally, Plaintiff failed to allege that the criminal proceedings terminated in his favor as required to plead a malicious prosecution claim.

> To satisfy [this element], the plaintiff must show more than just the withdrawal or vacating of criminal charges—the plaintiff must demonstrate that the criminal proceedings were dismissed for reasons indicative of innocence, and not because of an agreement of compromise, an extension of clemency, or technical grounds having little or no relation to the accused's guilt.

11

*M.G. v. Young*, No. 15-2090, 2016 WL 3407570, at *2 (10th Cir. June 21, 2016). "Where the case is disposed of in a manner that leaves the question of the accused's innocence unresolved, there generally can be no malicious prosecution claim by the accused." *Id.* (quoting *Dobiecki v. Palacios*, 829 F.Supp. 229, 235 (N.D. Ill. 1993)). Here, the question of Plaintiff's innocence has been left unresolved. On December 8, 2015, his conviction was vacated and the Jefferson County Attorney dismissed, without prejudice, the charges against Plaintiff. (Doc. 1, Compl. ¶ 94). At this point, it is still possible for Plaintiff to be retried. Therefore, he has failed to allege that criminal proceedings terminated in his favor and a malicious prosecution claim cannot lie.

### b. *Plaintiff fails to allege fabrication of evidence or a Brady violation by Jim Woods.*

Plaintiff's failure to state a claim on these claims goes hand-in-hand with the argument above that Plaintiff failed to plead personal involvement by Jim Woods. Without specifying actions taken by Jim Woods that involve fabrication of evidence, Plaintiff inexplicably includes Jim Woods within his claims of fabrication of evidence. Under the high standard of qualified immunity, which require a delineation of who did what action, and the high standard of the *Iqbal* line of cases, which require pleading of a plausible claim, Plaintiff's allegations come nowhere close to tipping the scale from conceivability to plausibility.

As stated previously, Jim Woods' name is not mentioned in paragraphs 49-65 that Plaintiff cites in support of his Count I (Due Process: Fabrication of Tom's Testimonial Evidence Against All Defendants) or Count II (Conspiracy to Deprive Constitutional Rights by Fabrication of Tom's Testimonial Evidence Against All Defendants). This simply will not do to state a claim against Jim Woods. Both qualified immunity and *Iqbal* require a higher pleading standard that Plaintiff failed to meet here.

Moreover, Plaintiff failed to plead a *Brady* violation involving Jim Woods because the Complaint does not allege that it was within his discretion or authority to disclose the information at issue. The duty to disclose exculpatory evidence falls on the prosecuting attorney, especially where the prosecutor knew about the exculpatory evidence here. (Doc. 1, Compl. ¶¶ 49, 51).

        ***c. The Complaint fails to meet the pleading standards to demonstrate that a conspiracy involving Jim Woods is plausible.***

"[T]he rule is clear that allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Crabtree By & Through Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990). In order to meet the standard of pleading conspiracy, Plaintiff must show "specific facts demonstrating an agreement to commit the alleged improper actions." *Id*.

The Complaint relies on suicide notes left by Plaintiff's brother, Tom Bledsoe, which state in part that "I sent an innocent man to prison. The Jefferson County police and county attorney Jim Vanderbelt made me do it. I was told by Vanderbelt to keep my mouth shut." (Doc. 1, Compl. ¶ 92). Nowhere in the suicide note is Jim Woods or any KBI agent mentioned, thus demonstrating that neither Tom Bledsoe nor Plaintiff Floyd Bledsoe believe Woods was involved in any alleged conspiracy. This claim is not pled to the standard of plausibility required by *Iqbal*.

Additionally, once again Plaintiff fails to plead personal involvement by delineating the actions taken by Jim Woods as part of this alleged conspiracy. The only allegations specifically mentioning Jim Woods involve his being in a room when Tom confessed and not turning over documentation, which Plaintiff fails to allege he had authority or discretion to even turn over.

13

These two allegations do not make it plausible that Jim Woods had some agreement with other Defendants to take actions against Plaintiff and do not implicate Jim Woods in any conspiracy.

### III.     Plaintiff's claims are barred by the applicable statutes of limitations.

Because Plaintiff's claims accrued on or before April 2000, when he was convicted, and he filed this lawsuit 16 years later, his claims are barred by the applicable two-year statute of limitations. "The statute of limitations for claims under § 1983 'is drawn from the personal-injury statute of the state in which the federal district court sits.'" *Lyons v. Kyner*, No. 09–3308, 367 F. App'x. 878, *881 (10th Cir. Feb. 10, 2010) (unpublished) (quoting *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)). Kansas' two-year statute of limitations for personal injury actions would thus apply to Plaintiff's § 1983 claims. *See id.*; K.S.A. 60–513(a)(4).

Federal law applies to determine the date of accrual of a cause of action under § 1983. *Canfield v. Douglas Cty.*, 619 F. App'x 774, 777 (10th Cir. 2015). "[A] cause of action accrues and the relevant statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action . . . ." *Buck v. Utah Labor Comm'n.*, 73 F. App'x 345, 348 (10th Cir. 2003). Furthermore, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Lyons*, 367 F. App'x. at *881 (quoting *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)). More specifically, the limitations period for a conspiracy claim "runs from the occurrence of the last overt act resulting in damage to the plaintiff." *Id.* at *882 (applying the § 1985(3) conspiracy accrual standard to plaintiff's § 1983 conspiracy claim). In *Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010), the Tenth Circuit agreed with the district court judge's conclusion that the last overt act in the alleged conspiracy occurred during the trial that allegedly resulted in the unlawful judgment.

Here, the facts to support Plaintiff's claims should have become apparent when Tom recanted his confession and then somehow managed to weave a complex web of deception to explain his false confession and implicate Plaintiff in murder and sexual acts—all this despite Tom having limited intellectual faculties and being susceptible to manipulation, according to Plaintiff. The alleged facts supporting each of his claims would have accrued on or before his conviction in April 2000. *See Lyons,* 367 F. App'x at 882.

A potential conspiracy, fabrication of evidence, withholding of exculpatory evidence, and failure to intervene should have become apparent to Plaintiff when he knew that his brother, who was supposedly intellectually limited and easily manipulated, began telling what Plaintiff knew to be lies. Plaintiff would have known at the time that he did not commit the crimes he was being accused of. He would have known that no roadside meeting occurred between himself and his brother, Tom, on November 6. (Doc. 1, Compl. ¶ 50) (describing Tom's claim of a roadside meeting that occurred on November 6, 1999). Plaintiff would have known that, at that roadside meeting, he never spontaneously confessed to the murder, never provided Tom with extensive details about the crime, never persuaded Tom to take the blame by threatening to expose Tom's history of viewing X-rated movies, masturbating, and attempting to have sex with a dog. (Doc. 1, Compl. ¶ 50). Most importantly, he would have known that Tom was not capable of crafting this complex story on his own if, as Plaintiff claims, Tom was intellectually limited and easily manipulated. *See* (Doc. 1, Compl. ¶ 29) (claiming Tom was partially deaf and limited intellectually); (Doc. 1, Compl. ¶ 52) (claiming Tom was easily manipulable).

## CONCLUSION

Plaintiff's failed to allege any clearly established violation of his constitutional rights by Jim Woods. He also failed to allege Wood's personal involvement in any alleged constitutional

violation. Thus, Woods is entitled to the protections of qualified immunity. Additionally, Plaintiff's allegations utterly fail to state a claim for which relief may be granted on his malicious prosecution, fabrication of evidence, and conspiracy claims. Finally, his claims are barred by the applicable statutes of limitations. For these reasons, all claims should be dismissed as to Jim Woods.

Respectfully submitted,
OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

s/Carrie A. Barney
Carrie A. Barney, KS # 22872
Assistant Attorney General, Civil Litigation
Memorial Building, 2nd Floor
120 SW Tenth Avenue
Topeka, Kansas 66612-1597
PHONE: (785) 298-6695
FAX:     (785) 291-3767
EMAIL: carrie.barney@ag.ks.gov
*Attorney for Defendants Terry Morgan and Jim Woods*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of August, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

s/ Carrie A. Barney
Carrie A. Barney
