IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **FLOYD S. BLEDSOE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case. No. 16-CV-02296-DDC-GLR |
| | ) |
| **JEFFERSON COUNTY, KANSAS** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT MORGAN'S MOTION TO DISMISS

Defendant Terry Morgan, by and through Assistant Attorney General Carrie A. Barney, submits this Memorandum in Support of Motion to Dismiss pursuant to District of Kansas Rule 7.6. Defendant Morgan respectfully requests that all claims against him be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and qualified immunity. Defendant Morgan states the following in support of his motion.

### NATURE OF THE CASE

Plaintiff's Complaint grasps at straws in its attempt to connect retired Kansas Bureau of Investigation (KBI) Agent Terry Morgan to alleged constitutional violations regarding Plaintiff's conviction for the 1999 sexual abuse and murder of fourteen-year-old Camille Arfmann. Without alleging that Terry Morgan had any supervisory responsibility or prosecutorial discretion, Plaintiff tries to connect Terry Morgan to Plaintiff's conviction by making two innocuous allegations: (1) that Terry Morgan and other officers did not search Tom's home, and (2) that Terry Morgan collected weapons and ammunition from Tom's father. Whether or not Plaintiff has a case against other actors, this is a classic example in which qualified immunity should be

applied to protect a law enforcement officer who simply completed assigned tasks in a reasonable manner.

Plaintiff sues Morgan in his individual capacity claiming the following constitutional violations pursuant to 42 U.S.C. § 1983: a violation of his constitutional right to a fair trial caused by the alleged fabrication of evidence, conspiracy to frame Plaintiff by fabricating testimonial evidence, a violation of Plaintiff's due process rights caused by withholding of exculpatory evidence and fabrication of additional evidence, malicious prosecution, and failure to intervene.

Because Plaintiff fails to allege Morgan's personal involvement in the alleged constitutional violations and also fails to allege clearly established constitutional violations, Morgan is entitled to qualified immunity, and all claims against him should be dismissed. In addition, Plaintiff's conspiracy, fabrication of evidence, and *Brady* violation claims should be dismissed as barred by the applicable statutes of limitations because these claims accrued on or before April 2000, when Plaintiff was convicted.

## STATEMENT OF FACTS

1. Plaintiff alleges that he was wrongfully convicted of the November 1999 sexual abuse and murder of a fourteen-year-old girl named Camille Arfmann. (Doc. 75, First Amended Complaint ¶ 1).

2. Plaintiff alleges that he had an older brother, Tom, who was partially deaf and had certain intellectual limitations. (Doc. 75, First Amended Complaint ¶ 29).

3. Plaintiff alleges that the true perpetrator of this crime was his older brother, Tom. (Doc. 75, First Amended Complaint ¶ 2).

4. Plaintiff alleges that shortly after the murder, Tom confessed to the crime and turned himself in to the Jefferson County Sheriff's Department. (Doc. 75, First Amended Complaint ¶ 2).

5. Plaintiff alleges that Tom and his attorney disclosed details of the crime, led officers to Camille Arfmann's body, which had been buried on the property where Tom lived, and surrendered Tom's recently purchased gun, which had been used to shoot Arfmann. (Doc. 75, First Amended Complaint ¶ 2).

6. Plaintiff alleges that several days after Tom's arrest, Defendant Hayes, Defendant Vanderbilt, and/or other unknown Defendants held a meeting to put into action their scheme to fabricate Tom's testimony. (Doc. 75, First Amended Complaint ¶ 49).

7. Plaintiff alleges that, pursuant to Defendants' scheme, Tom Bledsoe would recant his confession and instead claim that he had run into Plaintiff on Saturday, November 6th, at a roadside intersection; that Plaintiff spontaneously confessed to the murder and provided Tom Bledsoe with extensive details about the crime; and that Plaintiff had persuaded Tom Bledsoe to take the blame by threatening to expose Tom Bledsoe's history of viewing X-rated movies, masturbating, and attempting to have sex with a dog. (Doc. 75, First Amended Complaint ¶ 53).

8. Plaintiff alleges that Defendants Hayes, Vanderbilt, and/or various Defendant Officers planned Tom's recantation before it ever occurred, constructed its false narrative, and coached Tom – who was easily manipulable – to recite it. (Doc. 75, First Amended Complaint ¶ 55).

9. Plaintiff alleges that the staged recantation by Tom Bledsoe took place on Friday, November 12th, when Floyd and Tom came in for polygraph examinations. (Doc. 75, First Amended Complaint ¶ 57).

10. Plaintiff alleges that Tom Bledsoe took the polygraph examination and specifically failed the question: "Did you kill Camille Arfmann?" (Doc. 75, First Amended Complaint ¶ 59).

11. In April 2000, Plaintiff was tried in Jefferson County on charges of murder, aggravated kidnapping, and indecent liberties with a child. (Doc. 75, First Amended Complaint ¶¶ 87 & 89).

12. Plaintiff alleges that, based on Defendants' misconduct, he was convicted. (Doc. 75, First Amended Complaint ¶ 89).

13. In 2015, Plaintiff's brother, Tom Bledsoe, committed suicide and confessed to the murder of Camille Arfmann in a series of suicide notes. (Doc. 75, First Amended Complaint ¶ 95).

14. In one of Tom Bledsoe's suicide notes, addressed to "whoever cares," Tom Bledsoe stated in part: "I sent an innocent man to prison. The Jefferson County police and county attorney Jim Vanderbelt made me do it. I was told by Vanderbelt to keep my mouth shut." (Doc. 75, First Amended Complaint ¶ 95).

15. Tom Bledsoe's suicide notes do **not** implicate or even mention KBI Agents Morgan, Woods, or Johnson in any way. (Doc. 75, First Amended Complaint ¶ 95).

16. On December 8, 2015, Plaintiff's conviction was vacated and the Jefferson County Attorney dismissed, without prejudice, the charges against Plaintiff. (Doc. 75, First Amended Complaint ¶ 97).

17. Terry Morgan worked as a law enforcement officer for the Kansas Bureau of Investigation (KBI). (Doc. 75, First Amended Complaint ¶ 19).

18. In Plaintiff's First Amended Complaint, Terry Morgan is included in the definition of "KBI Defendant Officers." (Doc. 75, First Amended Complaint ¶ 19).

19. In Plaintiff's First Amended Complaint, Terry Morgan is included in the definition of "Defendant Officers." (Doc. 75, First Amended Complaint ¶ 20).

20. Plaintiff's only allegation specific to Defendant Morgan (and not part of the "all defendants" category) states:

> In purposeful furtherance of the conspiracy, Defendant Morgan and other Defendant Officers declined to subject Tom's home – or even his room – to any rigorous forensic examination, and instead intentionally recovered such items as Tom's weapons and ammunition by permitting Tom's father to handle them and turn them over. Defendants failed to properly recover evidence from Tom's home and the vehicles he drove even though they were well aware of the importance of such evidence, and, in fact, had subjected Floyd's home and vehicle to thorough, rigorous forensic examination.

(Doc. 75, First Amended Complaint ¶ 79).

## QUESTIONS PRESENTED

I. **Whether Defendant Morgan is entitled to the protections of qualified immunity based on Plaintiff's failure to allege a clearly established constitutional violation and any personal involvement by Morgan?**

II. **Whether Plaintiff's failure to allege key elements of his fabrication of evidence, *Brady* violation, malicious prosecution, and conspiracy claims should result in this Court dismissing Plaintiff's claims against Defendant Morgan for failure to state a claim?**

III. **Whether the applicable two-year statute of limitations bars Plaintiff's claims, which accrued when he became aware that Defendants were allegedly manipulating Tom Bledsoe's recantation and implication of Plaintiff in the crimes at issue?**

## ARGUMENTS AND AUTHORITIES

As a matter of fundamental fairness and judicial efficiency, Terry Morgan should not be subjected to needless litigation on the basis of two allegations that indicate no wrongdoing on his part. Qualified immunity protects all those except the plainly incompetent or those who purposefully violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The purpose of qualified immunity is to allow government employees breathing room to do their jobs reasonably without the fear of constant litigation. *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013). Qualified immunity encourages claims to "be resolved at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 233 (1991) (Stevens, J., dissenting) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

It is clear that Defendant Morgan's case is one in which qualified immunity should apply. The only substantive allegation made against him in Plaintiff's First Amended Complaint fails to indicate any deliberate misconduct or plain incompetence, but instead only identifies a government employee doing his job in a reasonable manner. Despite amending his Complaint, Plaintiff's First Amended Complaint still only mentions Defendant Morgan four times:

- in paragraph 19, he is included in the definition of "KBI Defendant Officers";
- in paragraph 20 in which he is stacked with other defendants to be included in the definition of "Defendant Officers";
- in paragraph 76, which alleges that the way in which officers retrieved Tom's weapons and ammunition, via Tom and Floyd's father (i.e. a cooperating individual), is evidence of a purposeful conspiracy when it is contrasted with the way in which Morgan and others conducted a more rigorous forensic examination of the victim's home (i.e. Floyd's house); and

- in the prayer for relief on page 26.

It is not clearly established that declining to subject a potential suspect's home to a search or recovering weapons and ammunition from the father of the suspect is a constitutional violation. Thus, Terry Morgan is entitled to the protections of qualified immunity.

### *Motion to Dismiss Standard*

In ruling on a motion to dismiss, the Court assumes as true and all well pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a Rule 12 Motion, the complaint must contain factual assertions describing the grounds entitling the plaintiff to relief from the named defendants. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The factual assertions must be sufficient to state a claim which is plausible, not merely conceivable, on its face. *Id.*

In *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011), The 10th Circuit identified two "working principles" that underlie the *Twombly* standard. First, the Court must ignore legal conclusions, labels and formulaic recitation of the elements. *Id*. at 1214. "[A] plaintiff must offer specific factual allegations to support each claim." *Id*. Second, a plaintiff must allege facts that make his or her claim plausible: "a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Id*. (citing *Twombly*).

Plausibility depends upon the context of the Complaint. A Section 1983 plaintiff "must allege facts sufficient to show […] that the defendants plausibly violated [his] constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). This requires a plaintiff in a Section 1983 action to "make clear exactly who is alleged to have done what to whom, to provide each individual with fair

notice as to the basis of the claim against him or her, as distinguished from collective allegations against the state." *Id*. at 1250.

"When a defendant raises qualified immunity, the plaintiff must show that (1) the defendant's actions violated a constitutional or statutory right and (2) the right violated was clearly established at the time of the conduct in issue." *Martinez v. Aulepp*, No. 14-3040-CM, 2016 WL 164297, at *4 (D. Kan. Jan. 13, 2016). "This is a heavy two-part burden." *Rojas v. Anderson*, No. 12-1283, 2013 WL 3389450, at *2 (10th Cir. July 9, 2013) (quoting *Martinez v. Carr,* 479 F.3d 1292, 1294 (10th Cir.2007)). The Court, in its sound discretion, may consider these prongs in the order it chooses. *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

A "plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it; she must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Id*. (quotations omitted). The "relevant inquiry is whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007); *see also Stewart v. Beach*, 701 F.3d 1322, 1329-30 (10th Cir. 2012).

**I.   Plaintiff failed to allege personal involvement or a clearly established constitutional violation by Terry Morgan.**

The Complaint fails to identify particular actions that Terry Morgan took that show that he directly participated in the alleged due process, malicious prosecution, conspiracy to deprive unspecified constitutional rights, or failure to intervene.

> To make out viable § 1983 and *Bivens* claims *and* to overcome defendants' assertions of qualified immunity, plaintiffs here must establish that each defendant—whether by direct participation or by virtue of a policy over which he possessed supervisory responsibility—caused a violation of plaintiffs' clearly established constitutional rights, and that each defendant acted with the

constitutionally requisite state of mind. Plaintiffs must do more than show that their rights "were violated" or that "defendants," as a collective and undifferentiated whole, were responsible for those violations.

*Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010)). "[I]t is particularly important" that plaintiffs "make clear exactly *who* is alleged to have done *what* to *whom*, ... as distinguished from collective allegations." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). As an initial matter, there are no allegations in the First Amended Complaint that indicate Morgan possessed supervisory responsibility over implementation of any policy. Thus, establishing personal involvement on this basis is not a possibility.

In Counts I and II of the First Amended Complaint, Plaintiff refers to paragraphs 49-65 in support of his claims that Defendant Officers "deprived Plaintiff of his constitutional right to a fair trial by fabricating Tom's testimonial inculpation of Floyd" and "frame[d] Plaintiff for a crime he did not commit by fabricating testimonial evidence by Tom that would be used to convict Plaintiff." (Doc. 75, First Amended Complaint ¶¶ 109 & 117). Nowhere within paragraphs 49-65 is Terry Morgan mentioned specifically. Without more, Plaintiff has failed to allege direct participation by Terry Morgan in the alleged fabrication of Tom Bledsoe's testimony.

With regard to Counts III and V, Plaintiff refers to paragraphs 66-84 in support of his claims that Defendant Officers "deprived Plaintiff of his constitutional right to a fair trial by withholding and suppressing exculpatory evidence and fabricating additional evidence against Plaintiff" and "deprive[d] him of his constitutional rights by maliciously causing Plaintiff's prosecution." However, Terry Morgan is only specifically mentioned once within those

paragraphs. In particular, Plaintiff alleges in paragraph 79 that "Defendant Morgan and other Defendant Officers declined to subject Tom's home– or even his room – to any rigorous forensic examination, and instead intentionally recovered such items as Tom's weapons and ammunition by permitting Tom's father to handle them and turn them over." (Doc. 75, First Amended Complaint ¶ 79). These allegations are simply insufficient to allege direct personal involvement in a due process or malicious prosecution claim. In addition, as explained further in the subsequent section, these allegations fail to even allege a malicious prosecution claim against Terry Morgan.

Finally, with regard to Count VI, Plaintiff alleges that "one or more of the Defendant Officers stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so." (Doc. 75, First Amended Complaint ¶ 148). At the risk of sounding like a broken record, Defendant Morgan once again reiterates that Plaintiff's one substantive allegation that actually mentions him also fails to link him to the claim that one or more Defendant Officers failed to intervene or that Defendant Morgan ever had the opportunity to do so.

With the exception of one allegation indicating no misconduct, the First Amended Complaint fails to delineate what actions Terry Morgan took "as distinguished from collective allegations." *Pahls*, 718 F.3d at 1225. Thus, this Court should dismiss Plaintiff's claims against Terry Morgan on the basis of qualified immunity.

**II.     The First Amended Complaint fails to state a claim on all counts.**

Plaintiff's First Amended Complaint fails to meet the high standards of qualified immunity and *Iqbal*. He fails to plead key elements of a malicious prosecution claim—namely that Terry Morgan had any malice, that Morgan initiated or continued legal proceedings against

Plaintiff, or that the criminal proceedings terminated in Plaintiff's favor. Likewise, Plaintiff's allegations utterly fail to connect Terry Morgan to fabrication or withholding of evidence or failure to intervene. Finally, key elements of a conspiracy claim are missing from Plaintiff's First Amended Complaint—that Terry Morgan was a part of any agreement to commit improper acts. For these reasons, Plaintiff's claims against Terry Morgan should be dismissed for failure to state a claim. Plaintiff cannot simply throw Terry Morgan's name into a few allegations in hopes of maintaining a case against him nearly two decades after the events at issue were known to Plaintiff.

### a. *Plaintiff fails to allege malicious prosecution because he does not indicate malice or any control over judicial proceedings.*

Plaintiff simply fails to allege key elements of a malicious prosecution claim against Terry Morgan.

> Kansas law . . . requires a plaintiff to prove the following elements to support an action for malicious prosecution: (1) that the defendant initiated, continued, or procured criminal proceedings against the plaintiff; (2) that the defendant acted without probable cause; (3) that the defendant acted with malice-that the defendant acted for a purpose other than securing the proper adjudication of the proceedings; (4) that the proceedings terminated in favor of the plaintiff; and (5) that the plaintiff sustained damages.

*Thomas v. City of Baxter Springs, Kan.*, 369 F. Supp. 2d 1291, 1299 (D. Kan. 2005).

Plaintiff refers to no facts specifically in support of Count IV in which he claims that Defendant Officers "accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so, in violation of his rights secured by the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment." (Doc. 75, First Amended Complaint ¶ 131). As stated previously, Plaintiff only includes a single substantive allegation that names Terry Morgan specifically, and this allegation has no connection to the initiation,

continuation, or perpetuation of judicial proceedings against Plaintiff. This one substantive allegation does not imply that Terry Morgan had any personal involvement in causing Plaintiff to be "seized and improperly subjected to judicial proceedings" as alleged in paragraph 135 of the First Amended Complaint.

Plaintiff failed to allege that Terry Morgan initiated, continued, or procured criminal proceedings or that he acted with malice. As Plaintiff has pled this case against Terry Morgan, it can be likened to *Arceo v. City of Junction City, Kan*., 182 F. Supp. 2d 1062, 1088 (D. Kan. 2002), in which the Court held that the key witness in the case could not "be liable for the independent decision of the prosecutor unless she made an exercise of the prosecutor's discretion impossible by providing knowingly false information upon which the prosecutor based his decision." Like the witness in *Arceo*, there are no allegations in the First Amended Complaint that Terry Morgan "made an exercise of the prosecutor's discretion impossible by providing knowingly false information upon which the prosecutor based his decision." The allegations involving Terry Morgan do not even appear to involve any wrongdoing. Even taken as true, the allegation that Terry Morgan did not search Tom Bledsoe's home or room fails to reach the level of malice or any involvement whatsoever in the pursuit of criminal proceedings. Moreover, the allegation that the weapons and ammunition of Tom Bledsoe were recovered from his father seems to indicate a cover up or wrongdoing by Tom Bledsoe's father more than Terry Morgan or any Defendant in this case.  In fact, Plaintiff's allegation that Defendant Officers somehow violated Plaintiff's constitutional right by accepting items from a cooperating individual (Tom and Floyd's father) instead of subjecting the Father's home to the same investigation that they conducted at the victim's home (also Plaintiff's home) is absurd.  Investigation requires discretion, and it is hardly a constitutional violation to conduct a thorough inspection of the

victim's residence. Plaintiff's allegation that Morgan held malice or procured, continued, or initiated criminal proceedings in any manner because of the way in which he participated in evidence retrieval is simply without merit as a matter of law.

Like in *Arceo*, this Court should hold that there are no allegations here that demonstrate that Terry Morgan's behavior, which seems to indicate absolutely no wrongdoing, had any connection to the prosecutor's decision to prosecute. *See Arceo*, 182 F. Supp. 2d at 1089 ("Lueker's allegedly fraudulent behavior did not act to initiate or procure the prosecution because the prosecutor did not base his decision to prosecute on any false evidence generated by Lueker's allegedly fraudulent scheme.").

Finally, Plaintiff failed to allege that the criminal proceedings terminated in his favor as required to plead a malicious prosecution claim.

> To satisfy [this element], the plaintiff must show more than just the withdrawal or vacating of criminal charges—the plaintiff must demonstrate that the criminal proceedings were dismissed for reasons indicative of innocence, and not because of an agreement of compromise, an extension of clemency, or technical grounds having little or no relation to the accused's guilt.

*M.G. v. Young*, No. 15-2090, 2016 WL 3407570, at *2 (10th Cir. June 21, 2016). "Where the case is disposed of in a manner that leaves the question of the accused's innocence unresolved, there generally can be no malicious prosecution claim by the accused." *Id.* (quoting *Dobiecki v. Palacios*, 829 F.Supp. 229, 235 (N.D. Ill. 1993)).

Here, the question of Plaintiff's innocence has been left unresolved. On December 8, 2015, his conviction was vacated and the Jefferson County Attorney dismissed, without prejudice, the charges against Plaintiff. (Doc. 75, First Amended Complaint ¶ 97). At this point, it is still possible for Plaintiff to be retried. Therefore, he has failed to allege that criminal proceedings terminated in his favor and a malicious prosecution claim cannot lie.

### b. Plaintiff fails to allege fabrication or withholding of evidence or failure to intervene by Terry Morgan.

Plaintiff's failure to state a claim on these claims goes hand-in-hand with the argument above that Plaintiff failed to plead personal involvement by Terry Morgan. Without specifying actions taken by Defendant Morgan that involve fabrication of evidence or withholding of exculpatory evidence, Plaintiff inexplicably includes Terry Morgan within his claims of fabrication of evidence and a *Brady* violation. Under the high standard of qualified immunity, which require a delineation of who did what action, and the high standard of the *Iqbal* line of cases, which require pleading of a plausible claim, Plaintiff's allegations come nowhere close to tipping the scale from conceivability to plausibility.

As stated previously, Terry Morgan's name is not mentioned in paragraphs 49-65 that Plaintiff cites in support of his Count I (Due Process: Fabrication of Tom's Testimonial Evidence Against All Defendants) or Count II (Conspiracy to Deprive Constitutional Rights by Fabrication of Tom's Testimonial Evidence Against All Defendants). This simply will not do to state a claim against Terry Morgan.

Also as stated previously, Plaintiff's one substantive allegation that specifically mentions Terry Morgan fails to link him to the claim that all of the Defendant Officers failed to intervene or that Terry Morgan had the opportunity to do so as alleged in Count VI.

Both qualified immunity and *Iqbal* require a higher pleading standard that Plaintiff failed to meet here.

### c. The Complaint fails to meet the pleading standards to demonstrate that a conspiracy involving Terry Morgan is plausible.

"[T]he rule is clear that allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Crabtree*

*By & Through Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990). In order to meet the standard of pleading conspiracy, Plaintiff must show "specific facts demonstrating an agreement to commit the alleged improper actions." *Id*.

The First Amended Complaint relies on suicide notes left by Plaintiff's brother, Tom Bledsoe, which state in part that "I sent an innocent man to prison. The Jefferson County police and county attorney Jim Vanderbelt made me do it. I was told by Vanderbelt to keep my mouth shut." (Doc. 75, First Amended Complaint ¶ 95). Nowhere in the suicide note is Terry Morgan or any KBI agent mentioned, thus demonstrating that neither Tom Bledsoe nor Plaintiff Floyd Bledsoe believe Morgan was involved in any alleged conspiracy. This claim is not pled to the standard of plausibility required by *Iqbal*.

Additionally, once again Plaintiff fails to plead personal involvement by delineating the actions taken by Terry Morgan as part of this alleged conspiracy. The only allegations specifically mentioning Terry Morgan involve his and other officials not searching Tom Bledsoe's home and Terry Morgan and other officials collecting weapons and ammunition from Tom Bledsoe's father. (Doc. 75, First Amended Complaint ¶ 79). It is more plausible that Terry Morgan had no duty to search Tom Bledsoe's home as an assisting agent, was merely completing assigned tasks, and that Tom Bledsoe's father was engaging in misconduct by taking the weapons and ammunition and giving them to law enforcement officers. In any case, these two allegations do not make it plausible that Terry Morgan had some agreement with other Defendants to take actions against Plaintiff and do not implicate Terry Morgan in any conspiracy.

For these reasons, Plaintiff's claims against Terry Morgan should be dismissed for failure to state a claim.

### III. Plaintiff's claims are barred by the applicable statutes of limitations.

Because Plaintiff's claims accrued on or before April 2000, when he was convicted, and he filed this lawsuit 16 years later, his claims are barred by the applicable two-year statute of limitations. "The statute of limitations for claims under § 1983 'is drawn from the personal-injury statute of the state in which the federal district court sits.'" *Lyons v. Kyner*, No. 09–3308, 367 F. App'x. 878, *881 (10th Cir. Feb. 10, 2010) (unpublished) (quoting *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)). Kansas' two-year statute of limitations for personal injury actions would thus apply to Plaintiff's § 1983 claims. *See id.*; K.S.A. 60–513(a)(4).

Federal law applies to determine the date of accrual of a cause of action under § 1983. *Canfield v. Douglas Cty.*, 619 F. App'x 774, 777 (10th Cir. 2015). "[A] cause of action accrues and the relevant statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action . . . ." *Buck v. Utah Labor Comm'n*, 73 F. App'x 345, 348 (10th Cir. 2003). Furthermore, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Lyons*, 367 F. App'x. at *881 (quoting *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)). More specifically, the limitations period for a conspiracy claim "runs from the occurrence of the last overt act resulting in damage to the plaintiff." *Id.* at *882 (applying the § 1985(3) conspiracy accrual standard to plaintiff's § 1983 conspiracy claim). In *Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010), the Tenth Circuit agreed with the district court judge's conclusion that the last overt act in the alleged conspiracy occurred during the trial that allegedly resulted in the unlawful judgment.

Here, the facts to support Plaintiff's claims should have become apparent when Tom recanted his confession and then somehow managed to weave a complex web of deception to

explain his false confession and implicate Plaintiff in murder and sexual acts—all this despite Tom having "limited intellectual faculties" and being "susceptible to manipulation," according to Plaintiff. The alleged facts supporting each of his claims would have accrued on or before his conviction in April 2000. *See Lyons,* 367 F. App'x at 882.

A potential conspiracy, fabrication of evidence, withholding of exculpatory evidence, and failure to intervene should have become apparent to Plaintiff when he knew that his brother, who was supposedly intellectually limited and easily manipulated, began telling what Plaintiff knew to be lies. Plaintiff would have known at the time that he did not commit the crimes he was being accused of. He would have known that no roadside meeting occurred between himself and his brother, Tom, on November 6. (Doc. 75, First Amended Complaint ¶ 53) (describing Tom's claim of a roadside meeting that occurred on November 6, 1999). Plaintiff would have known that, at that roadside meeting, he never spontaneously confessed to the murder, never provided Tom with extensive details about the crime, never persuaded Tom to take the blame by threatening to expose Tom's history of viewing X-rated movies, masturbating, and attempting to have sex with a dog. (Doc. 75, First Amended Complaint ¶ 53). Most importantly, he would have known that Tom was not capable of crafting this complex story on his own if, as Plaintiff claims, Tom was intellectually limited and easily manipulated. *See* (Doc. 75, First Amended Complaint ¶¶ 29 & 55) (claiming Tom was partially deaf and limited intellectually); (Doc. 75, First Amended Complaint ¶ 55) (claiming Tom was easily manipulable).

## CONCLUSION

Plaintiff failed to allege any clearly established violation of his constitutional rights by Terry Morgan. He also failed to allege Morgan's personal involvement in any alleged constitutional violation. Thus, Morgan is entitled to the protections of qualified immunity.

Additionally, Plaintiff's allegations utterly fail to state a claim for which relief may be granted on his malicious prosecution, fabrication of evidence, *Brady* violation, and conspiracy claims. Finally, his claims are barred by the applicable statutes of limitations. For these reasons, all claims should be dismissed as to Terry Morgan.

              Respectfully submitted,

              OFFICE OF ATTORNEY GENERAL
              DEREK SCHMIDT

              s/ Carrie A. Barney
              Carrie A. Barney, KS #22872
              Assistant Attorney General, Civil Litigation
              120 SW Tenth Ave., 2nd Floor
              Topeka, Kansas 66612-1597
              Tel: (785) 368-6695
              Fax: (785) 291-3767
              EMAIL: carrie.barney@ag.ks.gov
              *Attorney for Defendants Morgan, Woods, and Johnson*

## CERTIFICATE OF SERVICE

  I hereby certify that on this 21st day of November, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

              s/ Carrie A. Barney
              Carrie A. Barney