IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FLOYD S. BLEDSOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case. No. 16-CV-02296-DDC-GLR |
| | ) |
| JEFFERSON COUNTY, KANSAS *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF
DEFENDANT JOHNSON'S MOTION TO DISMISS**

Defendant George Johnson, by and through Assistant Attorney General Carrie A. Barney, submits this Memorandum in Support of Motion to Dismiss pursuant to District of Kansas Rule 7.6. Defendant Johnson respectfully requests that all claims against him be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and qualified immunity. Defendant Johnson states the following in support of his motion.

**NATURE OF THE CASE**

In late 1999, a terrible event took place. A young girl was sexually assaulted, murdered, and her body dumped in the Bledsoe family trash heap. There is a victim here and her name was Camille Arfmann. In April 2000, Floyd S. Bledsoe ("Floyd") was tried by a Jefferson County jury and convicted for the crimes committed against Camille. (Doc. 75, First Amended Complaint, ¶ 89). Floyd was sentenced to life in prison plus sixteen years. (Doc. 75, First Amended Complaint, ¶ 90). These convictions were affirmed by the Kansas Supreme Court in 2002. Plaintiff sought habeas relief from the Jefferson County Dist. Court. His writ was denied. With that denial later affirmed by the Kansas Supreme Court Plaintiff next looked to the federal courts for relief. In 2008, the U.S. Dist. Court of Kansas granted Plaintiff's petition for writ of

habeas corpus pending either retrial or further federal proceedings.  In 2009, the Tenth Circuit Court of Appeals reversed the district court's grant of habeas relief, and Plaintiff was returned to prison to serve out his sentence.

In 2015, new technology relating to DNA uncovered information that semen collected from the victim's body was likely that of Plaintiff's brother, Tom Bledsoe ("Tom").  Shortly after this discovery Tom committed suicide leaving a note that indicated he was the one who "raped and killed a 14 year old girl." (Doc. 75, First Amended Complaint ¶ 95).  Based on this newly acquired evidence and a written confession by Plaintiff's brother, Tom, Plaintiff's conviction was overturned and the case was remanded for a new trial.  The Jefferson County prosecutor elected not to re-prosecute at the time, and the charges were dismissed without prejudice. As of the filing of this lawsuit, Camille Arfmann remains without justice and the case continues as an active investigation with the Kansas Bureau of Investigation ("KBI").

Plaintiff's conviction by a jury of his Jefferson County peers was affirmed several times in different courts, this, despite his repeated claims alleging prosecutorial misconduct, ineffective assistance of counsel, and fabrication of evidence. Plaintiff now brings many of these same allegations in the context of a civil lawsuit.  Here, Plaintiff's claims are brought primarily pursuant to 42 U.S.C. § 1983, and seem to apply to Defendants in varying degrees with something of a shotgun approach.  While it is not entirely clear how Plaintiff's attempt to "stack" defendants, with virtually nothing in the way of personal participation, applies to Defendant Johnson, he nonetheless asserts qualified immunity as a complete bar to the claims alleged and seeks a dismissal as a matter of law because Plaintiff fails to state a claim against him.

**STATEMENT OF FACTS**

1. George Johnson ("Johnson") worked as a law enforcement officer for the KBI. (Doc. 75, First Amended Complaint ¶ 19).

2. Defendant Johnson administered polygraph examinations to Tom and Floyd Bledsoe, on or about November 12, 1999. (Doc. 75, First Amended Complaint ¶ 57).

3. In Plaintiff's First Amended Complaint, Johnson is included in Plaintiff's definition of "KBI Defendant Officers." (Doc. 75, First Amended Complaint ¶ 19).

4. In Plaintiff's First Amended Complaint, Johnson is included in Plaintiff's definition of "Defendant Officers." (Doc. 75, First Amended Complaint ¶ 20).

5. Johnson is sued only in his individual capacity. (Doc. 75, First Amended Complaint ¶ 23).

6. Plaintiff alleges that he was wrongfully convicted of the November 1999 sexual abuse and murder of a fourteen-year-old girl named Camille Arfmann. (Doc. 75, First Amended Complaint ¶ 1).

7. Plaintiff had an older brother, Tom, who was partially deaf and had certain intellectual limitations. (Doc. 75, First Amended Complaint ¶ 29).

8. Plaintiff alleges that the true perpetrator was his older brother, Tom. (Doc. 75, First Amended Complaint ¶ 2).

9. Plaintiff alleges that shortly after the murder, Tom confessed to the crime and turned himself in to the Jefferson County Sheriff's Department. (Doc. 75, First Amended Complaint ¶ 2).

10. Plaintiff alleges that several days after Tom's arrest, Defendant Hayes, Defendant Vanderbilt, and/or other unknown Defendants held a meeting to put into action their

scheme to fabricate Tom's testimony.  Plaintiff does not identify Defendant Johnson as a participant in this alleged meeting.  (Doc. 75, First Amended Complaint ¶ 49).

11. Plaintiff states that the lead detective (not Defendant Johnson) continued to focus his investigation on Floyd even after Tom confessed. (Doc. 75, First Amended Complaint ¶ 50).

12. Plaintiff alleges a conspiracy between Defendants Hayes, Carreno, and Vanderbilt. (Doc. 75, First Amended Complaint ¶¶ 51 and 52).

13. Plaintiff alleges that, pursuant to Defendants' scheme, Tom would recant his confession and instead claim that he had run into Plaintiff on Saturday, November 6th, at a roadside intersection; that Plaintiff spontaneously confessed to the murder and provided Tom with extensive details about the crime; and that Plaintiff had persuaded Tom to take the blame by threatening to expose Tom's history of viewing X-rated movies, masturbating, and attempting to have sex with a dog. (Doc. 75, First Amended Complaint ¶ 53).

14. As to Johnson's personal participation in this alleged conspiracy, Plaintiff alleges that Johnson was the one interviewing Tom when he falsely recanted his confession, and that Johnson instructed Tom to continue lying to implicate his brother. (Doc. 75, First Amended Complaint ¶¶ 58 - 60).

15. After administering the polygraph tests, Defendant Johnson allegedly shared his belief that Floyd had exhibited deception during the examination and that Tom seemed to be truthful.  (Doc. 75, First Amended Complaint ¶ 82).

16. Plaintiff believes that Defendant Johnson knowingly mischaracterized the polygraph responses.  (Doc. 75, First Amended Complaint ¶ 83).

17. Plaintiff believes that Johnson's allegedly incorrect interpretation of the polygraph results misled Defendant Vanderbilt and caused charges to be filed against him. (Doc. 75, First Amended Complaint ¶ 84).

18. In April 2000, Plaintiff was tried in Jefferson County on charges of murder, aggravated kidnapping, and indecent liberties with a child; and Plaintiff alleges that "Defendants' manufactured evidence regarding Floyd's purported confession was used to bring about Floyd's prosecution; presented against him at trial; and emphasized by the prosecution in closing argument to secure Floyd's conviction." (Doc. 75, First Amended Complaint ¶ 87).

19. Plaintiff was convicted of three counts, including: (1) first-degree premeditated murder, K.S.A. 21-3401(a); (2) aggravated kidnapping, K.S.A. 21-3421, and aggravated indecent liberties with a child, K.S.A. 21-3504. *State v. Bledsoe*, 272 Kan. 1350 (2002) (affirming convictions, denying claims of due process violations, and rejecting Plaintiff's claim that evidence regarding polygraph tests was introduced at trial in violation of the district court's order that the "State shall be precluded from introducing the results of the interview of KBI Agent Johnson with Floyd Bledsoe and Tom Bledsoe.").

20. In late 2015, Tom Bledsoe committed suicide and confessed to the murder of Camille Arfmann in a series of suicide notes. (Doc. 75, First Amended Complaint ¶ 95).

21. In one of Tom Bledsoe's suicide notes, addressed to "whoever cares," Tom Bledsoe stated in part: "I sent an innocent man to prison. The Jefferson County police and county attorney Jim Vanderbelt made me do it. I was told by Vanderbelt to keep my mouth shut." (Doc. 75, First Amended Complaint ¶ 95).

22. Tom Bledsoe's suicide notes do **not** implicate KBI Agents Johnson, Morgan or Woods in any way. (Doc. 75, First Amended Complaint ¶ 95).

## QUESTIONS PRESENTED

I. **Plaintiff makes only one substantive allegation implicating George Johnson, and this allegation arises out of the administration of polygraph exams which were excluded at trial and do not indicate his personal participation in wrongdoing. Is George Johnson entitled to the protections of qualified immunity based on Plaintiff's failure to allege a clearly established constitutional violation and personal involvement by George Johnson?**

II. **Plaintiff fails to allege key elements of his fabrication of evidence, malicious prosecution, and conspiracy claims. Should this Court dismiss Plaintiff's claims against George Johnson for failure to state a claim?**

III. **Does the applicable two-year statute of limitations bar Plaintiff's claims, which accrued when he became aware that Defendants were allegedly manipulating Tom Bledsoe's recantation and implication of Plaintiff in the crimes at issue?**

## ARGUMENTS AND AUTHORITIES

As a matter of fundamental fairness and judicial efficiency, George Johnson should not be subjected to needless litigation which, in significant part, is contrary to the well-established record of Plaintiff's criminal trial and subsequent appeals. Moreover, the allegations contained in Plaintiff's First Amended Complaint (Doc. 75) fail to indicate Johnson's personal involvement in the constitutional violations now being alleged. To this end, while Plaintiff alleges that Johnson conducted polygraph exams on Floyd and Tom Bledsoe, Plaintiff fails to allege how these examinations, which were not used or referenced at trial, violated Plaintiff's constitutional rights. More significantly, Plaintiff's First Amended Complaint conflicts with the well-developed record and procedural history of Plaintiff's criminal trial and appeals. Qualified immunity protects all those except the plainly incompetent or those who purposefully violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The purpose of qualified immunity is to allow government employees breathing room to do their jobs reasonably without the fear of constant

litigation. *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013). Qualified immunity encourages claims to "be resolved at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 233 (1991) (Stevens, J., dissenting) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

It is clear that George Johnson's case is one in which qualified immunity should apply. In Plaintiff's First Amended Complaint, Defendant Johnson barely appears. Equally important to the scarcity of those references is their limited nature - as the references to Johnson only relate to his role in the investigation as a polygraph examiner. Since the results of Johnson's interviews with Floyd and Tom Bledsoe were suppressed pre-trial by a motion in limine (*State v. Bledsoe*, 272 Kan. 1350, 1363 (2002) it is unclear how now, once new DNA technology reversed Plaintiff's conviction, Johnson's polygraph interviews from sixteen years earlier could have somehow blossomed into a constitutional violation that Johnson knowingly participated in when he did little more than administer an inadmissible exam. To this end and with "catch-all allegations" aside, the allegations against Johnson from Plaintiff's First Amended Complaint include:

> Defendants George Johnson, Jim Woods, Terry Morgan, and other unknown law enforcement officers worked as law enforcement officers for the Kansas Bureau of Investigation ("KBI") at the time of the events giving rise to Plaintiff's wrongful conviction, and are referred to, collectively, as the "KBI Defendant Officers." The KBI Defendant Officers were integral and active participants in the investigation of Arfmann's death and directed various aspects of the investigation. Collectively, they gathered physical evidence; executed search warrants; photographed the crime scene and victim; conducted and reviewed polygraph examinations and interviews; completed dozens of police reports; directed Defendant Carreno to interview certain witnesses; and themselves interviewed scores of witnesses including Floyd, Tom, another early suspect, and numerous alibi and other witnesses. (¶ 19).
>
> The staged recantation took place on Friday, November 12th, when Floyd and Tom came in for polygraph examinations administered by Defendant George Johnson. (¶ 57).

According to Defendants, at some point during the interview with Defendant Johnson, Tom provided the false recantation of his confession that Hayes and other Defendants had coached and coerced him to give.  (¶ 58).
Overcome with guilt immediately after the examination, Tom confessed to the murder yet again to Defendant Johnson, Defendant Vanderbilt, and/or other unknown Defendants. Acting in service of Defendants' conspiracy, Defendant Johnson instructed Tom to continue lying to implicate Floyd, and Tom, who was easily overpowered, acquiesced.  (¶ 60).

Finally, Defendant Johnson and other unknown Defendants purposefully withheld their documentation of Tom's statements during the November 12th polygraph examination and interview.  (¶ 74).

For example, after administering the polygraph tests, Defendant Johnson reported to Defendant Vanderbilt and others that Floyd had exhibited deception during the examination, while Tom had been truthful. (¶ 82).

As Johnson was well aware, this characterization was false. (¶ 83).

Johnson's false report misled Defendant Vanderbilt, who relied on it in deciding to pursue charges against Floyd.  (¶ 84).

These allegations fail to rise to the level of a clearly established constitutional violation and fail to indicate personal involvement by George Johnson in a conspiracy, malicious prosecution, fabrication or withholding of evidence, or failure to intervene.

### *Motion to Dismiss Standard*

In ruling on a motion to dismiss, the Court assumes as true and all well pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  To survive a Rule 12 Motion, the complaint must contain factual assertions describing the grounds entitling the plaintiff to relief from the named defendants.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  The factual assertions must be sufficient to state a claim which is plausible, not merely conceivable, on its face.  *Id.*

In *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011), the 10th Circuit identified two "working principles" that underlie the *Twombly* standard.  First, the Court must

ignore legal conclusions, labels and formulaic recitation of the elements. *Id*. at 1214. "[A] plaintiff must offer specific factual allegations to support each claim." *Id*. Second, a plaintiff must allege facts that make his or her claim plausible: "a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Id*. (citing *Twombly*).

Plausibility depends upon the context of the Complaint. A Section 1983 plaintiff "must allege facts sufficient to show […] that the defendants plausibly violated [his] constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). This requires a plaintiff in a Section 1983 action to "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her, as distinguished from collective allegations against the state." *Id*. at 1250.

"When a defendant raises qualified immunity, the plaintiff must show that (1) the defendant's actions violated a constitutional or statutory right and (2) the right violated was clearly established at the time of the conduct in issue." *Martinez v. Aulepp*, No. 14-3040-CM, 2016 WL 164297, at *4 (D. Kan. Jan. 13, 2016). "This is a heavy two-part burden." *Rojas v. Anderson*, No. 12-1283, 2013 WL 3389450, at *2 (10th Cir. July 9, 2013) (quoting *Martinez v. Carr,* 479 F.3d 1292, 1294 (10th Cir.2007)). The Court, in its sound discretion, may consider these prongs in the order it chooses. *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

A "plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it; she must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Id*. (quotations omitted). The "relevant inquiry is whether the law put officials on fair notice that the described

conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007); *see also Stewart v. Beach*, 701 F.3d 1322, 1329-30 (10th Cir. 2012).

### I. Plaintiff has not sufficiently alleged personal participation or the violation of a clearly established constitutional righ by Defendant Johnson.

Personal participation is an essential element of claims brought pursuant to Section 1983. *Allen v. Denver Public School Bd.*, 928 F.2d 978, 983 (10th Cir. 1991); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (personal participation is an essential element of § 1983 claim). There must be "an affirmative link between the defendant's conduct and any constitutional violation." *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001). Conclusory allegations are insufficient to meet the personal participation requirement. *Jenkins v. Wood*, 81 F.3d 988 994 (10th Cir. 1996) ("plaintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation.")

The First Amended Complaint fails to identify particular actions that Defendant Johnson took that show that he directly participated in the alleged due process, malicious prosecution, conspiracy to deprive unspecified constitutional rights, or failure to intervene.

> To make out viable § 1983 and *Bivens* claims *and* to overcome defendants' assertions of qualified immunity, plaintiffs here must establish that each defendant—whether by direct participation or by virtue of a policy over which he possessed supervisory responsibility—caused a violation of plaintiffs' clearly established constitutional rights, and that each defendant acted with the constitutionally requisite state of mind. Plaintiffs must do more than show that their rights "were violated" or that "defendants," as a collective and undifferentiated whole, were responsible for those violations.

*Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010)). "[I]t is particularly important" that plaintiffs "make clear exactly *who* is alleged to have done *what* to *whom*, ... as distinguished from collective allegations." *Pahls*

*v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). As an initial matter, there are no allegations in the First Amended Complaint that indicate Johsnon possessed supervisory responsibility over implementation of any policy. Thus, establishing personal involvement on this basis is not a possibility.

In this case, Plaintiff has not sufficiently alleged Defendant Johnson personally participated in the violation of a clearly established right held by Plaintiff. Instead, Plaintiff's First Amended Complaint lumps together multiple defendants with allegations that are premised on defendant categories such as "Defendant Officers" and "KBI Defendant Officers." To establish personal participation, the plaintiff must show that each defendant caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir. 1993).

In short, it is unclear how Johnson's administration of a polygraph exam in the context of searching for a missing teen could have been a violation of Plaintiff's constitutional rights. Plaintiff was under no obligation to take a polygraph, nor was Tom Bledsoe. The results were not used at trial. Moreover, because it would have been known by the investigators and attorneys alike that the tests were not going to be admissible evidence there is no way that the prosecutor could have reasonably relied on any of the alleged inaccuracies or misinformation possibly contained therein to continue with charges against either Bledsoe. Bottom line, the polygraph exams were irrelevant. Whether there was or was not a mistake in reading the results or in conducting the exams is irrelevant because the polygraph exam and interviews didn't cause

Plaintiff to be convicted. Nor was it foreseeable to Defendant Johnson that his examination of the Bledsoe brothers would lead to a wrongful conviction of either of them. In fact, Defendant Johnson would have known quite well in November 1999 how unlikely it was that these polygraphs could be used to prosecute Camille's murderer. And, as it turns out, this would have been a correct understanding by Defendant Johnson, as the polygraph information was suppressed by the trial court. Plaintiff does not establish Defendant Johnson's personal participation in the claims asserted against him, and as such Defendant Johnson is entitled to dismissal as a matter of law.

**II. Plaintiff's claims are barred by the applicable statues of limitations.**

Because Plaintiff's claims accrued on or before April 2000, when he was convicted, and he filed this lawsuit 16 years later, his claims are barred by the applicable two-year statute of limitations. "The statute of limitations for claims under § 1983 'is drawn from the personal-injury statute of the state in which the federal district court sits.'" *Lyons v. Kyner*, No. 09–3308, 367 F. App'x. 878, *881 (10th Cir. Feb. 10, 2010) (unpublished) (quoting *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)). Kansas' two-year statute of limitations for personal injury actions would thus apply to Plaintiff's § 1983 claims. *See id.*; K.S.A. 60–513(a)(4).

Federal law applies to determine the date of accrual of a cause of action under § 1983. *Canfield v. Douglas Cty.*, 619 F. App'x 774, 777 (10th Cir. 2015). "[A] cause of action accrues and the relevant statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action . . . ." *Buck v. Utah Labor Comm'n.*, 73 F. App'x 345, 348 (10th Cir. 2003). Furthermore, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Lyons*, 367 F. App'x. at *881 (quoting *Fratus v.*

*DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)). More specifically, the limitations period for a conspiracy claim "runs from the occurrence of the last overt act resulting in damage to the plaintiff." *Id*. at *882 (applying the § 1985(3) conspiracy accrual standard to plaintiff's § 1983 conspiracy claim). In *Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010), the Tenth Circuit agreed with the district court judge's conclusion that the last overt act in the alleged conspiracy occurred during the trial that allegedly resulted in the unlawful judgment.

Here, the facts to support Plaintiff's claims should have become apparent when Tom recanted his confession and then somehow managed to weave a complex web of deception to explain his false confession and implicate Plaintiff in murder and sexual acts—all this despite Tom having "limited intellectual faculties" and being "susceptible to manipulation," according to Plaintiff. The alleged facts supporting each of his claims would have accrued on or before his conviction in April 2000. *See Lyons,* 367 F. App'x at 882.

A potential conspiracy, fabrication of evidence, withholding of exculpatory evidence, and failure to intervene should have become apparent to Plaintiff when he knew that his brother, who was supposedly intellectually limited and easily manipulated, began telling what Plaintiff knew to be lies. Plaintiff would have known at the time that he did not commit the crimes he was being accused of. He would have known that no roadside meeting occurred between himself and his brother, Tom, on November 6. (Doc. 75, First Amended Complaint ¶ 53) (describing Tom's claim of a roadside meeting that occurred on November 6, 1999). Plaintiff would have known that, at that roadside meeting, he never spontaneously confessed to the murder, never provided Tom with extensive details about the crime, never persuaded Tom to take the blame by threatening to expose Tom's history of viewing X-rated movies, masturbating, and attempting to have sex with a dog. (Doc. 75, First Amended Complaint ¶ 53). Most importantly, he would have

known that Tom was not capable of crafting this complex story on his own if, as Plaintiff claims, Tom was intellectually limited and easily manipulated. *See* (Doc. 75, First Amended Complaint ¶¶ 29 & 55) (claiming Tom was partially deaf and limited intellectually); (Doc. 75, First Amended Complaint ¶ 55) (claiming Tom was easily manipulable).

## CONCLUSION

Plaintiff failed to allege any clearly established violation of his constitutional rights by George Johnson. He also failed to allege Johnson's personal involvement in any alleged constitutional violation. Thus, Johnson is entitled to the protections of qualified immunity. Additionally, Plaintiff's allegations utterly fail to state a claim for which relief may be granted on his malicious prosecution, fabrication of evidence, *Brady* violation, and conspiracy claims. Finally, his claims are barred by the applicable statutes of limitations. For these reasons, all claims should be dismissed as to George Johnson.

Respectfully submitted,
OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

s/Carrie A. Barney
Carrie A. Barney, KS #22872
Assistant Attorney General, Civil Litigation
120 SW Tenth Ave., 2nd Floor
Topeka, Kansas 66612-1597
Tel:   (785) 368-6695
Fax:   (785) 291-3767
EMAIL: carrie.barney@ag.ks.gov
*Attorney for Defendants Morgan, Woods, and Johnson*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 22nd day of November, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

                                          s/ Carrie A. Barney
                                          Carrie A. Barney