# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**FLOYD S. BLEDSOE,**

       **Plaintiff,**

**v.**

**JEFFERSON COUNTY, KANSAS,**
**RANDY CARRENO,**
**TROY FROST,**
**ORIN TURNER,**
**ROBERT POPPA,**
**ROY DUNNAWAY,**
**JIM VANDERBILT,**
**GEORGE JOHNSON,**
**JIM WOORDS,**
**TERRY MORGAN,**
**MICHAEL HAYES,**
**JEFFREY HERRIG, and**
**UNKNOWN OFFICERS OF THE**
**JEFFERSON COUNTY POLICE**
**DEPARTMENT and KANSAS**
**BUREAU OF INVESTIGATION,**

       **Defendants.**

**Case No.  16-2296-DDC-GLR**

## MEMORANDUM AND ORDER

This matter comes before the court on defendants Michael Hayes, Jim Vanderbilt, Terry Morgan, Jim Woods, and George Johnson's separate Motions to Dismiss (Docs. 76, 80, 83, 85, 86) plaintiff Floyd Bledsoe's First Amended Complaint (Doc. 75).  For reasons explained below, the court denies defendants' Motions.

## I.    Background

The following facts are taken from plaintiff's First Amended Complaint (Doc. 75). Because the current dismissal motions rely on Fed. R. Civ. P. 12(b)(6), the court must accept the pleaded facts as true and view them in the light most favorable to plaintiff. *See Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (explaining that, on a motion to dismiss, the court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff" (citation omitted)). The court emphasizes that this standard controls the facts at this stage of the case. In short, the court expresses no opinion on whether they represent the true facts.

This lawsuit follows plaintiff's wrongful conviction for sexual abuse and murder of a fourteen-year-old girl named Camille Arfmann. A state court jury convicted plaintiff in April 2000, and he was sentenced to life in prison. Plaintiff was released from prison in 2015 after DNA testing exonerated him, and instead identified his brother, Thomas Bledsoe ("Tom"), as the likely wrongdoer.

### A.  Camille's Murder

In November 1999, plaintiff was 23 years old and married to his wife, Heidi. The couple had two young sons, and plaintiff worked as a farmhand at a dairy farm in McLouth, Kansas. The couple invited Heidi's younger sister, Camille, to live with them in hopes of improving her school attendance. Plaintiff's older brother, Tom, then 25 years old, lived nearby with their parents. Tom had little social life, and he suffered from some intellectual limitations and partial deafness. Tom had a history of abnormal sexual behavior that included pursuit of young girls, though he was an active member of the Sunday school group for children at the Countryside Baptist Church.

On November 5, 1999, Camille took the bus home from school. She arrived at plaintiff's home around 4:20 p.m. Her friend Robin Meyer stopped by to visit at 5:00 p.m., but Camille was not there. Plaintiff and Heidi reported Camille's disappearance to the Jefferson County Sherriff's Department and spent the next 48 hours trying to find Camille. They stopped the search on November 7, 1999, after Tom confessed that he had murdered Camille.

Tom's parents arranged for defense attorney defendant Michael Hayes[1] to represent Tom. Later that evening, Tom and Mr. Hayes met with personnel at the Jefferson County Sheriff's Department. Defendants Robert Poppa[2] and Roy Dunnaway[3] attended this meeting, as well as others including defendant officer Jim Woods.[4] Through Mr. Hayes, Tom informed these defendants that he had murdered Camille and that he knew the location of her body. Tom also revealed other details about Camille's murder, including that he had shot her in the head and moved her body to bury it in a trash dump. Tom and Mr. Hayes took Mr. Poppa, Mr. Woods, Mr. Dunnaway, and others, to his parents' property where he had been living. They found Camille's body underneath a foot of dirt, plywood, and garbage that included an X-rated movie and t-shirt that read: Countryside Baptist Church. The wounds on Camille's body matched Tom's description of her murder. The defendants found three of four missing bullet casings at Camille's burial site.

---

[1] Defendant Hayes is one of the defendants moving to dismiss plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6). Doc. 76.

[2] Defendant Poppa, along with defendants Jeffery Herrig, Randy Carreno, Troy Frost, and Jefferson County Kansas, are collectively referred to as the "Jefferson County defendants." The Jefferson County defendants do not join this motion. They have filed a separate Motion for Judgment on the pleadings (Doc. 102), which this order does not decide.

[3] Defendant Dunnaway passed away on February 24, 2017. *See* Doc. 101.

[4] Defendant Woods is also one of the defendants moving to dismiss plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6). Doc. 85.

The coroner recovered semen from inside Camille's vagina, but he was unable to determine whether Camille had been sexually abused. Mr. Hayes surrendered the murder weapon—Tom's newly purchased Jennings 9mm firearm—to the police officers. Tom was charged with Camille's murder and taken to the Jefferson County Jail. Despite the evidence against Tom, the defendants planned to frame plaintiff for Camille's murder.

### B. The plan to frame plaintiff

Several days after Tom's arrest, Mr. Hayes, along with Jefferson County prosecutor Jim Vanderbilt,[5] and other unknown defendants, met to devise a plan to fabricate Tom's testimony. The lead detective on Camille's murder case, Randy Carreno from the Jefferson County Sheriff's Department, had focused his investigation on plaintiff even after Tom turned himself in. Mr. Hayes, Mr. Carreno, and other defendants conspired to obtain false statements from Tom which would pin Camille's murder on plaintiff. Allegedly, Mr. Hayes previously had helped Mr. Vanderbilt avoid exposure for misappropriating county funds. So, Mr. Vanderbilt was indebted to Mr. Hayes and became a willing ally in the plan to frame plaintiff.

The plan went like this: Tom would recant his confession and claim that he had run into plaintiff on Saturday, November 6, 1999, at a roadside intersection. Tom would say that plaintiff had confessed to Camille's murder and had given him extensive details about the crime. Then, Tom would say that plaintiff persuaded him to take the blame for the murder by threatening to expose his deviant sexual history—including viewing X-rated movies and attempting to have sex with a dog. Mr. Hayes, Mr. Vanderbilt, and other defendants planned and coached Tom on his recantation. Tom was manipulated easily. Shortly before Tom recanted his confession, Mr.

---

[5]     Mr. Vanderbilt is also one of the defendants moving to dismiss plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6).  Doc. 80.

Hayes told plaintiff something about how he planned to take Tom off the "hot seat" and replace him with plaintiff.

Defendants Terry Morgan, Jim Woods, and George Johnson worked as law enforcement officers for the Kansas Bureau of Investigation ("KBI") at this time. Mr. Morgan, Mr. Woods, and Mr. Johnson (collectively, the "KBI defendant officers") were integral and active participants in the investigation of Camille's death. The KBI defendant officers gathered physical evidence, executed search warrants, photographed the crime scene and victim, conducted and reviewed polygraph examinations and interviews, completed police reports, and directed Mr. Carreno to interview certain witnesses.

Mr. Johnson[6] administered polygraph examinations to both Tom and plaintiff on November 12, 1999. At some point during his examination, Tom recanted his confession with the story that Mr. Hayes and others had coached him to give. During the examination, Tom exhibited deception on this question: "Did you kill Camille Arffmann?"

Overcome with guilt following the examination, Tom confessed again to Mr. Johnson, Mr. Vanderbilt, and other defendants, that he had murdered Camille. Mr. Johnson instructed Tom to continue lying to implicate plaintiff, and Tom acquiesced. Then, plaintiff took the polygraph examination and truthfully denied any involvement in Camille's murder.

That evening, Mr. Vanderbilt released Tom from jail and dropped the charges against him. Mr. Dunnaway and other defendants arrested plaintiff, and they continued to use Tom's fabricated statements to frame plaintiff. Specifically, Mr. Carreno and other defendant officers falsified Tom's statements about meeting plaintiff at the roadside intersection so that they fit the timeline for the period when they believed plaintiff lacked an alibi. Additionally, defendants

---

[6]     Mr. Johnson is also one of the defendants moving to dismiss plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6). Doc. 86.

coached Tom to provide false explanations for how he had known so many details about Camille's death. Tom's false account became the prosecution's central piece of evidence against plaintiff.

## C. The trial

At trial, the defendant officers[7] withheld evidence of Tom's guilt from plaintiff's defense. For example, Mr. Woods and other defendant officers withheld Tom's detailed description about how he had tried to have sex with Camille in his truck and shot her when she laughed at him. The defendant officers also withheld evidence of Tom's history of pursuing young girls and that he had made sexual advances on Camille just a few weeks before her murder. The defendant officers also withheld Tom's statements to them on the night he turned himself in, where he described Camille's wounds and the location of her body. The defendant officers also withheld information about Tom's activities between November 8 and November 12, 1999, including his statements during the polygraph examination.

Additionally, the defendant officers suppressed physical evidence of Tom's guilt. This evidence included the shovel that Tom had used to bury Camille's body and other physical evidence taken from Tom's truck. In furtherance of the conspiracy to frame plaintiff, Mr. Morgan and other defendant officers never conducted a rigorous forensic examination of Tom's bedroom or home. Instead, Mr. Morgan and other defendants recovered evidence like Tom's weapons and ammunition by letting Tom's father turn them in. Meanwhile, the defendant officers subjected plaintiff's home and vehicle to thorough examinations.

The prosecution also generated false evidence against plaintiff. Mr. Johnson reported to Mr. Vanderbilt that plaintiff had exhibited deception during the polygraph examination, and that

---

[7]     The Jefferson County defendant officers (Randy Carreno, Troy First, Orin Turner, Robert Poppa, Roy Dunnaway, and Jeffrey Herrig ) and the KBI defendant officers (Terry Morgan, Jim Woods, and George Johnson) are referred to collectively as the "defendant officers." Doc. 75 at ¶ 20.

Tom had exhibited truthfulness. But Mr. Johnson knew this characterization was false. Jefferson County defendants Troy Frost and Orin Turner[8] signed an affidavit supporting a request for a search warrant. It falsely claimed that plaintiff had confessed to visiting his home around the time Camille disappeared from it. The prosecution used the manufactured evidence about plaintiff's confession to bring charges against plaintiff.

Mr. Vanderbilt offered plaintiff a plea deal: plaintiff would serve five years in exchange for pleading guilty. Plaintiff rejected the deal and, in April 2000, a jury convicted him for murder, aggravated kidnapping, and taking indecent liberties with a child. The trial judge sentenced plaintiff to life in prison plus 16 years.

### D. Post-Conviction Relief

In June 2008, a federal district court granted plaintiff habeas relief and he was released on bond. The Tenth Circuit Court of Appeals reversed the ruling in July 2009, and plaintiff was forced to return to prison. Then, in October 2015, plaintiff obtained additional forensic testing for some of the physical evidence officers collected from the crime scene. New DNA test results indicated Tom was the likely source of the semen found on Camille's vaginal swab. The test also excluded plaintiff as the source of the semen. Tom committed suicide shortly after this new DNA testing. He left a note that read:

> I sent an innocent man to prison. The Jefferson County police and county attorney Jim Vanderbelt made me do it. I was told by Vanderbelt to keep my mouth shut. Now I am going to set thing[s] right.
>
> I killed Camille Arfmann on November 5, 1999. I had sex with her and killed her.
>
> . . . I drove up to the ditch where the family dump trash and tried to convince her not to tell. . . . I went to my truck and got my 9mm

---

[8] Orin Turner does not join the Jefferson County defendants in their Motion for Judgment on the Pleadings. *See* Doc. 102.

gun that was behind my seat and pushed her to the ground to try to scare her, but it failed [and] the gun went off behind her head. . . . I as well might go ahead and say it I raped and murdered a 14 year girl.

I tried telling the truth but no one would listen. I was told to keep my mouth shut. It tore me up doing it. I would ask forgiveness, but I know none will come. Not even from God.

Floyd S Bledsoe is an innocent man.

Tom E Bledsoe is the guilty one.

Tom also drew a diagram depicting where he shot Camille before moving her body to the trash dump. Using Tom's diagram, the police found the fourth missing bullet casing. The Jefferson County court vacated plaintiff's conviction on December 8, 2015 and the Jefferson County Attorney dismissed the charges against him. Plaintiff left prison, but returned home from prison having missed his sons' childhoods and many years with his loved ones. Plaintiff continues to suffer physiological pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, rage, and other physical and physiological effects.

**E. Plaintiff's Claims**

Plaintiff brings the following claims under 42 U.S.C. § 1983 against the defendants: (Count I) due process violation for fabricating Tom's testimonial evidence; and (Count II) conspiracy to deprive plaintiff's constitutional rights by fabricating Tom's testimonial evidence.

Plaintiff brings the following § 1983 claims against the defendant officers: (Count III) *Brady v. Maryland*[9] violation for withholding exculpatory evidence and fabrication of evidence; and (Count VI) failure to intervene.

---

[9] 373 U.S. 83 (1963).

Plaintiff brings the following claims under § 1983 against the defendant officers and Mr. Hayes: (Count IV) malicious prosecution; and (Count V) conspiracy to deprive constitutional rights.

Finally, plaintiff brings a claim for municipal liability (Count VII) against Jefferson County, and a state law claim for indemnification.

## II.     Legal Standards

Individually, defendants ask the court to dismiss the case under Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Though defendants assert different reasons why the court should dismiss the claims against them, each defendant also asserts that plaintiff has failed to plead one or more of the elements necessary to state his claims for relief.

### A.  Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual

support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

On a motion to dismiss under Rule 12(b)(6) the court must assume that a complaint's factual allegations are true. But legal conclusions are different. The court need not accept pure legal conclusions as true. *Id.* at 1263. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief. *Iqbal*, 556 U.S. at 678. In addition to the complaint's factual allegations, the court also may consider "attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

### B. Qualified Immunity

Mr. Hayes, Mr. Morgan, Mr. Woods, and Mr. Johnson assert qualified immunity as a defense to plaintiff's claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages'" as long as "'their conduct does not violate clearly established'" constitutional rights that "'a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine developed as way to balance "two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Qualified immunity is "immunity from suit rather than a mere defense to liability." *Id.* at 237 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). So, courts should resolve qualified immunity questions "at the earliest possible stage in litigation." *Id.* at 231.

In *Saucier v. Katz*,[10] the Supreme Court "mandated a two-step sequence for resolving government officials' qualified immunity claims." *Callahan*, 555 U.S. at 232. First, a court must decide whether plaintiff has alleged facts sufficient to support a violation of a constitutional right. *Id.* Second, if plaintiff satisfies this first step, the court must determine whether the right at issue was "clearly established" at the time of defendant's misconduct. *Id.* Unless the official's alleged conduct violated a clearly established constitutional right, qualified immunity applies. *Id.*

Since *Saucier*, the Supreme Court has concluded that the two-step sequence for resolving an official's qualified immunity claims is still appropriate, but not mandatory. *Id.* at 236. Judges may use their discretion to decide "which of the two prongs" should be addressed first "in light of the circumstances in the particular case at hand." *Id.* At trial, the "plaintiff bears the burden of persuasion 'to overcome qualified immunity by showing a violation of clearly established federal law.'" *Stoedter v. Gates et. al.*, No. 15-4020, slip op. at * 11 (10th Cir. Aug. 3, 2017), http://www.ca10.uscourts.gov/opinions/15/15-4020.pdf (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014)).

## III. Analysis

### A. Michael Hayes

Plaintiff brings four claims under § 1983 against Mr. Hayes, Tom's court-appointed attorney: (Count I) due process violation for fabrication of evidence; (Count II) conspiracy to violate plaintiff's constitutional rights by fabricating testimony; (Count IV) malicious prosecution; and (Count V) conspiracy to violate plaintiff's constitutional rights by withholding exculpatory information. Mr. Hayes asserts four arguments to support his motion to dismiss. First, Mr. Hayes asserts that he is not a state actor for the purpose of § 1983. Second, he

---

[10] 533 U.S. 194 (2001).

contends he is entitled to qualified immunity. Third, he contends that plaintiff has not pleaded a sufficient malicious prosecution claim. Finally, Mr. Hayes asserts that the statute of limitations bars plaintiff's claims. The court addresses each of Mr. Hayes' four arguments, below.

### 1. State Actor

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quoting 42 U.S.C. § 1983). So, only those "whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." *Id.* (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)).

Mr. Hayes served as Tom's court appointed defense attorney during the investigation and prosecution of Camille's murder. It is "well established that neither private attorneys nor public defenders act under color of state law for purposes of § 1983 when performing their traditional functions as counsel to a criminal defendant." *Dunn v. Harper Cty.*, 520 F. App'x 723, 725–26 (10th Cir. 2013) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)). Mr. Hayes thus contends he was not a state actor at any of the times relevant to the First Amended Complaint.

But public defenders and private defense attorneys are not categorically excluded as state actors. *See Polk Cty.*, 454 U.S. at 324–325. Indeed, a "sufficient claim of a conspiracy between a private lawyer and state actors . . . would support the allegation that the private lawyer acted under color of state law." *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1263 (D. Kan. 2008) (quoting *Ellibee v. Fox*, 244 F. App'x 839, 843 (10th Cir. 2007)). And, true to this theory, plaintiff's First Amended Complaint alleges that Mr. Hayes conspired with state actors—the defendant officers—to violate his constitutional rights.

Importantly, the Tenth Circuit applies a "heightened pleading requirement to § 1983 claims alleging a conspiracy between private individuals and state officials." *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000); *see also Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) ("a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants" to state a valid § 1983 conspiracy claim). Alleging a § 1983 conspiracy claim sufficient to satisfy this standard requires the plaintiff to allege facts that manifest a "specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action." *Fisher*, 531 F. Supp. 2d at 1264 (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1445 (10th Cir. 1995)). Conclusory allegations "with no supporting factual" allegations are insufficient. *Fisher*, 531 F. Supp. 2d at 1263 (quoting *Raiser v. Kono*, 245 F. App'x 732, 736 (10th Cir. 2007)).

Because "[d]irect evidence of an agreement to join a criminal conspiracy is rare, [ ] a defendant's assent can be inferred from acts furthering the conspiracy's purpose." *United States v. Edmonson*, 962 F.2d 1535, 1548 (10th Cir. 1992) (quoting *United States v. Perkins*, 748 F.2d 1519, 1526 (11th Cir. 1984)). And whether plaintiff has alleged sufficient facts to support a conspiracy claim is decided on a case-by-case basis. *Compare Hughes v. Patrolmen's Benevolent Ass'n of City of New York, Inc.*, 850 F.2d 876, 881 (2d Cir. 1988) (affirming decision that allegations of defendants hiring private investigators with the express or implied consent of police officers was sufficient to allege a § 1983 conspiracy), *and Snell v. Tunnell*, 920 F.2d 673, 701–02 (10th Cir. 1990) (holding that plaintiff sufficiently pleaded a § 1983 conspiracy claim to deprive plaintiff's Fourth Amendment rights by alleging defendant's "repeated attempts to harass and gain entry into [plaintiff's] home"), *with Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (holding that plaintiff's failure to provide details of time and place or any factual

details to enable defendants to prepare a defense was insufficient to support a conspiracy claim), *and Fisher*, 531 F. Supp. 2d at 1264 (holding that, by themselves, allegations of long telephone conversations between a private lawyer and a court-appointed mediator were insufficient to allege a conspiracy), *and Poel v. Webber*, 899 F. Supp. 2d 1155, 1161 (D.N.M. 2012) (holding that allegations of innocuous communications between lawyers and judges communicating through pleadings and motions will not suffice to allege a conspiracy).

Plaintiff alleges the following facts to support his claim that Mr. Hayes conspired with state actors:  (1) several days after Tom's arrest, Mr. Hayes, Mr. Vanderbilt, and other defendants held a meeting to put their plan into action (Doc. 75 ¶ 49); (2) Mr. Hayes conspired with Mr. Carreno to pin the murder on plaintiff by securing false statements from Tom (*Id.* at ¶ 51); (3) using Mr. Hayes' influence as former Jefferson County Attorney, Mr. Hayes and Mr. Carreno enlisted Mr. Vanderbilt to help frame plaintiff (*Id.* at ¶ 52); (4) Mr. Hayes and other defendants planned to have Tom recant his confession (*Id.* at ¶ 55); and (5) just before plaintiff was charged, Mr. Hayes warned plaintiff that he was taking Tom off the "hot seat" and putting plaintiff on it (*Id.* at 10 ¶ 56).

Plaintiff's allegations, if backed by admissible evidence, suffice to support a finding that Mr. Hayes conspired with state actors and thus acted under color of state law.  Either Mr. Hayes, Mr. Vanderbilt, and other defendants met several days after Tom's arrest to activate their plan to frame plaintiff—or they did not.  But if plaintiff musters admissible evidence that they conducted such a meeting, and agreed at that meeting to put their plan into action, that they conducted such a meeting and that agreement to frame plaintiff would constitute facts.  None of these allegations represent the kind of labels, conclusions, or formulaic recitations that *Iqbal* deems insufficient. Similarly, Mr. Carreno and Mr. Hayes either solicited Mr. Vanderbilt's agreement to enlist in

their plan to frame plaintiff—or they did not. Time will tell whether plaintiff actually can prove these allegations. But this unresolved evidentiary uncertainty does not change that allegations of such solicitation and enlistment are allegations of fact—not just conclusions.

Mr. Hayes tries to nullify plaintiff's response by arguing that plaintiff's allegations are merely conclusory. Doc. 77 at 14. This misapprehends the standard. Rule 12(b)(6) requires less than "detailed factual allegations." *Iqbal*, 556 U.S. at 678. Plaintiff specifically alleges when Mr. Hayes met with other state actors. Doc. 75 at ¶ 49 (alleging that Mr. Hayes met with state actor defendants "[s]everal days after Tom's arrest"). And, plaintiff specifically alleges that Mr. Hayes conspired with Mr. Carreno "to pin the murder on [plaintiff]." *Id.* at ¶ 51. Plaintiff also alleges the details Mr. Hayes and other defendants discussed during their meeting. *Id.* at ¶ 53. And he alleges that Mr. Hayes told plaintiff that he planned to put him in the "hot seat" shortly before Tom recanted his confession. *Id.* at ¶ 56. Taken together, plaintiff has alleged facts from which the court properly can draw a reasonable inference that Mr. Hayes joined an agreement and pursued a course of concerted action with state actors to prosecute plaintiff for Camille's murder. For Rule 12(b)(6) purposes, plaintiff has alleged that Mr. Hayes acted under color of state law under § 1983 sufficiently, and his status as a defense attorney is no reason to dismiss the § 1983 claims pending against him.

## 2. Qualified Immunity

Mr. Hayes next asserts that even if plaintiff has alleged sufficient facts to support a claim that he acted under color of state law for § 1983 purposes, he is entitled to qualified immunity. The Supreme Court has made it clear that a private individual retained by the government, even temporarily, is entitled to seek qualified immunity from suit under § 1983. *See Filarsky*, 566 U.S. at 393–94. Mr. Hayes contends that he worked as a court appointed attorney at the times

relevant to the First Amended Complaint, and this entitles him to seek qualified immunity from plaintiff's claims.

The Tenth Circuit has not held that court appointed defense attorneys are entitled to seek qualified immunity. And, predicting how the Circuit would rule, if presented with the question, is a quandary. *See Hernandez v. State of N.M.*, No. 94-2287, 1995 WL 490289, at *4 (10th Cir. Aug. 16, 1995) (affirming decision that public defenders were entitled to qualified immunity, but not mentioning court appointed attorneys); *see also Polk Cty.*, 454 U.S. at 333 n.4 (distinguishing between public defenders and court-appointed attorneys, who are not state officials, who have control over their own caseloads and representations, and who depend on the state only for a fee with no real day-to-day involvement by the state); *cf. Bianchi v. McQueen*, 818 F.3d 309, 317 (7th Cir. 2016) (finding that a court-appointed prosecutor is entitled to prosecutorial immunity for his conduct as a prosecutor). But the court does not need to decide this question to decide Mr. Hayes' motion. Even if Mr. Hayes were entitled to assert the qualified immunity defense, qualified immunity would not shield him from liability.

To determine whether Mr. Hayes' actions are protected by qualified immunity, the court must determine whether plaintiff has alleged facts sufficient to support a finding that Mr. Hayes violated his constitutional rights, and whether the right at issue was "clearly established" at the time of Mr. Hayes' conduct. *Pearson*, 555 U.S. at 231. The inquiry "turns on the 'objective legal reasonableness of the action, addressed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* at 244 (quoting *Wilson v. Layne*, 526 U.S. 603 (1999)).

Plaintiff alleges that Mr. Hayes infringed on constitutional due process rights when he, along with other defendants, fabricated Tom's testimonial evidence, conspired with state actors to deprive plaintiff's constitutional rights by fabricating evidence and withholding exculpatory

evidence, and maliciously prosecuted plaintiff. And, plaintiff alleges facts sufficient to support these allegations under Rule 12(b)(6)'s standard.

In *Pierce v. Gilchrist*,[11] the Tenth Circuit ruled on this very issue. 359 F.3d at 1282. The plaintiff in *Pierce* spent 15 years in state prison for a rape he had not committed. *Id.* at 1281. He eventually was exonerated with DNA evidence, and his conviction was vacated. *Id.* Plaintiff brought § 1983 malicious prosecution claims against defendant, a police department forensic chemist, alleging that she maliciously withheld exculpatory evidence and fabricated inculpatory evidence, "which led prosecutors to indict and prosecute" him for the rape. *Id.* at 1281. On appeal from an immunity based motion to dismiss decision, the Tenth Circuit affirmed the district court's decision that defendant was not entitled to qualified immunity. After determining that plaintiff properly had alleged violation of his constitutional rights, the Tenth Circuit held that the "prohibition on falsification or omission of evidence, knowingly or with reckless disregard for the truth, was firmly established" when defendant acted. *Id.* at 1298. It explained: "Even if there were no case directly on point imposing liability on officials whose falsification of evidence occurred at the post-arrest stage, an official in [defendant's] position could not have labored under any misapprehension that the knowing or reckless falsification and omission of evidence was objectively reasonable." *Id.* at 1299.

*Pierce*'s holding applies with equal force here. Mr. Hayes is not entitled to qualified immunity in this case. Mr. Hayes asserts that "the conclusory and vague allegations made by" plaintiff fail to state a plausible claim that he violated plaintiff's clearly established constitutional rights "of which a reasonable person would have known." Doc. 77 at 21. But, as already explained, plaintiff has alleged facts from which the court can draw a reasonable inference that Mr. Hayes was part of an agreement and concerted action along with state actors to falsify and

---

[11]     359 F.3d 1279, 1281 (10th Cir. 2004).

withhold evidence, and to maliciously prosecute plaintiff for murder. Under *Pierce*, plaintiff's rights against falsification and omission of evidence were clearly established when Mr. Hayes acted, and he is not entitled to qualified immunity.

### 3. Malicious Prosecution Claim

Mr. Hayes next argues that plaintiff has failed to plead any of the claims against him adequately. But, as already discussed, the court has determined that plaintiff has alleged facts from which the court can draw a reasonable inference that Mr. Hayes joined a conspiracy to violate plaintiff's constitutional rights, and that Mr. Hayes violated plaintiff's constitutional rights by fabricating evidence . *See supra* Part III.A.1.–2. So, the court now turns to plaintiff's claim that Mr. Hayes maliciously prosecuted him.

A § 1983 malicious prosecution claim includes the following five elements: (1) the defendant caused the plaintiff's prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the continued prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

Mr. Hayes contends that plaintiff has failed to plead the first element of a malicious prosecution claim. Mr. Hayes explains that he was Tom's court-appointed defense attorney, and that he had no role in plaintiff's criminal prosecution. But, the Tenth Circuit has explained that this element of malicious prosecution does not require that it was the defendant who actually filed the charges at issue. Instead, the actions of one who "prevaricates and distorts evidence to convince the prosecuting authorities to press charges" can be said to cause the prosecution. *Pierce*, 359 F.3d at 1293. Here, plaintiff alleges that Mr. Hayes conspired to fabricate and withhold evidence. Specifically, plaintiff alleges that Mr. Hayes helped fabricate Tom's

narrative and coached him about how to give it. Doc. 75 ¶ 55. These allegations suffice to allege that Mr. Hayes distorted evidence to convince prosecuting authorities to press charges. Plaintiff has pleaded the first element of his malicious prosecution claim against Mr. Hayes.

Mr. Hayes also contends that plaintiff has failed to plead the second element because the original action has not terminated in favor of plaintiff. Mr. Hayes asserts that plaintiff's conviction merely was vacated, and the charges against him were dismissed without prejudice. Doc. 77 at 25. Mr. Hayes asserts that because plaintiff could be charged again, he cannot plead the second element of his malicious prosecution claim. But, once again, the Tenth Circuit already has rejected Mr. Hayes' theory. *See Pierce*, 359 F.3d at 1294 (explaining that such a "narrow construction of state common law would be inconsistent with federal constitutional standards."). Plaintiff's conviction was vacated, and that will suffice to allege the second element of a malicious prosecution claim. *Id.*

Next, Mr. Hayes asserts that plaintiff alleges no facts to support the third element of his malicious prosecution claim. Mr. Hayes relies on plaintiff's conviction by a jury in 200, and plaintiff's first appeal of that conviction, where the Kansas Supreme Court concluded that sufficient evidence supported plaintiff's murder conviction. But, the allegations in plaintiff's First Amended Complaint, taken as true, are such that the court can draw the reasonable inference that no probable cause supported the continued prosecution. Plaintiff has pleaded the third element of his malicious prosecution claim.

Finally, Mr. Hayes asserts that plaintiff has failed to plead the fourth element because he has asserted no facts from which the court could draw a reasonable inference that he acted with malice. But, the Tenth Circuit has recognized that the district court properly can infer malice so long as the allegations, if proven, would support a finding that defendant acted with malice. *See*

*Pierce*, 359 F.3d at 1296–97 (affirming district court's conclusion that "the allegations, if proven, would support that Defendant possessed malice" in her actions). Similarly here, if the plaintiff's allegations are proven, they support the theory that Mr. Hayes acted with malice.

In sum, plaintiff has alleged sufficient facts to support his claims against Mr. Hayes.

### 4. Statute of Limitations

Mr. Hayes contends plaintiff's claims that the statute of limitations bars plaintiff from prevailing on his claims. Section 1983 "provides a federal cause of action," but federal law "looks to the law of the State in which the cause of action arose" to determine the applicable statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Courts apply the statute of limitations which the "State provides for personal-injury torts." *Id.* Because plaintiff's § 1983 claims arose in Kansas, the court applies Kansas's two-year statute of limitations for personal injury actions to his claims. *See* Kan. Stat. Ann. § 60-513(a)(4).

The "accrual date of a § 1983 cause of action is a question of federal law." *Id.* at 388. Mr. Hayes contends that plaintiff's claims accrued in 2000, when he was convicted. Doc. 77 at 22. For support, he relies on *Lyons v. Kyner*,[12] where the Tenth Circuit explained that a "civil rights action accrues when facts that would support a cause of action are or should be apparent." *Lyons*, 367 F. App'x at 882. According to Mr. Hayes, the facts to support plaintiff's claims should have become apparent when Tom recanted his confession. Doc. 77 at 22. Mr. Hayes contends that Kansas's two-year statute of limitations bars plaintiff's claims.

But in *Heck v. Humphrey*,[13] the Supreme Court held that § 1983 plaintiffs challenging unconstitutional convictions, imprisonment, or other harm caused by "actions whose unlawfulness would render a conviction" invalid, must first "prove that the conviction or

---

[12]     367 F'Appx. 878 (10th Cir. 2010).

[13]     512 U.S. 477 (1994).

sentence has been . . . declared invalid by a state tribunal authorized to make such determination." *Heck*, 512 U.S. at 486–87. According to the Supreme Court, "until the conviction or sentence is reversed, expunged, invalidated or impugned," no § 1983 cause of action exists for such plaintiffs to assert. *Id.* at 489. The Supreme Court explained specifically that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence [thus] does not accrue until the conviction or sentence has been invalidated." *Id.* at 489–90; *see also Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (finding that the statute of limitations on plaintiff's § 1983 action began to run when the Tenth Circuit vacated his conviction and remanded his habeas petition to the district court); *Garza v. Burnett*, 672 F.3d 1217, 1218 (10th Cir. 2012) (explaining that a plaintiff may not sue under § 1983 "if success in the action would undermine a criminal conviction," and, because of that bar, plaintiff's cause of action "does not accrue until the conviction" has been invalidated).

Plaintiff's § 1983 claims allege that Mr. Hayes conspired to violate, and violated, his constitutional rights by fabricating evidence that led to his conviction, and withholding exculpatory evidence. Plaintiff also alleges that Mr. Hayes maliciously prosecuted him. The rule in *Heck v. Humphrey* would have precluded plaintiff's claims if he had tried to bring them before his conviction was overturned. Plaintiff's claims thus did not accrue until the state court overturned his conviction on December 8, 2015. And, because plaintiff filed his original Complaint on May 10, 2016, he asserted his § 1983 claims well within the two-year clock. Plaintiff's claims against Mr. Hayes are not barred by the statute of limitations.

The court thus denies Mr. Hayes' Motion to Dismiss (Doc. 76).

## B. Jim Vanderbilt

Plaintiff brings two § 1983 claims against Mr. Vanderbilt, who served as the County Attorney for the county where plaintiff was convicted during plaintiff's prosecution and wrongful conviction: (Count I) due process violation for fabricating Tom's testimonial evidence; and, (Count II) conspiracy to deprive plaintiff's constitutional rights. In his Motion to Dismiss, Mr. Vanderbilt asserts that, as a prosecutor, he is entitled to absolute immunity, and the court should dismiss plaintiff's claims against him.

### 1. Absolute Immunity

Because of their unique role in the judicial system, prosecutors enjoy absolute immunity from suit for their actions as an officer of the court. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 341–42 (2009) (explaining that the "public trust of the prosecutor's office would suffer" if the prosecutor feared personal liability when making prosecutorial decisions). Prosecutors' absolute immunity applies to conduct that is "'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 485 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). But, absolute immunity does not extend to conduct when the prosecutor is engaged in "investigative or administrative tasks." *Goldstein*, 555 U.S. at 342. The court takes a functional approach when deciding whether prosecutorial immunity applies to particular claims. *Reed*, 500 U.S. at 485. In other words, the court looks to "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

Plaintiff asserts two claims against Mr. Vanderbilt. In Count I, plaintiff claims Mr. Vanderbilt and other defendants used Tom's fabricated testimony to secure his conviction and "failed to correct fabricated evidence that they knew to be false" at plaintiff's criminal trial.

Doc. 75 at ¶ 110. Plaintiff claims that these actions denied his right to a fair trial and "[a]bsent this misconduct, [his] prosecution could not and would not have been pursued." *Id.* at ¶ 112. In Count II, plaintiff alleges that Mr. Vanderbilt and other defendants agreed to fabricate testimonial evidence "that would be used to convict Plaintiff." *Id.* at ¶ 117. Because Counts I and II are tied to plaintiff's trial and conviction, Mr. Vanderbilt contends that this alleged conduct was "directly and intimately connected with the judicial phase of the prosecutorial process." Doc. 81 at 7.

Claiming he deserves absolute immunity, Mr. Vanderbilt relies on *Esquibel v. Brian Williamson*.[14] In *Esquibel*, a prisoner filed a § 1983 claim against the deputy district attorney, alleging he had conspired to withhold exculpatory evidence. *Esquibel*, 421 F. App'x at 814. The Circuit held that the prosecutor was entitled to absolute immunity. *Id.* at 816. It explained: "Absolute prosecutorial immunity applies to both claims that a prosecutor willfully used perjurious testimony and claims that a prosecutor willfully suppressed evidence." *Id.* (discussing *Imbler*, 424 U.S. at 431 n.34). Mr. Vanderbilt asserts that because he, like the prosecutor in *Esquibel*, is alleged to have presented falsified evidence at trial, he is entitled to absolute prosecutorial immunity.

But, plaintiff's First Amended Complaint alleges much more than that. It alleges facts about Mr. Vanderbilt's activities before the trial. Specifically, plaintiff alleges that Mr. Vanderbilt conspired with Mr. Hayes and Mr. Carreno, and other defendants to pin Camille's murder on plaintiff. Doc. 75 at ¶ 52. Plaintiff claims Mr. Vanderbilt and other defendants planned to have Tom recant his confession and tell officers that plaintiff had persuaded him to take the blame. *Id.* at ¶ 53. Plaintiff also asserts that Tom confessed to the murder in Mr. Vanderbilt's presence, but Mr. Vanderbilt released Tom from his charges, and other defendants

---

[14]    421 F. App'x 813 (10th Cir. 2010).

arrested plaintiff in his place.  *Id.* at ¶¶ 60, 62.  Plaintiff cites Tom's suicide note to support his claims against Mr. Vanderbilt.  It read:  "I sent an innocent man to prison.  The Jefferson County police and county attorney Jim Vanderbelt made me do it.  I was told by Vanderbelt to keep my mouth shut.  Now I am going to set thing right."  *Id.* at ¶ 95.

In *Buckley*, petitioner brought § 1983 claims seeking damages from a prosecutor, alleging he fabricated evidence during the preliminary investigation of a crime and made false statements to the press.  *Buckley*, 509 U.S. at 261.  The Supreme Court held that the prosecutor was not entitled to absolute immunity for fabricating false evidence during the preliminary investigation or for his statements to the press.  *Id.* at 275–79.  In concluding that respondent was not entitled to absolute immunity for fabricating evidence, the Supreme Court paid special attention to the timing of his investigation.  *Id.* at 273–74.  The Court emphasized that the prosecutor allegedly had manufactured the evidence before the grand jury was convened.  *Id.* at 274–75.  Indeed, the Supreme Court explained that the prosecutor lacked probable cause to arrest petitioner during that period, and that petitioner was not arrested until ten months after the grand jury convened.  *Id.*  Given these facts, the Supreme Court held that the prosecutor could not claim he was acting as an advocate during the alleged activities, and thus were not entitled to absolute immunity.  *Id.* at 275

*Buckley* is instructive here.  Plaintiff alleges that Mr. Vanderbilt conspired with other defendants to fabricate a narrative that plaintiff had convinced Tom to take the blame for the murder.  These alleged activities took place before plaintiff was arrested and, thus, before probable cause existed to arrest plaintiff.  The time between Mr. Vanderbilt's investigation and plaintiff's arrest in this case is much more compressed than the timeline in *Buckley*, but the functional analysis produces the same outcome.  Mr. Vanderbilt was not acting in his role as an

advocate when he allegedly conspired with other defendants to pin Camille's murder on plaintiff. Mr. Vanderbilt thus is not entitled to absolute immunity for this alleged conduct.

This leaves Mr. Vanderbilt's alternative theory—that he is entitled to qualified immunity. The First Amended Complaint's allegations also prevent him from qualifying for that form of immunity. *See Eden v. Voss*, 105 F. App'x 234, 245 (10th Cir. 2004) (explaining that prosecutors are entitled to seek qualified immunity when they are acting in an investigative capacity). Plaintiff alleges that Mr. Vanderbilt violated his constitutional due process rights when he, along with other defendants, conspired to fabricate and fabricated Tom's testimonial evidence. And plaintiff alleges facts sufficient to support these allegations under Rule 12(b)(6)'s standard. *See* Doc. 75 at ¶¶ 52, 54, 55; Doc. 75 at ¶ 95. So, the only question for the court is whether these rights were clearly established during Mr. Vanderbilt's alleged actions. As discussed above, undoubtedly they were. *See supra* Part III.A.3.; *see also Pierce*, 359 F.3d at 1299 (holding that the right against the deliberate or reckless falsification or omission of evidence was clearly established as early as 1986).

### 2. Conspiracy Claims

Mr. Vanderbilt also asserts that the court should dismiss the claims against him because plaintiff has failed to allege sufficient facts to support a conspiracy. A sufficient conspiracy claim under § 1983 requires the plaintiff to "allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); *see also Edmonson*, 962 F.2d at 1548 ("a defendant's assent can be inferred from acts furthering the conspiracy's purpose."). Plaintiff has alleged specific facts to support both an agreement and concerted action, and thus he has stated a conspiracy claim against Mr. Vanderbilt sufficient to survive Rule 12(b)(6).

Plaintiff alleges the defendants "schemed" to pin Camille's murder on plaintiff. Doc. 75 at ¶ 48. He alleges that Mr. Vanderbilt, Mr. Hayes, and other defendants met several days after Tom's arrest and held a meeting to put their plan into action. *Id.* at ¶ 49. Plaintiff also alleges that during their meeting, Mr. Vanderbilt and other defendants discussed a plan that Tom should recant his confession and inform authorities that plaintiff had confessed to the murder. *Id.* at ¶ 53. Finally, plaintiff alleges that Mr. Vanderbilt and other defendants planned Tom's recanting before it occurred. *Id.* at ¶ 55. Mr. Vanderbilt contends that plaintiff relies on "purely conclusory" allegations. Doc. 81 at 12. But the allegations in plaintiff's First Amended Complaint far surpass "purely conclusory" ones and they are sufficiently specific. These allegations, taken as true, suffice to state a claim that Mr. Vanderbilt conspired to violate plaintiff's constitutional rights.

Plaintiff's First Amended Complaint also alleges an alternative conspiracy theory: "Alternatively, the scheme was perpetuated solely by the Defendant Officers and Defendant Hayes, who concealed it from defendant Vanderbilt." *Id.* at ¶ 54. Mr. Vanderbilt contends that plaintiff's alternative conspiracy claim, in effect, nullifies the viability of a conspiracy claim against him. But the Federal Rules of Civil Procedure explicitly provide for pleading alternative theories. Rule 8(d)(2) provides: "A party may set out 2 or more statements of a claim . . . alternatively or hypothetically." And, Rule 8(d)(3) provides: "A party may state as many separate claims or defenses as it has, regardless of consistency. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Plaintiff's First Amended Complaint alleges sufficient facts for the court to draw a reasonable inference that defendant conspired to deprive plaintiff's constitutional rights. Plaintiff's decision to plead an alternative theory does not change the outcome of this analysis.

The court thus denies Mr. Vanderbilt's Motion to Dismiss (Doc. 80).

### C. KBI Defendant Officers

Plaintiff brings six claims under § 1983 against the KBI defendant officers Terry Morgan, George Johnson, and Jim Woods: (Count I) due process violation for fabricating Tom's testimonial evidence; (Count II) conspiracy to deprive plaintiff's constitutional rights by fabricating Tom's testimonial evidence; (Count III) *Brady v. Maryland*[15] violation for withholding exculpatory evidence; (Count IV) malicious prosecution; (Count V) conspiracy to deprive plaintiff's constitutional rights by withholding exculpatory evidence; and (Count VI) failure to intervene. Separately, Mr. Morgan, Mr. Woods, and Mr. Johnson move to dismiss plaintiff's claims under Rule 12(b)(6).

As a preliminary matter, all three KBI defendant officers rely on the statute of limitations and *Lyons* for their position that plaintiff's claim is barred by the applicable two-year statute of limitations in Kansas. *See* Doc. 84 at 16; Doc. 89 at 14; Doc. 90 at 12. For the same reasons discussed in Part III.A.4., the court rejects this argument. The statute of limitations does not bar plaintiff's claims against the KBI defendant officers.

Next, the KBI defendant officers assert that plaintiff has failed to meet the standard under Rule 12(b)(6) to state a claim against them. Doc. 84 at 8–9; Doc. 89 at 7– 8; Doc. 90 at 10. They contend plaintiff's allegations fail to allege their personal participation in violating his constitutional rights. This is so, they assert, because plaintiff sometimes grouped the KBI defendant officers with the Jefferson County defendants and made allegations about the "defendant officers." The KBI defendant officers contend that these collective allegations are

---
[15] 373 U.S. 83 (1963).

insufficient to state a claim for relief against any of them, and they rely on the Tenth Circuit opinion *Pahls v. Thomas*[16] to support their position.

In *Pahls*, our Circuit held that, at summary judgment, plaintiffs must establish that "each defendant—whether by direct participation or by virtue of a policy over which he possessed supervisory responsibility—caused a violation of" constitutional rights. *Pahls*, 718 F.3d at 1228. The Tenth Circuit held that plaintiffs alleging constitutional rights violations must do more than show that "'defendants,' as a collective and undifferentiated whole, were responsible for those violations." *Id.* "They must identify specific actions taken by particular defendants." *Id.* *Pahls* also held that "failure to make this showing . . . dooms plaintiffs' § 1983" claims "and entitles defendants to qualified immunity." *Id.*; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("[I]t is particularly important [in a § 1983 action against multiple government actors] that the complaint make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claims against him or her.").

But the Tenth Circuit never has adopted blanket prohibition against collective allegations. The Tenth Circuit permits the Complaint to refer to defendants collectively so long as "there is no confusion as to whom the allegation is asserted against." *See Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2008) (holding that plaintiff's allegations were sufficiently specific under Rule 12(b)(6) because plaintiff "clearly nam[ed]" the defendants as the defendants who committed the allegedly unconstitutional acts).

Also, the allegations in *Pahls* differ significantly from the ones asserted here. First, *Pahls* did not involve conspiracy allegations. *See Pahls*, 718 F.3d at 1225. And, the Tenth Circuit has recognized that "[d]irect evidence of an agreement to join a criminal conspiracy is rare," so the court properly can infer an agreement based on the defendant's actions. *Edmonson*,

---

[16]     718 F.3d 1210 (10th Cir. 2013).

28

962 F.2d at 1548.  The court sees no reason why a different rule would apply to allegations of a civil conspiracy.  Second, in *Pahls*, the district court's determinations about defendants' involvement were stated in passive voice.  *Pahls* held that the district court's determinations that "'law enforcement' subjected plaintiffs to disparate treatment" and that plaintiff's First Amendment rights "'were violated'" were insufficient to show personal involvement by the defendants.  *Pahls*, 718 F.3d at 1232.  In contrast, plaintiff here makes several allegations of fact about the defendant officers' actions—and he does so specifically and in the active voice.  *See* Doc. 75 at ¶ 55 (alleging that the defendant officers "planned Tom's recantation before it ever occurred" and coached Tom on the false narrative); *see also Id.* at ¶ 65 (alleging that "Defendant Officers falsified Tom's statements to fit the fictitious roadside meeting"); *Id.* at ¶¶ 69– 71 (alleging that the "Defendant Officers withheld evidence of Tom's guilt from [plaintiff's] defense and the prosecution" including Tom's "detailed confession that he tried to have sex with Camille in his truck . . . and that he had then shot her"); *Id.* at ¶ 72 ("The Defendant Officers purposefully withheld their documentation of inculpatory statements made by Tom and [Mr. Hayes] on the night Tom turned himself in.").  Finally, in *Pahls*, the plaintiffs had filed a complaint against government entities, five unnamed officials, and other defendants including three individual law enforcement defendants.  *Pahls*, 718 F.3d at 1223.  So, when plaintiffs alleged that "law enforcement" violated their constitutional rights, they had lumped eight individuals and several aspects of the government together in one undifferentiated group.  No basis existed for a reasonable person to infer that any individual defendant personally participated.  *Pahls*, 718 F.3d at 1231–32.

Here, there is no confusion.  Plaintiff's allegations, when they refer to the "defendant officers," refer to the KBI defendant officers—Mr. Morgan, Mr. Woods, and Mr. Johnson—and

the Jefferson County defendants. The "defendant officers" refers to eight individuals who plaintiff has alleged were integral and active participants in the investigation of Camille's death, and then, the conspiracy to frame plaintiff. For example, plaintiff alleges that Mr. Morgan searched plaintiff's home, but did not search Tom's home. Doc. 75 at ¶ 79. And, plaintiff alleges that Mr. Woods heard Tom's confession, but withheld it from the prosecution and defense. *Id.* at ¶¶ 37, 71. Plaintiff also alleges that Mr. Johnson falsified polygraph results. *Id.* at ¶¶ 82–83. Then, collectively, plaintiff alleges that the defendant officers, as part of the conspiracy, planned Tom's recantation and withheld evidence of Tom's guilt. *See e.g.*, *Id.* at ¶¶ 55, 69–71. This is sufficient for the court to infer that the KBI defendant officers personally participated to violate plaintiff's constitutional rights.

In sum, plaintiff's "defendant officer" allegations suffice to show personal involvement by Mr. Morgan, Mr. Woods, and Mr. Johnson.

### 1. Mr. Morgan

Mr. Morgan asserts that plaintiff's First Amended Complaint fails to allege sufficient facts to support claims against him. Mr. Morgan contends that he only is mentioned explicitly once: "Defendant Morgan and other Defendant Officers declined to subject Tom's home—or even his room—to any rigorous forensic examination, and instead intentionally recovered such items as Tom's weapons and ammunition by permitting Tom's father to handle them and turn them over." *Id.* at ¶ 79. But, as explained above, plaintiff also mentions Mr. Morgan several times as part of the collective group he calls the "defendant officers." *Id.* at ¶ 20. First, plaintiff alleges that the defendant officers "actively suppressed physical evidence that would have proven Tom's guilt including physical evidence from the truck in which Tom had shot Camille . . . and the shovel that Tom identified as having been used to bury Camille's body." *Id.* at ¶ 78.

Second, plaintiff alleges that Mr. Morgan, along with the other defendant officers, were "active participants in the investigation of Arfmann's death and directed various aspects of the investigation." *Id.* at ¶ 19. Third, plaintiff alleges that the defendant officers:

> gathered physical evidence; executed search warrants; photographed the crime scene and victim; conducted and reviewed polygraph examinations and interviews; completed dozens of police reports; directed Defendant Carreno to interview certain witnesses; and themselves interviewed scores of witness including [plaintiff], Tom, another early suspect, and numerous alibi and other witnesses.

*Id.* at ¶ 19. Plaintiff alleges that "defendant Hayes directly schemed with, conspired with, and collaborated with the" defendant officers, and that "[d]efendant Hayes, Vanderbilt, and/or other Defendant officers planned Tom's recantation before it ever occurred." *Id.* at ¶¶ 55, 22. Finally, plaintiff alleges that the defendant officers concealed Tom's many inculpatory statements from the defense. *Id.* at ¶¶ 70–73, 75–76.

### a. Qualified Immunity

Mr. Morgan asserts that he is entitled to qualified immunity. So, the court must decide whether plaintiff has alleged facts sufficient to support a violation of a constitutional right. *Callahan*, 555 U.S. at 232. And, the court must determine whether the right at issue was "clearly established" at the time of defendant's misconduct. *Id.* Unless Mr. Morgan's alleged conduct violated a clearly established constitutional right, qualified immunity shields him from suit. *Id.*

Plaintiff alleges that Mr. Morgan violated his constitutional due process rights when he, along with other defendant officers, fabricated evidence, withheld exculpatory evidence, and conspired to deprive plaintiff's constitutional rights. *Id.* at ¶¶ 78–79, 19, 55, 22, 70–73, 75–76. Plaintiff has alleged sufficient facts to support his claim that Mr. Morgan violated his constitutional rights by falsifying and withholding evidence. And, the right against falsification

or omission of evidence clearly was established at the time of his alleged conduct. *See Pierce*, 359 F.3d at 1299. Mr. Morgan is not entitled to qualified immunity.

### b. Malicious Prosecution

Mr. Morgan also contends that plaintiff has not stated a claim for malicious prosecution against him. As explained above, a malicious prosecution claim under § 1983 requires the following five elements: (1) the defendant caused the plaintiff's prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the continued prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Wilkins*, 528 F.3d at 799. Mr. Morgan contends plaintiff's First Amended Complaint fails to allege facts that support several of these elements.

First, Mr. Morgan contends plaintiff failed to plead facts to support that Mr. Morgan acted with malice. Doc. 84 at 10. But the Tenth Circuit has recognized that "allegations, if proven," may support the theory that defendant acted with malice. *See Pierce*, 359 F.3d at 1296–97 (affirming district court's conclusion that "the allegations, if proven, would support that Defendant possessed malice" in her actions). Similarly here, if plaintiff's factual allegations are proven, they could support an inference that Mr. Morgan acted with malice.

Second, Mr. Morgan contends that he did not cause plaintiff's prosecution. Doc. 84 at 12. But plaintiff specifically alleges that Mr. Morgan failed to search Tom's home, but rigorously searched plaintiff's home. Plaintiff also alleges that Mr. Morgan, as part of the more general "defendant officers," suppressed exculpatory evidence. *Id.* at ¶¶ 78–79, 19, 55, 22, 70–73, 75–76. These allegations, if proven, support the theory that Mr. Morgan distorted evidence as part of an effort to convince prosecuting authorities to press charges. *See Pierce*, 359 F.3d at 1293 (explaining that the actions of one who "prevaricates and distorts evidence to convince the

prosecuting authorities to press charges" can be said to have caused the prosecution). So, plaintiff has alleged facts that support this element.

Finally, Mr. Morgan contends that the original action has not terminated in favor of plaintiff because in December 2015, his conviction was merely vacated and the charges against him dismissed without prejudice. Doc. 84 at 13. But, as explained in above, the Tenth Circuit already has rejected this very theory. *See supra* Part III. B.3.; *see also Pierce*, 359 F.3d at 1294 (explaining that such a "narrow construction of state common law would be inconsistent with federal constitutional standards.").

In sum, plaintiff has alleged sufficient facts to support a malicious prosecution claim against Mr. Morgan.

### c. Fabrication of Evidence

Mr. Morgan next asserts that plaintiff has failed to state a claim for fabricating evidence or *Brady* claim against him. The Supreme Court case, *Brady v. Maryland*, focuses on the duty to disclose exculpatory evidence. *Morgan v. Gertz*, 166 F.3d 1307, 1309 (10th Cir. 1999). The "duties to disclose and preserve . . . exculpatory evidence [are] grounded in the due process right to a *fair trial*." *Id.* at 1310. Here, plaintiff argues that Mr. Morgan failed to search Tom's home and bedroom, and thus participated in suppressing evidence by ensuring that no physical evidence from Tom could be obtained. Doc. 94 at 16. And, as part of the defendant officers, plaintiff alleges that he "suppressed physical evidence that would have proven Tom's guilt including . . . the shovel that Tom identified as having been used to bury Camille's body." *Id.* at ¶ 78. Plaintiff also alleges that the defendant officers concealed Tom's many inculpatory statements from the defense. *Id.* at ¶¶ 70–73, 75–76. Taken as true, one properly could infer

from these allegations—if proven—establish that Mr. Morgan violated plaintiff's due process right by fabricating evidence.

### d. Failure to Intervene

Mr. Morgan asserts that plaintiff's failure to allege that he participated personally in the conspiracy and the alleged acts that deprived plaintiff of his right to a fair trial also fails to link him to the claim that the defendant officers failed to intervene. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citing *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir. 1988); *Byrd v. Clark,* 783 F.2d 1002, 1007 (11th Cir. 1986) (*rev'd on other grounds*); *Webb v. Hiykel,* 713 F.2d 405, 408 (8th Cir. 1983); *Bruner v. Dunaway,* 684 F.2d 422, 426 (6th Cir. 1982); *Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir. 1972)). And "an officer who is present but fails to intervene to prevent another law enforcement official from infringing a person's constitutional rights is liable if the 'officer had reason to know . . . that any constitutional violation has been committed by a law enforcement official [ ] and the officer had a realistic opportunity to intervene to prevent the harm from occurring.'" *Reid v. Wren*, No. 94-7122, 1995 WL 339401, at *3 (10th Cir. June 8, 1995) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)).

Plaintiff's allegations, if proven true, could support a finding that Mr. Morgan failed to intervene to prevent officials from infringing on his constitutional rights.

### e. Conspiracy

Finally, Mr. Morgan asserts that plaintiff has failed to state a claim that he conspired with others to fabricate and withhold evidence to deprive plaintiff's constitutional rights. Doc. 84 at

15. As already explained, a conspiracy claim requires plaintiff to allege facts showing an agreement and concerted action. *Fisher*, 531 F. Supp. 2d at 1263. And, "a defendant's assent can be inferred from acts furthering the conspiracy's purpose." *Edmonson*, 962 F.2d at 1548. Plaintiff alleges that Mr. Morgan helped frame him by failing to conduct rigorous forensic examination of Tom's home and bedroom. Doc. 75 at ¶ 27. And, plaintiff alleges that Mr. Morgan, as part of the conspiracy with the defendant officers, suppressed physical evidence and helped plan Tom's recantation. *Id.* at ¶¶ 78, 55, 22. These allegations, if true, suffice to support an inference that Mr. Morgan agreed to the conspiracy and took concerted action to further it.

The court thus denies Mr. Morgan's Motion to Dismiss (Doc. 83).

### 2. Mr. Woods

Like Mr. Morgan, Mr. Woods asserts that plaintiff's First Amended Complaint fails to allege sufficient facts to support the claims against him. Mr. Woods contends that the First Amended Complaint only mentions him twice: first, when plaintiff alleges that Mr. Woods and other defendants met with Tom and Mr. Hayes at the Jefferson County Sheriff's department, *id.* at ¶ 37, and second, when it alleges that Mr. Woods and other defendants "purposely withheld their documentation of Tom's detailed confession." *Id.* at ¶ 71. But, like Mr. Morgan, Mr. Woods is included in plaintiff's allegations against the defendant officers.

### a. Qualified Immunity

Mr. Woods asserts that he is entitled to qualified immunity because plaintiff has not alleged that Mr. Woods caused a violation of his constitutional rights. But this ignores important aspects of the First Amended Complaint. It alleges that Mr. Woods and the defendant officers "purposely withheld their documentation of Tom's detailed confession." *Id.* at ¶ 71. And, the Complaint alleges that Mr. Woods, as one of the defendant officers, suppressed physical

evidence and helped plan Tom's recantation. *Id.* at ¶¶ 78, 55, 22. Plaintiff sufficiently has

alleged that Mr. Woods violated his constitutional rights, and those rights were clearly

established when he allegedly engaged in this conduct. *See Pierce*, 359 F.3d at 1299 (holding

that the right against the deliberate or reckless falsification or omission of evidence was clearly

established as early as 1986). Mr. Woods is not entitled to qualified immunity.

### b. Malicious Prosecution

Also like Mr. Morgan, Mr. Woods asserts that plaintiff has failed to state a malicious

prosecution claim against him because he did not initiate or continue the proceedings against

plaintiff. But again, the content of the First Amended Complaint contradicts this theory. It

alleges that Mr. Woods helped fabricate testimony and that he withheld evidence. *Id.* at ¶¶ 78,

55, 22. This is sufficient, if proved true, to support a finding for plaintiff on the first element of a

malicious prosecution claim. *Pierce*, 359 F.3d at 1293 (explaining that one who "prevaricates

and distorts evidence to convince the prosecuting authorities to press charges" can be said to

have caused the prosecution). Mr. Woods also contends that the proceedings did not terminate in

plaintiff's favor. But the court already has rejected this argument. *See supra* Part III.B.3.

Plaintiff thus has stated a malicious prosecution claim against Mr. Woods.

### c. Fabrication of Evidence and *Brady*

Mr. Woods also asserts that plaintiff fails to state a claim for fabrication of evidence or a

*Brady* violation against him. But, plaintiff alleges that Mr. Woods, as one of the defendant

officers, "planned Tom's recantation before it ever occurred." *Id.* at ¶ 55. He also asserts that

the defendant officers "suppressed physical evidence that would have proven Tom's guilt

including . . . the shovel that Tom identified as having been used to bury Camille's body." *Id.* at

¶ 78. Also, plaintiff alleges that the defendant officers concealed Tom's many inculpatory

statements from the defense.  *Id.* at ¶¶ 70–73, 75–76.  Taken as true, one can infer that Mr. Woods violated plaintiff's due process right by fabricating and withholding evidence.

### d.  Conspiracy

Finally, Mr. Woods asserts that plaintiff has failed to show that a conspiracy involving him is plausible.  Mr. Woods relies on Tom's suicide note as support for his position, asserting that Tom's failure to mention any KBI defendant officers demonstrates that Tom did not believe that Mr. Woods was a part of the conspiracy.  Doc. 89 at 13.  But, plaintiff alleges that Mr. Woods, as part of the defendant officers, suppressed physical evidence and helped plan Tom's recantation.  Doc. 75 at ¶¶ 78, 55, 22.  These allegations, if true, would suffice to support any inference that Mr. Woods agreed to the conspiracy.  *See Fisher*, 531 F. Supp. 2d at 1263 (explaining that a claim for a conspiracy requires plaintiff to allege facts showing an agreement and concerted action); *see also Edmonson*, 962 F.2d at 1548 ("a defendant's assent can be inferred from acts furthering the conspiracy's purpose.").  And, plaintiff's allegations, if true, are sufficient to support his claim that Mr. Woods failed to intervene to prevent officials from infringing on his constitutional rights.  The court denies Mr. Wood's Motion to Dismiss (Doc. 85).

### 3.  Mr. Johnson

Like the KBI defendant officers, Mr. Johnson asserts that plaintiff's First Amended Complaint fails to allege sufficient facts to support the claims against him.  Mr. Johnson contends that the First Amended Complaint barely mentions him.  But this assertion ignores the Complaint's actual content.  It references Mr. Johnson, individually, a number of times and in important ways.  *See* Doc. 75 at ¶¶ 57–60 (alleging that Mr. Johnson instructed Tom to continue lying to implicate plaintiff during the polygraph exam); *Id.* at ¶ 74 (alleging that Mr. Johnson

purposefully withheld their documentation of Tom's statements during the polygraph examination). And, as discussed above, plaintiff includes Mr. Johnson in his allegations against the defendant officers.

Mr. Johnson joins the KBI officer defendants, asserting that he is entitled to qualified immunity. So, the court must determine whether plaintiff has alleged that Mr. Johnson violated his constitutional right, and if so, whether that right was clearly established at the time of Mr. Johnson's conduct. *Callahan*, 555 U.S. at 232.

Plaintiff has alleged sufficient facts to support the claim that Mr. Johnson violated his constitutional rights. Mr. Johnson contends that he could not have violated plaintiff's constitutional rights since plaintiff was under no obligation to take the polygraph exam, and the results were not used at trial. Doc. 90 at 11. But Mr. Johnson does not cite, and the court does not find, any authority to support his conclusory assertion. And, like the other KBI defendant officers, plaintiff includes Mr. Johnson in his defendant officer allegations. Plaintiff alleges that the defendant officers suppressed physical evidence, and helped plan Tom's recantation. Doc. 75 at ¶¶ 78, 55, 22. Plaintiff has alleged that Mr. Johnson violated his constitutional rights, and, these rights were clearly established when Mr. Johnson acted. *See Pierce*, 359 F.3d at 1299 (holding that the right against the deliberate or reckless falsification or omission of evidence was clearly established as early as 1986). Mr. Johnson is not entitled to qualified immunity.

And, like with the other KBI defendant officers, plaintiff has alleged sufficient facts to support his claims for relief against Mr. Johnson. Plaintiff alleges that Mr. Johnson helped frame plaintiff by instructing Tom to continue lying to implicate plaintiff. Doc. 75 at ¶¶ 57–60. Plaintiff also alleges that Mr. Johnson withheld Tom's confession during the polygraph examination. *Id.* at ¶ 74. And, plaintiff includes Mr. Johnson in his allegations against the

defendant officers. *See Id.* at ¶¶ 57–60, 74, 78, 55, 22. In sum, plaintiff has alleged sufficient facts to support that Mr. Johnson violated his constitutional rights, conspired to violate his constitutional rights, violated *Brady v. Maryland*, failed to intervene, and maliciously prosecuted plaintiff.

The court denies Mr. Johnson's Motion to Dismiss (Doc. 86).

## IV. Conclusion

For the reasons explained above, the court denies defendants' motions to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Michael Hayes' Motion to Dismiss (Doc. 76) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant Jim Vanderbilt's Motion to Dismiss (Doc. 80) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant Terry Morgan's Motion to Dismiss (Doc. 83) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant Jim Woods' Motion to Dismiss (Doc. 85) is denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant George Johnson's Motion to Dismiss (Doc. 86) is denied.

**IT IS SO ORDERED.**

**Dated this 4th day of August, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**