IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **FLOYD S. BLEDSOE,** | |
| **Plaintiff,** | |
| v. | Case No. 16-2296-DDC-JPO |
| **BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JEFFERSON, KANSAS, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff's Motion to Certify Interlocutory Appeal as Frivolous (Doc. 179). Plaintiff's motion addresses a subset of all named defendants in this action who call themselves "the Jefferson County Defendants[,]" a shorthand reference that the court adopts in this Order.[1] *See* Doc. 189 at 2. The Jefferson County Defendants filed a Response in Opposition to plaintiff's motion. *Id.* Plaintiff filed a Reply (Doc. 190). And, on April 27, 2021, the court conducted the required hearing on this matter (Doc. 195). Now, the court is ready to rule plaintiff's motion. Albeit with some reluctance, the court denies plaintiff's motion. Below, the court explains why.

**I.  Factual and Procedural Background**

**A.  Factual Background**

The following facts are taken from plaintiff's Second Amended Complaint (Doc. 141) and the record of this case as memorialized in the docket. The court assumed previously that

---

[1] The Jefferson County Defendants are Jeffrey Herrig, in his individual and official capacity, Randy Carreno, Troy Frost, and Robert Poppa. *See* Doc. 158 at 1 (Order on Mot. to Dismiss).

these allegations are true—for purposes of its Order on the Jefferson County Defendants' Motion to Dismiss this case (Doc. 158)—and as it must under Fed. R. Civ. P. 12(b)(6). *See Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000). Here, the court recites this background briefly merely to reintroduce the backdrop for the current motion.

Almost exactly five years ago, plaintiff initiated this lawsuit against defendants—individuals and state government entities. Doc. 1 (Compl.). His lawsuit alleges profound loss and suffering of a sort that raises fundamental questions about civil rights and our criminal justice system. As plaintiff alleges in his Second Amended Complaint, he was wrongfully accused, wrongfully tried, and wrongfully incarcerated for the abuse and murder of a 14-year-old girl, Camille Arfmann. *See generally* Doc. 141 at 1–3 (Second Am. Compl. ¶¶ 1–8). He served 15 years in prison before his "conviction was overturned and he regained his freedom." *Id.* at 3 (Second Am. Compl. ¶ 8).

"Plaintiff now brings this action to obtain justice and to redress the devastating injuries that Defendants have caused him." *Id.* (Second Am. Compl. ¶ 9). Plaintiff alleges each defendant played a role in concocting a sweeping scheme to pin the young girl's abuse and murder on him, despite their knowledge of the true perpetrator's identity—plaintiff's brother, Tom.[2] *See, e.g., id.* at 9 (Second Am. Compl. ¶ 47) ("Nonetheless, Defendants schemed to pin Camille's murder on Floyd.").

---

[2] Plaintiff's brother "had intellectual difficulties[,]" and plaintiff alleges defendants encouraged and instructed him to learn and repeat their chosen narrative about the crime. *See* Doc. 190 at 2 ("Floyd alleges deliberate and intentional acts by Defendants, including . . . coaching Tom—who had intellectual difficulties—to help him learn Defendants' false narrative . . . and withholding evidence that Tom was guilty and that Floyd was innocent.").

2

**B.     Procedural Background**

In November 2020, the court issued a 162-page Order (Doc. 158) addressing defendants' Motion to Dismiss plaintiff's Second Amended Complaint. The Order explained that both sides had presented valid arguments and some of them required dismissal of some claims but other claims must proceed. *See id.* at 1 ("For reasons explained below, the court grants in part and denies in part the Jefferson County defendants' Motion to Dismiss."). The court granted defendants' Motion to Dismiss plaintiff's constitutional arguments rooted in *procedural* due process, but not his claims based on *substantive* due process. *See id.* at 161.

Defendants have appealed the court's ruling to the Tenth Circuit Court of Appeals. Doc. 168 (Notice of Appeal). Based on their briefs for the current motion and their remarks during the April 27 hearing, defendants challenge: (1) the court's determination that plaintiff's substantive due process claims aren't barred by Supreme Court precedent and Tenth Circuit holdings; and (2) the court's conclusion that plaintiff satisfied legal requirements for alleging plausibly the conduct giving rise to his causes of action. The Jefferson County Defendants contend their appeal relates entirely to issues of qualified immunity (namely, the court's conclusion that it isn't appropriate at the pleading stage of this case), which means their interlocutory appeal is viable and should proceed. Also, they say their interlocutory appeal should proceed at the cost of this matter's momentum overall. In other words, defendants here argue the court should stay discovery until the Tenth Circuit rules their interlocutory appeal because "[g]enerally, a district court lacks jurisdiction to proceed with discovery while an appeal challenging the denial of

3

qualified immunity is pending." Doc. 189 at 1 (citing *Stewart v. Donges*, 915 F.2d 572, 574 (10th Cir. 1990)).[3]

This case is far from over. Hence, defendants' appeal is interlocutory—*i.e.*, it arises before a final judgment in this case. Turning next to the legal standard governing plaintiff's Motion to Certify Interlocutory Appeal as Frivolous, the court also explains the concept of an interlocutory appeal.

## II.     Legal Standard

A "federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). When a party to litigation files a notice of appeal, it's "an event of jurisdictional significance." *Id.* The Supreme Court instructs that an appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Id.* (citations omitted). Typically, it's a two-way street. In most instances, "courts of appeals have no jurisdiction to review orders of the district court until there is a 'final decision' from the district court under 28 U.S.C. § 1291."[4] *Stewart v. Donges*, 915 F.2d 572, 574 (10th Cir. 1990).

However, the Supreme Court has carved out an exception to the general rule that federal appellate courts lack jurisdiction until a district court enters its final judgment. This exception includes a "small class" of cases involving interlocutory decisions "which finally determine

---

[3] The Jefferson County Defendants, as well as other defendants in this case who aren't parties to the current matter, also have filed motions to stay either the case or discovery in the case, pending the Jefferson County Defendants' interlocutory appeal. Their motions are pending before Magistrate Judge O'Hara. Docs. 172, 174, 175.

[4] 28 U.S.C. § 1291 governs "final decisions of the district courts of the United States" and provides the "courts of appeals . . . shall have jurisdiction of appeals from" these decisions of federal district courts.

claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). For these decisions, 28 U.S.C. § 1291 takes on a "'practical rather than a technical construction,'" and interlocutory appeals are treated as though they are "appeals from final decisions." *Stewart*, 915 F.2d at 574 (quoting *Cohen*, 337 U.S. at 546). Still, this is an exception, not the rule. According to the Supreme Court, "[a]ll our jurisprudence is strongly colored by the notion that appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment has been rendered by the trial court." *Will v. United States*, 389 U.S. 90, 96 (1967) (citations omitted).

Here, the appealing defendants have appealed the court's latest ruling on a motion to dismiss. Doc. 168 (Notice of Appeal). These defendants argue their appeal challenges the court's finding that they aren't entitled to qualified immunity in this case. Appeals that turn "on an issue of law" in the context of qualified immunity constitute viable interlocutory appeals. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) ("[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment."); *see also Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1117 (10th Cir. 2019) ("[A] district court's decision denying immunity is 'final' within the meaning of 28 U.S.C. § 1291 under the collateral order doctrine." (citing *Mitchell*, 472 U.S. at 524–30)). Thus, appellate courts "have jurisdiction over the district court's denial of . . . immunity." *Bledsoe*, 934 F.3d at 1117 (citations omitted).[5]

---

[5] The interlocutory appeal addressed in *Bledsoe v. Vanderbilt* turned mostly on a question involving the doctrine of absolute immunity, but the principle explained above holds true for qualified immunity as well.

"When the interlocutory appeal is from the denial of a motion to dismiss . . . or from the denial of a motion for summary judgment based on qualified immunity, the central issue in the appeal is the defendant's asserted right not to have to proceed to trial." *Stewart*, 915 F.2d at 575–76. "The interruption of the trial proceedings is the central reason and justification for authorizing such an interlocutory appeal in the first place." *Id.* at 576. So, "in such cases the divestiture of jurisdiction brought about by the defendant's filing of a notice of appeal is virtually complete" in the sense that the district court retains "jurisdiction only over peripheral matters unrelated to the disputed right not to have [to] defend the . . . action at trial." *Id.* The Jefferson County Defendants argue, in effect, that this rationale extends to their case—meaning they shouldn't have to proceed with discovery while their appeal is pending. Doc. 189 at 1.

"Because the district court is divested of jurisdiction to proceed to trial by the filing of a notice of interlocutory appeal . . . there is the risk that such interlocutory appeals will be subject to abuse." *Stewart*, 915 F.2d at 576. For this reason, a district court may regain jurisdiction—while the interlocutory appeal proceeds—if it certifies the appeal a "frivolous" one. *Id.* at 576–78 ("To regain jurisdiction, [the district court] must take the affirmative step of certifying the appeal as frivolous or forfeited, and until that step is taken it simply lacks jurisdiction to proceed with the trial."); *see also Bowling v. United States*, No. 04-2320-JAR, 2009 WL 1322583, at *4 (D. Kan. May 11, 2009) ("The Tenth Circuit has noted that an interlocutory appeal does not necessarily leave the district court powerless to prevent intentional dilatory tactics by a defendant." (citing *Stewart*, 915 F.2d at 576)).

"In making its determination" whether an appeal is frivolous, "the district court must conduct a hearing on the issue[.]" *Bowling*, 2009 WL 1322583, at *4 (citing *Stewart*, 915 F.2d at 576). If the district court discerns a reasoned basis for concluding an appeal is frivolous, it must,

6

to regain jurisdiction, "state those reasons explicitly[.]" *Id.* (citing *Stewart*, 915 F.2d at 576). "[I]t is the plaintiff's burden to obtain a determination that the defendant's appeal is frivolous or dilatory." *Stewart*, 915 F.2d at 577 (citing *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989)).

A district court's decision certifying an interlocutory appeal as frivolous doesn't come at the cost of appellate review. *See Langley v. Adams Cnty., Colo.*, 987 F.2d 1473, 1477 (10th Cir. 1993) ("Once a district court so certifies a qualified immunity appeal as frivolous and thus regains jurisdiction, that does not affect our jurisdiction."). Instead, "'both the district court and the court of appeals shall have jurisdiction to proceed.'" *United States v. Hines*, 689 F.2d 934, 937 (10th Cir. 1982) (quoting *United States v. Leppo*, 634 F.2d 101, 105 (3d Cir. 1980)). In other words, and given that "[u]nlike an appeal from a final judgment, an interlocutory appeal disrupts ongoing proceedings in the district court,[,]" the option to certify an interlocutory appeal as frivolous exists as a unique tool for district courts who might otherwise watch helplessly while a case stagnates. *Stewart*, 915 F.2d at 575. If the district court disagrees with the movant and declines to certify the interlocutory appeal as frivolous, the trial automatically is stayed pending the appellate court's decision. *Id.* at 577 ("'In the absence of the district court's reasoned finding of frivolousness or forfeiture . . . the trial is *automatically* put off[.]'" (quoting *Apostol*, 870 F.2d at 1339)).

What counts as a frivolous interlocutory appeal? Unfortunately, there's no scientific formula to apply to this question. *Braley v. Campbell*, 832 F.2d 1504, 1511 (10th Cir. 1987) ("'[F]rivolity, like obscenity, is often difficult to define.'" (quoting *WSM, Inc. v. Tenn. Sales Co.*, 709 F.2d 1084, 1088 (6th Cir. 1983)). However, our Circuit and others have elaborated on the concept to some degree. The Tenth Circuit asks whether "'the result is obvious, or the

7

appellant's arguments of error are wholly without merit.'" *Id.* at 1510 (quoting *Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 656 (9th Cir. 1984)).  In the context of qualified immunity, "the 'frivolousness' standard asks not what the law was, but whether it could even be argued that the law was not clearly established."  *Stewart*, 915 F.2d at 583 n.14.  "An appeal is frivolous if baseless, unfounded or a sham."  *Kickapoo Tribe of Indians v. Kansas*, Nos. 92-4233-SAC, 92-4234-SAC, 1993 WL 192795, at *5 (D. Kan. May 19, 1993) (citing *Apostal*, 870 F.2d at 1339).  In *Hines*, the Tenth Circuit offered this guiding principle:

> There must be a reasoned choice so that the divestiture of jurisdiction rule, applicable generally when a defendant files a notice of appeal, should not leave the trial court powerless to prevent intentional dilatory tactics by enabling a defendant unilaterally to obtain a continuance at any time prior to trial by merely filing a motion, however frivolous, and appealing the trial court's denial thereof.

*Hines*, 689 F.2d at 936–37 (citing *United States v. Dunbar*, 611 F.2d 985, 987–88 (5th Cir.), *cert. denied*, 447 U.S. 926 (1980)).

To review, before moving on to the main event, "when a defendant files an appeal based on qualified immunity, the district court is divested of jurisdiction and any subsequent action is null and void."  *Bowling*, 2009 WL 1322583, at *3 (citing *Stewart*, 915 F.2d at 575).  But, a party facing its opponent's interlocutory appeal may file a motion with the district court seeking to certify the appeal as frivolous, and "'a district court may certify to the court of appeals that the appeal is frivolous and get on with the trial.'"  *Stewart*, 915 F.2d at 577 (quoting *Apostol*, 870 F.2d at 1339).  Plaintiff bears the burden of proving the interlocutory appeal is frivolous.  *Id.* (citation omitted).  And if the court agrees—after conducting a hearing and putting pen to paper to supply its "'written findings'"—the court may proceed with the action while the appellate court reviews the interlocutory appeal.  *Hines*, 689 F.2d at 937 ("'[B]oth the district court and the court of appeals shall have jurisdiction to proceed.'" (quoting *Leppo*, 634 F.2d at 105)).

8

**III.     Analysis**

The center of gravity for the present dispute is the parties' divergent views whether the Supreme Court's holding in *Parratt v. Taylor*, 451 U.S. 527 (1981) extends to *substantive*, as well as *procedural* due process claims.[6]  *Compare* Doc. 190 at 5 (Pl.'s Reply) ("*Parratt* does not apply to substantive due process claims and there is no likelihood the Tenth Circuit would hold otherwise.") *with* Doc. 189 at 1 (Defs.' Resp.) ("[T]he appeal is not frivolous because the Tenth Circuit hasn't decided whether *Parratt* . . . precludes substantive due process claims."). Defendants assert their appeal involves more than just that one issue.  *See* Doc. 189 at 5 (asserting that "[i]n addition" to their *Parratt* arguments, defendants' appeal also involves "multiple arguments regarding both prongs of the qualified immunity analysis").  But this matter's predominant focus is the *Parratt* issue.  And that issue is both the starting and ending point for the question whether defendants' appeal is frivolous.

**A.     Defendants' Interlocutory Appeal Arguments About *Parratt***

According to plaintiff, the question "whether the *Parratt* procedural due process doctrine applies to substantive due process claims" flies in the face of "decades of contrary law" such that defendants' interlocutory appeal is frivolous.  Doc. 190 at 5.  The Jefferson County Defendants see things differently.  They contend the court should deny plaintiff's motion "simply because [the] appeal raises an issue of first impression" for the Tenth Circuit—*i.e.*, whether *Parratt* should extend to substantive due process claims.  Doc. 189 at 1.  Neither party appears to contest what's obvious:  *Parratt* plainly applies in the *procedural* due process context.  *See, e.g.*, Doc. 190 at 6 (explaining "*Parratt* dealt with procedural due process claims—where the deprivation by state action of a constitutionally protected interest was not in itself unconstitutional—and the

---

[6]     *Parratt* was overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

only constitutional dimension to the issue was whether the state-provided process was constitutional" (citing *Parratt*, 451 U.S. at 537)).

The court has written at great length about this issue. *See* Doc. 158 at 38–91 (discussing *Parratt*, its progeny, and considering those cases in the context of procedural *and* substantive due process claims). To the extent defendants argued in their Motion to Dismiss that *Parratt* precluded plaintiff's *procedural* due process claims, the court agreed with them. *See, e.g.*, *id.* at 103 ("[T]he court agrees with defendants, *i.e.*, such claims are barred by *Parratt* and the availability of a malicious prosecution tort under Kansas law."). Although the run up to this conclusion required extensive explanation, the conclusion itself wasn't a difficult one to reach because the law is clear on this point. *See id.* at 38–91 (reviewing *Parratt* and collecting subsequent cases holding plaintiffs' procedural due process claims are barred by the availability of an adequate state post-deprivation remedy). Stated simply: controlling precedent provides that "a § 1983 malicious prosecution claim based on a Fourteenth Amendment *procedural* due process violation is not viable where an adequate state law remedy exists." *Id.* at 78.

### 1. *Parratt* and Procedural Due Process

The court has outlined the *Parratt* facts so often that, by now, the parties likely have committed them to memory. A prisoner housed in a Nebraska correctional facility had spent about twenty dollars on some hobby materials, and he expected to receive them at his correctional facility via mail. *Parratt*, 451 U.S. at 529–30. But, even though the "packages arrived at the complex and were signed for by two employees who worked in the prison hobby center[,]" the inmate never received the materials. *Id.* at 530 (explaining the prisoner was "in segregation at the time" the packages arrived "and was not permitted to have the hobby materials" until after his release from segregation, but "officials were never able to locate the

10

packages or to determine what caused their disappearance"). That might sound like much ado about little, but, "because 28 U.S.C. § 1343, the predicate for the jurisdiction of the United States District Court, contains no minimum dollar limitation," the prisoner "was authorized by Congress to bring his action under that section if he met its requirements and if he stated a claim for relief under 42 U.S.C. § 1983." *Id.* at 529.

And that's exactly what he did. Claiming prison officials' "conduct deprived him of property without due process of law in violation of the Fourteenth Amendment of the United States Constitution[,]" the inmate's lawsuit wound its way through the federal courts all the way to its highest rung. *Id.* at 530. Justice Rehnquist didn't exactly see eye to eye with the respondent prisoner. "Nothing in that Amendment protects against *all* deprivations of life, liberty, or property by the State." *Id.* at 537 (emphasis added). Instead, then-Associate Justice Rehnquist wrote that state law tort remedies "could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process." *Id.* at 544.

These details hardly parallel plaintiff's allegations here. In stark contrast to *Parratt*'s lost hobby kit, Mr. Bledsoe alleges he lost more than a decade of his constitutionally protected freedoms to a nefarious conspiracy. *See* Doc. 190 at 2–3 (summarizing briefly plaintiff's allegations in this lawsuit). It's true that some cases following *Paratt* have bridged this gap at least a bit. In its Order on defendants' Motion to Dismiss, the court reviewed these cases in detail and concluded that none brought the facts of *this* case within their reach. *See* Doc. 158 at 38–91.

### 2. The Parties' Arguments About *Parratt*

Plaintiff argues none of these cases even approach the possibility that *Parratt* might extend to apply to *substantive* due process claims like his. *See* Doc. 190 at 7 ("Defendants' contention that the Tenth Circuit will depart from *Parratt*'s express limiting language and the opinions of its sister circuits is frivolous."). For instance, plaintiff remarks that *Parratt* "explained that [the Supreme Court] was seeking to bar claims from federal court only where there had been 'no affirmative abuse of power.'" *Id.* at 6 (quoting *Parratt*, 451 U.S. at 549 (Powell, J., concurring)).[7] Here, "Plaintiff has alleged an 'affirmative abuse of power'" so, he says, "his claims [are] outside the ambit of *Parratt*." *Id.* at 7 (quoting *Parratt*, 451 U.S. at 549 (Powell, J., concurring)). During the court's April 27 hearing on this matter, plaintiff's counsel added that, in *Zinermon v. Burch*, 494 U.S. 113 (1990), the Supreme Court further limited cases that could come within *Parratt*'s reach. *See Zinermon*, 494 U.S. at 136–39; *see also Schulkers v. Kammer*, 955 F.3d 520, 547 (6th Cir. 2020) ("In *Zinermon v. Burch* . . . the Supreme Court limited the reach of the *Parratt-Hudson* doctrine.").

Turning to the Jefferson County Defendants' arguments, they emphasize this question as one of first impression for the Tenth Circuit. *See* Doc. 189 at 3 ("Most significant to this motion, there is an issue of first impression pending in the Jefferson County Defendants' appeal: whether *Parratt* . . . precludes as a matter of law [plaintiff's claims] based on substantive due process."). And, they correctly note the "Tenth Circuit has stated that this precise issue is an 'open question' and 'reserve[d] for another day the question whether [*Parratt*] applies to substantive due process claims.'" *Id.* (quoting *Browder v. City of Albuquerque*, 787 F.3d 1076, 1079–81 (10th Cir. 2015)). Situated alongside the specifics of this lawsuit, the Jefferson County

---

[7]   Plaintiff's citation to this passage from *Parratt* suggests that it reflects a majority of the Court's opinion, but it doesn't. Still, the court understands plaintiff's premise within the context of this lawsuit.

12

Defendants seem to view this "open question" as something like the first domino in a row of closely stacked tiles—if it falls, so too will the others. In other words, they observe the court's prior finding "that Counts II, V, and VI alleging conspiracy and failure to intervene 'must be tied to the constitutional deprivations alleged in the surrounding Counts I, III, and IV' to be actionable." *Id.* (quoting Doc. 158 at 20). So, "if Counts I, III, and IV fail, then Counts II, V, and VI also fail." *Id.* For this reason alone, they contend, their interlocutory appeal isn't frivolous. *Id.*

The Jefferson County Defendants are right about this much: the Tenth Circuit hasn't answered definitively whether *Parratt* should apply to claims rooted in substantive due process. Indeed, all of the parties know as much because the court said so in its Order on defendants' Motion to Dismiss. *See, e.g.*, Doc. 158 at 47 (remarking defendants "concede that the Tenth Circuit hasn't conclusively determined whether *Parratt* should apply to substantive due process claims"). In that Order, the court explained why it wasn't persuaded by defendants' arguments that *Parratt* should control claims based on substantive due process because defendants' arguments relied on dicta and concurring opinions, rather than controlling precedent. *Id.* at 48. And still today, the Jefferson County Defendants haven't convinced the court that it should draw legal conclusions from statements lacking binding authority. Below, the court explains why their argument is unpersuasive. And then, the court explains why the court's views don't equate to a finding of frivolity.

### 3. No Court Has Held *Parratt* Applies to Substantive Due Process Claims

By this court's review, every federal circuit court has touched the issue raised by defendants here. Right here in the Tenth Circuit, for instance, the Circuit wrote—albeit in dicta—that if "*Parratt* and *Hudson* are applicable to the instant case they apply only to the

13

*procedural* due process claims under the Fifth and Fourteenth Amendments." *Lavicky v. Burnett*, 758 F.2d 468, 472 n.1 (10th Cir. 1985) (emphasis added).  These principles, said the Circuit, "*do not apply* to violations of *substantive* constitutional proscriptions under the Fourth Amendment." *Id.* (first citing *Parratt*, 451 U.S. at 536; then citing *Hudson v. Palmer*, 468 U.S. 517, 541 n.4 (1984) (Stevens, J., concurring in part and dissenting in part) (emphasis added)).

The Tenth Circuit isn't alone.  Indeed, a dart thrown randomly at a map of our country would land in a Circuit where one of two things were true:  (1) the relevant court of appeals has ruled that *Parratt* does not apply to substantive due process claims; or (2) the court of appeals has suggested *Parratt* doesn't apply to those claims.  This is so in the First Circuit.  *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 832 n.9 (1st Cir. 1982) (observing, in dicta, that some cases may present a violation of fundamental rights, via government action, which involve fundamentally unfair procedures and therefore go beyond the reach of *Parratt*).  It's especially clear in the Second Circuit.  *Morello v. James*, 810 F.2d 344, 348 (2d Cir. 1987) ("Intentional, substantive violations of constitutional rights are not subject to the rule in *Parratt*."); *Conway v. Vill. of Mount Kisco, N.Y.*, 758 F.2d 46, 48 (2d Cir. 1985) (explaining *Parratt* was "carefully limit[ed] . . . to special situations involving deprivations of property").  Likewise, it's so in the Third Circuit.  *Zilich v. Lucht*, 981 F.2d 694, 696 (3d Cir. 1992) (referencing in a fashion suggesting agreement:  "Writing for the Second Circuit, Judge Meskill . . . concluded that '[i]ntentional substantive violations of constitutional rights are not subject to the rule of *Parratt*.'" (quoting *Morello*, 810 F.2d at 348)); *see also Riley v. Jeffes*, 777 F.2d 143, 147–48 (3d Cir. 1985) (concluding prisoners have an actionable § 1983 claim relating to a "pervasive risk of harm" under the Eighth Amendment but not for similar risk of property loss under *Parratt* and *Hudson*).  The same is true in the Fourth Circuit.  *Dean for and on behalf of Harkness v.*

14

*McKinney*, 976 F.3d 407, 420 (4th Cir. 2020) ("But the *Parratt-Hudson* doctrine does not bar the plaintiff's substantive due process claim."); *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 720 (4th Cir. 1991) ("[S]ome abuses of governmental power may be so egregious or outrageous that no state post-deprivation remedy can adequately serve to preserve a person's constitutional guarantees of freedom from such conduct."); *Daniels v. Williams*, 720 F.2d 792, 796 (4th Cir. 1983) ("Therefore, we hold that the *Parratt* analysis applies to deprivations of nonproperty interests *which do not violate substantive constitutional rights*[.]" (emphasis added)). In the Fifth Circuit, defendants would lose this issue. *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) ("We hold that a state's manufacturing of evidence and knowing use of that evidence along with perjured testimony to obtain a wrongful conviction deprives a defendant of his long recognized right to a fair trial secured by the Due Process Clause, a deprivation of a right not reached by the *Parratt* doctrine."); *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985) ("[T]he *Parratt* rule does not apply to alleged violations of substantive rights incorporated into the [F]ourteenth [A]mendment, and the existence of subject matter jurisdiction over appellant's civil rights claims is therefore not affected by the availability of state remedies." (citation omitted)). In the Sixth Circuit, they'd fare no better. *Wilson v. Beebe*, 770 F.2d 578, 585–86 (6th Cir. 1985) (holding *Parratt* applies to procedural due process claims involving either property or liberty interests, but asserting—albeit as dicta—that *Parratt* wouldn't apply to substantive due process claims). In the Seventh Circuit, there's no question defendants would lose the issue. *Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017) ("The availability of a state-law remedy for malicious prosecution doesn't defeat a federal due-process claim against an officer who fabricates evidence that is later used to obtain a wrongful conviction."); *Armstrong v. Daily*, 786 F.3d 529, 539 (7th Cir. 2015) ("Armstrong's claims seek to vindicate

15

rights of fundamental fairness and thus differ in kind from procedural due process claims governed by *Parratt*, which seek only notice and a hearing before a deprivation occurs."). In the Eighth Circuit, their argument would fail. *Williams-El v. Johnson*, 872 F.2d 224, 228 (8th Cir. 1989) ("The *Parratt* doctrine has not been applied to questions of substantive due process . . . and the reason is clear. . . . [s]ubstantive due process . . . proscribes 'certain government actions regardless of the fairness of the procedures used to implement them.'" (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (further citations omitted)); *L&H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F.2d 517, 523–24 (8th Cir. 1985) ("*Parratt* does not bar a § 1983 action based on the assertion of a substantive constitutional right[.]" (citation and internal quotation marks omitted)). In the Ninth Circuit, the Jefferson County Defendants would have little chance with this argument. *Smith v. City of Fontana*, 818 F.2d 1411, 1415 (9th Cir. 1987) ("Only claims lying within the third category of constitutional protections—procedural protections against wrongful deprivations of life, liberty or property—fall within the scope of the *Parratt* doctrine.");[8] *see also Robins v. Harum*, 773 F.2d 1004, 1009 (9th Cir. 1985) ("Therefore, we conclude that the *Parratt* analysis is not applicable to a claim, such as the instant excessive use of force claim, brought under the Fourth Amendment."). The same goes in the Eleventh Circuit. *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1499–1500 (11th Cir. 1985) (en banc) (holding "*Parratt* itself . . . indicated that its analysis was not based upon the conclusion that all section 1983 claims were to be turned into state torts whenever possible," and the Supreme Court's reasoning "implicitly distinguishes procedural due process claims from all the other constitutional violations that are complete regardless of the subsequent adjudicative procedures

---

[8] *Smith* was overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).

being used" (citations omitted));[9] *see also Hall v. Sutton*, 755 F.2d 786, 787 (11th Cir. 1985) ("Where there is a claim of a substantive deprivation of a constitutional right, *Parratt v. Taylor* and the availability of state remedies provide no bar to federal court adjudication under 42 U.S.C. § 1983." (citations omitted)).  Last, the D.C. Circuit has expressed some ambivalence, but hinted at similar inclinations.  *Washington v. Dist. of Columbia*, 802 F.2d 1478, 1481 (D.C. Cir. 1986) ("If appellees themselves had attacked and injured appellant and thus deprived him of this constitutionally secured interest in personal security, appellant might well have an action under section 1983, although the question would remain whether the availability of state due process in the form of workmen's compensation benefits would provide appellees with a sufficient defense."); *see also id.* at 1480 (explaining prior cases addressing due process claims under Section 1983 "draw a distinction between those rights secured by the Constitution or federal law and those secured only under state tort law; section 1983 provides a remedy only for injuries to the former").

The landscape isn't any better for defendants in this judicial district.  Judge Vratil made it clear that she rejects the argument advanced by defendant's appeal.  *McIntyre v. Unified Gov't of Wyandotte Cnty. & Kansas City, Kan.*, No. 18-2545-KHV, 2020 WL 1028303, at *9 (D. Kan. Mar. 3, 2020).  Much like this case, *McIntyre* is a currently active lawsuit.  Plaintiffs there "allege that defendants arrested, prosecuted and imprisoned" a young man "for a crime that he did not commit, and they bring various claims under 42 U.S.C. § 1983 and state law." *Id.* at *1; *see also id.* at *4 (explaining plaintiffs allege the young man was incarcerated when he was 17 years old and "spent 23 years in prison for crimes that he did not commit").  Just as here, the *McIntyre* defendants filed motions to dismiss.  *Id.* at *1.  Likewise, one of the *McIntyre*

---

[9]     *Gilmere* was abrogated on other grounds by *Graham v. Connor*, 490 U.S. 386 (1989).

defendants argued "the *Parratt* doctrine bars [formerly incarcerated plaintiff's] claims for malicious prosecution . . . and his claims for evidence fabrication and *Brady* violations[.]" *Id.* at *8.

Judge Vratil wasn't having any of this argument. "Circuits have explained, when plaintiff alleges that he was wrongfully convicted in a trial tainted by falsified or destroyed evidence, his malicious prosecution claim 'is grounded in the due process guarantee of fundamental fairness in criminal prosecutions'" such that "'*Parratt* 'doesn't apply in this context.'" *Id.* at *9 (first quoting *Armstrong*, 786 F.3d at 540; then quoting *Avery*, 847 F.3d at 441). And in this case, the court already has shared its view on the matter: "violating the right to a fair trial 'so greatly threatens individual liberty that it must be forever condemned as a matter of constitutional principle'—*i.e.*, it constitutes a substantive due process right." Doc. 158 at 44 (quoting *Hudson v. Palmer*, 468 U.S. 517, 556 (1984) (Stevens, J., dissenting)).

So, one might reasonably ask, why isn't the appeal in this case frivolous?

### 4. The Tenth Circuit Hasn't Ruled Definitively the Issue Whether *Parratt* Precludes Plaintiff's Substantive Due Process Claims

In *Browder*, the Tenth Circuit stopped short of ruling decisively about *Parratt* and substantive due process claims. *Browder*, 787 F.3d at 1081. Instead, the Circuit concluded that appellant had forfeited any arguments on this front for procedural reasons. *Id.* And so, the Circuit "deem[ed] any *Parratt* argument forfeited and reserve[d] for another day the question whether it applies to substantive due process claims—the very course the Supreme Court itself charted when the defendant in *Lewis* similarly failed to raise a *Parratt* argument." *Id.* (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 n.4 (1998)). *Browder* didn't reference *Lavicky*, the earlier case where the Tenth Circuit expressed the following dicta: "*Parratt* and *Hudson* are applicable to the instant case . . . only to the procedural due process claims . . . . [and] [t]hey do

18

not apply to violations of substantive constitutional proscriptions under the Fourth Amendment." *Lavicky*, 758 F.2d at 472 n.1 (citations omitted).

But what matters now is this question: Can this court say "the result [in the appeal] is obvious[,]" or that defendants' "arguments of error are wholly without merit[?]" *Braley*, 832 F.2d at 1510–11 (citations omitted). Can the court call their argument "baseless, unfounded or a sham[?]" *Kickapoo Tribe of Indians*, 1993 WL 192795, at *5 (citation omitted). That's the rubric the court must apply when it evaluates a frivolity motion. Because the Tenth Circuit—at least most recently—has called the issue "an open question" and deferred "for another day[,]" the court can't call the question defendants raise in their appeal frivolous.[10]

## IV. Conclusion

Plaintiff's motion to certify forces the court to make a binary choice. One option would halt discovery in this aging matter (or at least a substantial portion of it), while the second interlocutory appeal in this case proceeds. The other option permits discovery to proceed across the case while the Circuit considers an appeal deemed frivolous (by the district court, at least). While the court is skeptical about defendants' chances and fully mindful of the need for this case to get going, the opinion that matters belongs to the Tenth Circuit. And under the demanding standard this court must honor, the court cannot say that plaintiff has shown the appeal is

---

[10] The court *can* say, however, that it's perplexed by defendants' appeal. Their Memorandum opposing plaintiff's Motion to Certify Interlocutory Appeal as Frivolous centers the debate around *Parratt*. *See* Doc. 189 at 1 (arguing plaintiff's motion "should be denied simply because [the] appeal raises an issue of first impression" for the Tenth Circuit—*i.e.*, the issue whether *Parratt* precludes substantive due process claims). Their other arguments—each of them barely explained—consume about one page. *See id.* at 3–4. But defendants seem to have flipped the script on appeal. Their opening brief to the Circuit devotes just five of 35 total pages of legal arguments to the *Parratt* conundrum. *See* Opening Brief of Defendants-Appellants at 55–59, *Bledsoe v. Bd. of Cnty. Comm'rs, Jefferson Cnty. Kan.*, No. 20-3252 (10th Cir. Feb. 16, 2021), ECF No. 010110480755. So, before this court, they describe the *Parratt* inquiry as their predominant concern. But in the Tenth Circuit, it seems just slightly more than ancillary.

frivolous.  Given that conclusion, one the court reaches reluctantly, the court must deny plaintiff's Motion to Certify Interlocutory Appeal as Frivolous (Doc. 179).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Certify Interlocutory Appeal as Frivolous (Doc. 179) is denied.

**IT IS SO ORDERED.**

**Dated this 7th day of May, 2021, at Kansas City, Kansas.**

s/ Daniel D. Crabtree  
**Daniel D. Crabtree**  
**United States District Judge**