# EXHIBIT 29

## MARY KOCH

1   .

2               IN THE UNITED STATES DISTRICT COURT

3                 FOR THE DISTRICT OF KANSAS

4   .

5   .

6   FLOYD BLEDSOE,

7           Plaintiff,

8       vs.                    Case No. 2:16 CV 02296

9   JEFFERSON COUNTY, KS,

10  et al.,

11          Defendants.

12  .

13  .

14             VIDEOTAPED DEPOSITION OF

15                   MARY KOCH,

16  taken on behalf of the Plaintiff, pursuant to

17  Notice of Deposition, beginning at 10:17 a.m. on

18  the 11th day of April, 2023, at the offices of

19  Appino & Biggs Reporting Service, 6420 W. 95th

20  Street, Suite 101, in the City of Overland Park,

21  County of Johnson, and State of Kansas, before

22  Barbara J. Hoskinson, Certified Court Reporter,

23  Kansas License No. 0434 and Missouri License No.

24  999.

25  .

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# MARY KOCH

```
1                          APPEARANCES

2    .

3    .

4   ON BEHALF OF THE PLAINTIFF:

5    .

6        Ms. Theresa Kleinhaus (By video conference)

7        Loevy & Loevy

8        311 N. Aberdeen St., 3rd Floor

9        Chicago, Illinois, 60607

10       312-243-5900

11       tess@loevy.com.com

12   .

13   .

14  ON BEHALF OF DEFENDANTS MORGAN, WOODS,

15  JOHNSON ESTATE:

16   .

17       Mr. Shon Qualseth (By video conference)

18       Assistant Attorney General

19       120 SW 10th Ave, 2nd Floor

20       Topeka, Kansas, 66612

21       785-368-8424

22       shon.qualseth@ag.ks.gov

23   .

24   .

25   .
```

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street            6420 W. 95th Street            800 E. 1st Street
Topeka, KS 66604              Suite 101                      Suite 305
785-273-3063                 Overland Park, KS 66212         Wichita, KS 67202
www.appinobiggs.com           913-383-1131                   316-201-1612

# MARY KOCH

1    ALSO PRESENT:

2    .

3         Mr. Michael Hayes (By video conference)

4         Ms. Milesha Sengun (By video conference)

5         Mr. Efrain Soto, Videographer

6    .

7    .

8    .

9    .

10   .

11   .

12   .

13   .

14   .

15   .

16   .

17   .

18   .

19   .

20   .

21   .

22   .

23   .

24   .

25   .

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# MARY KOCH

```
1                               INDEX

2    .

3    .

4    Certificate ----------------------------- 76

5    .

6    .

7                               WITNESS

8    ON BEHALF OF PLAINTIFF:               PAGE

9    MARY KOCH

10   Direct-Examination by Ms. Kleinhaus      6

11   Cross-Examination by Mr. Qualseth        60

12   .

13   .

14                               EXHIBITS

15   DEPO EXHIBIT NO.:                    MARKED

16   No 221  KBI Memorandum from Woods

17        dated 11-10-99                      6

18   No 222  KBI Memorandum from Woods

19        dated 11-15-99                      6

20   No 223  KBI Biology Section

21        Examination Title Worksheet        6

22   No 224  Telephone Contact Log Sheet

23        dated 11-22-99                      6

24   .

25   .
```



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# MARY KOCH

```
 1   No 225   Correspondence from Jeff
 2          County Sheriff's Department
 3          KBI Subpoena 005816                         6
 4   No 226   Telephone Contact Log Sheet             6
 5          dated 1-25-00
 6   No 227   Laboratory Report 2-3-2000              6
 7   No 228   Supplemental Laboratory Report
 8          dated 4-20-2000                           6
 9   No 403   Jeff County Evidence Custody
10          Receipt 3-24-2000                        70
11   No 404   Laboratory Report 4-24-2000            70
12   .
13   PREVIOUSLY MARKED EXHIBITS
14   No 41   KBI Investigation Report-Woods, 11-6-99
15   .
16   .
17   .
18   .
19   .
20   .
21   .
22   .
23   .
24   .
25   .
```

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

**MARY KOCH**

1          (THEREUPON, Exhibit No 221, No 222,

2   No 223, No 224, No 225, No 226, No 227 and No 228

3   were marked for identification.)

4          THE VIDEOGRAPHER:  Good morning.  Today

5   is the 11th day of April, 2023.  The time is

6   approximately 10:17 a.m. central time.  This is

7   the video conference deposition of Mary Koch in

8   the matter of Floyd Bledsoe vs. Jefferson County,

9   Kansas, et al., Case No. 16 CV 02296.  Would

10  counsel please state your appearances for the

11  record.

12         MS. KLEINHAUS:  Good morning.  Tess

13  Kleinhaus on behalf of the plaintiff.

14         MR. QUALSETH:  Hi, I'm Shon Qualseth on

15  behalf of defendants Terry Morgan, Jim Woods and

16  the estate of George Johnson.

17                 MARY KOCH,

18  called as a witness on behalf of the Plaintiff,

19  was sworn and testified as follows:

20  DIRECT-EXAMINATION

21  BY MS. KLEINHAUS:

22      Q.   Just for our record, defendant Hayes is

23  also observing today.  Okay, ma'am, I know that we

24  spoke a little bit before we got started on the

25  record this morning.  As I said, my name is Tess.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street       6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604          Suite 101                 Suite 305
785-273-3063              Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com       913-383-1131              316-201-1612

## MARY KOCH

1    I represent the plaintiff and I'm going to be
2    asking you some questions today related to your
3    time as an employee for KBI.  Do you understand
4    that?
5         A.   Yes.
6         Q.   Okay.  And have you given a deposition
7    before?
8         A.   I think so, but it's been many years ago.
9         Q.   Okay.  Just to make it easier on all of
10   us today I'll just remind you that when you're
11   answering questions please try to speak out loud
12   instead of nodding or saying uh-huh or huh-uh.
13        A.   Right.
14        Q.   Please try to with yes or no, is that
15   fair?
16        A.   Yes.
17        Q.   Okay, and if you can be careful not to
18   talk over me I'll be careful not to talk over you
19   and that will make it easier for our court
20   reporter.  Is that fair?
21        A.   Yes.
22        Q.   Okay, and please don't be offended by
23   this, I ask everyone, but are you on any
24   medications or substances today that would impact
25   your memory?



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

# MARY KOCH

1      A.    No.

2      Q.    Okay.  Do you have any medical conditions

3  that would impact your memory?

4      A.    No.

5      Q.    Okay.  Are you currently employed?

6      A.    No, I'm not.  I'm retired.

7      Q.    Okay, and when did you retire?

8      A.    From the KBI I retired in I think it was

9  May 10th in 2005.

10     Q.    That is a very precise memory.  Okay, May

11  10th, 2005, probably a happy day.  And since that

12  time have you had any other employment?

13     A.    Yes.  I trained to be a dental hygienist

14  in 2005 and two thou -- I graduated from Johnson

15  County Community College in 2007.

16     Q.    And then did you work as a dental

17  hygienist for a period of time?

18     A.    Yes, I did.

19     Q.    Okay, and from when to when working?

20     A.    From 2007 until 2015, I believe.

21     Q.    Okay, and have you been employed since

22  2015?

23     A.    No.

24     Q.    Okay.  From -- when did you start working

25  for KBI?



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**MARY KOCH**

1       A.    That was in, I think it was March of

2   1993.

3       **Q.    And when you first started working for --**

4   **I'm sorry, strike that.   What was your position**

5   **when you were hired at KBI?**

6       A.    I was hired as a forensic scientist

7   working in what was then called the biology lab.

8       **Q.    And did you maintain that same label**

9   **forensic scientist until you retired from KBI in**

10  **May of 2005?**

11      A.    Yes, I did.

12      **Q.    Okay, and what were your responsibilities**

13  **as a forensic scientist in the biology lab for**

14  **KBI?**

15      A.    My responsibilities were first to examine

16  any items of evidence that came in for a

17  particular case and then based on what I found I

18  might do more testing.

19      **Q.    What is the highest level of education**

20  **that you have?**

21      A.    I received a bachelor in biology from

22  Washburn University in 1989.

23      **Q.    Generally what did you do for work**

24  **between 1989 and when you were hired by KBI in**

25  **1993?**


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

**MARY KOCH**

1          A.    I worked at I think two different jobs

2     trying to find my place in my career.

3          **Q.    Okay, and, so, you were -- were you**

4     **working as a forensic scientist in those jobs?**

5          A.    No.

6          **Q.    Prior to working for KBI had you ever**

7     **worked as a forensic scientist before?**

8          A.    No.

9          **Q.    Were you provided any training by KBI on**

10    **how to perform your duties as a forensic**

11    **scientist?**

12         A.    Yes.   My first year at the KBI I was

13    training and under supervision to make sure that I

14    could do the biological testing and to make sure

15    that I was screening evidence correctly.

16         **Q.    Can you describe for me, and focusing on**

17    **1999 or 2000 if that makes a difference, how the**

18    **KBI lab was organized?   Were there different**

19    **divisions, sections or --**

20         A.    Well, there was -- I'm sorry.   There was

21    one section that was for CODIS, the national

22    database of offenders and some victims, and then

23    most of -- all of the rest of us were screening

24    evidence and doing the biological testing.

25         **Q.    And the section that was focused on**

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## MARY KOCH

1  screening evidence, was that just called the

2  biology section or how would you refer to that?

3      A.    We would call it the biology section.

4  Along in the lab, I just remembered that we had a

5  certain area that was for the DNA analysis that

6  they did before STRs.

7      Q.    And just for the nonscientists what does

8  FTR (sic) stand for?

9      A.    STR stands for short tandem repeats.

10      Q.    Okay, sorry, I misheard you, yes, STR,

11  okay.  When you were working in the biology

12  section, does that section also do testing on

13  firearms?

14      A.    No, that was a different section,

15  although we had someone examining trace evidence

16  and hairs at that time as part of biology.

17      Q.    So, like trace evidence on a firearm?

18      A.    No, no.

19      Q.    Okay.

20      A.    From screening of our evidence or what we

21  received from the autopsy or other agents.

22      Q.    I see.  A completely different task than

23  firearms, right?

24      A.    Yes, that was a totally separate section.

25      Q.    Okay, and then in the biology section



5111 SW 21st Street          6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604             Suite 101                   Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                316-201-1612

## MARY KOCH

1  would that encompass people looking at

2  fingerprints?

3      A.   No, we didn't do fingerprinting.  That

4  was a separate section.

5      Q.   What types of testing generally would you

6  do within the biology section?

7      A.   Well, what used to be called a rape kit

8  that contains swabs and trace evidence from the

9  victim's body and I did a presumptive test that

10 indicated the presence of seminal fluid and then I

11 identified it through a microscopic slide that is

12 stained from the swab or the cutting that I found

13 possible seminal fluid on.  For, for larger

14 objects we used an alternate light source that had

15 light of different -- can't remember the word --

16 and, and we used different -- anyway, we -- and

17 that would usually highlight a body fluid,

18 although it could be --

19     Q.   You froze for me.

20          MR. QUALSETH:  Me, too.  I can see you

21 and hear you, Tess.

22          (THEREUPON, an off the record discussion

23 was held.)

24          THE VIDEOGRAPHER:  Time is 10:32 a.m.,

25 we're back on the record.



Appino &amp; Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604             Suite 101                   Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                316-201-1612

## MARY KOCH

1          MS. KLEINHAUS:  Okay, we had a short
2    break there because of tech difficulties but we're
3    back on the record and I believe Mr. Qualseth is
4    going to add the appearance of another assistant
5    attorney general?
6          MR. QUALSETH:  Yep, in the room we have
7    assistant attorney general, Milesha Sengun.
8          THE WITNESS:  Hello.
9    BY MS. KLEINHAUS:
10   **Q.    Okay, ma'am, before we got cut off we**
11   **were talking about how you would test larger**
12   **cuttings and you said that you used an alternate**
13   **light source.  Is that correct?**
14   A.    Of different wave lengths and it would
15   show for us different body stains, such as saliva,
16   sometimes urine, as well as seminal fluid.
17   **Q.    How many forensic scientists worked in**
18   **the biology section at the lab in 1999 or 2000**
19   **era?**
20   A.    Gosh, I think probably about half a
21   dozen.  In 2000, July of 2000 I opened up the
22   satellite laboratory at Kansas City, Kansas,
23   Community College and for a while I was the only
24   person on staff.
25   **Q.    Okay, and you mentioned earlier that you,**

Appino & Biggs Reporting Service, Inc.

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## MARY KOCH

1      one of your duties at the lab was testing what

2      were then called rape kits, is that right?

3           A.    Yes.

4           Q.    And during your year of training when you

5      first joined KBI were you given some training on

6      how to test rape kits?

7           A.    Yes.   We used a presumptive test and then

8      we took cuttings from the swab and put them in a

9      solution and centrifuged the tube down and at the

10     bottom was maybe sperm cells.

11          Q.    When you say you used a presumptive test,

12     what do you mean that it was presumptive?

13          A.    That means a test that gives an

14     indication but not, does not identify.   More

15     testing is needed.

16          Q.    It gives an indication -- what is it

17     indicating?   That there's some form of body fluid

18     there?

19          A.    Yes, and there might -- and it might be

20     sperm, or might not be sperm.

21          Q.    Other than the testing for seminal fluid

22     that you've already described, what other

23     substances would you test for when you were a

24     forensic scientist in the biology lab?

25          A.    We also screened items of evidence for

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## MARY KOCH

1   the presence of blood.

2         Q.    **How would you screen items for the**

3   **presence of blood?**

4         A.    A visual search, and we only used a

5   presumptive test for the presence of blood.

6         Q.    **So, when you say you did a visual search,**

7   **does that mean that you would look with the naked**

8   **eyes to see if you saw anything that looked like**

9   **it could be blood?**

10        A.    And also magnification, yes.

11        Q.    **Okay.  And then did I understand you**

12  **correctly if you saw something that you thought**

13  **could be blood then you would do the presumptive**

14  **test?**

15        A.    Yes.

16        Q.    **And, but for blood there wasn't another**

17  **test that you conducted after the presumptive**

18  **test, is that right?**

19        A.    That's right.  We had a test for whether

20  or not it was human blood and at the time I

21  started we used electrophoresis gel to

22  differentiate people.  It wasn't very selective,

23  so, it included a large group of people.  I was

24  trained in STR technology with the old-style dot

25  blot and also with the STRs in a machine.



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

### MARY KOCH

1    Q.   Okay, other than seminal fluid and blood

2    what other substances would you test for?

3    A.   Well, we would test these spots to see if

4    we could confirm that it was seminal fluid, but as

5    far as I recollect we might look for some blood

6    stain patterns emerging that could give more

7    information, but generally we just did the

8    biological testing that I mentioned.

9    Q.   So, is it fair to say the majority of

10   your work when you were a forensic scientist in

11   the biology section was doing these various

12   screens and tests for seminal fluid or blood?

13   A.   Yes.

14   Q.   I want to go back.  You mentioned that

15   you would test rape kits and you said that a rape

16   kit would consist of -- I'm sorry, strike that,

17   please.  What would a rape kit consist of?

18   A.   It consisted of swabs from the patient's

19   body, including oral swabs, rectal swabs, and

20   vaginal swabs, and any trace evidence that might

21   be found on the victim's body.

22   Q.   And what do you mean by trace evidence?

23   A.   Trace evidence is something like hairs or

24   fibers that may be on the body.

25   Q.   And when you were assigned to the biology

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## MARY KOCH

1  section of KBI in 1999-2000 before you moved to
2  the satellite, who was your supervisor?
3        A.    Eileen Burnau for most of my time there,
4  although she retired and I don't remember who was
5  interim, but we had somebody that became our
6  supervisor later.
7        Q.    Okay, and when you were a forensic
8  scientist in the biology lab in 1999 and 2000, how
9  would you be assigned to a particular
10 investigation?
11       A.    That was up to the supervisor.  I really
12 didn't have any control and I think they just
13 assigned cases more or less evenly.
14       Q.    And when you were assigned to an
15 investigation was it your practice to have a
16 conversation with the law enforcement agents
17 involved in the investigation about it --
18       A.    It wasn't -- it wasn't unusual.
19       Q.    Okay, and why was it important to you to
20 have conversations with the law enforcement agents
21 about the investigation?
22       A.    Sometimes they could ask us to prioritize
23 certain items of evidence and just so we
24 understood what the story was or how the crime was
25 committed.


5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### MARY KOCH

1       Q.   Was it your practice to take notes on

2  those conversations, including the information

3  about the context of the crime?

4       A.   Yes.

5       Q.   And you would document who provided the

6  information to you in case you needed to do any

7  kind of follow-up, is that right?

8       A.   I'm sorry?  Repeat.

9       Q.   Sure.  You would document who gave you

10  the information about the crime and the

11  investigation so that if you needed to follow up

12  with that law enforcement agent you could, right?

13      A.   Yes.

14      Q.   And as I'm sure you understand, you're

15  here today to testify related to the Bledsoe case

16  involving the homicide of Camille Arfmann.  Do you

17  have any independent recollection, meaning in your

18  own mind without any documents, your own memory of

19  working on that investigation?

20      A.   No, I don't.

21      Q.   And I sent you some documents to review

22  before your deposition at your request.  Did

23  reviewing any of those documents refresh your

24  recollection at all about working on this

25  investigation?



5111 SW 21st Street     6420 W. 95th Street     800 E. 1st Street
Topeka, KS 66604        Suite 101               Suite 305
785-273-3063            Overland Park, KS 66212 Wichita, KS 67202
www.appinobiggs.com     913-383-1131            316-201-1612

## MARY KOCH

1      A.    Not particularly.  I would need more

2  information.

3      Q.    Okay.  You should have a stack of

4  exhibits available to you there in hard copy.  Do

5  you have some papers there?

6      A.    I have a telephone -- oh, I'm sorry.  I

7  was just handed some.

8      Q.    Okay, good.  And I will share on my

9  screen what's previously been marked as Exhibit

10  41.  Can you look or page through to find Exhibit

11  41, please?

12      A.    Yes, I have that.

13      Q.    As soon as I mark that I'll put it up on

14  the screen, okay?  Can everybody see that okay?

15      A.    Yes.

16      Q.    Okay, and if you take a look here at

17  Exhibit 41, it starts with an investigation report

18  related to homicide committed against Camille

19  Arfmann.  Do you see that?

20      A.    Yes.

21      Q.    And if you can just take a moment,

22  please, to page through Exhibit 41.  I just want

23  to ask you a few general questions about this.

24  Okay?

25      A.    Yes.  On the first sheet of item, of

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

**MARY KOCH**

1   Exhibit 41 it says the attached ERCs (sic), which

2   are evidence custody receipts, reflect items of

3   evidence submitted to the KBI laboratory for

4   examination.  These pages also reflected a

5   memorandum delivered to the KBI lab office on 12-

6   2-99.

7        **Q.   Okay, and, so, the first page of this is**

8   **an investigation report that summarizes the**

9   **documents that come after it, right?**

10       A.   Yes.

11       **Q.   Okay, and are you familiar with the**

12  **evidence custody receipts that are part of Exhibit**

13  **41 after that first page?**

14       A.   Yes.

15       **Q.   Okay, and (garbled) --**

16            THE REPORTER:  Repeat, please.

17       BY MS. KLEINHAUS:

18       **Q.   Sure.  How are you familiar with this**

19  **type of document, the evidence custody receipt?**

20       A.   This type of receipt was always filled

21  out when the evidence was brought to the KBI

22  laboratory and reflects the name of the collector,

23  the date it was collected, and often the signature

24  of the collector.

25       **Q.   Am I correct the collector would**

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## MARY KOCH

1    typically be someone from law enforcement, not

2    someone from the lab, right?

3        A.   Yes.  The evidence would be brought in by

4    the law enforcement officers working on the case

5    and they would -- we would fill out this form

6    reflecting the items that they submitted and the

7    date that they were submitted.

8        Q.   Okay.  Was it ever part of your

9    responsibilities to fill out these evidence

10   custody receipts?

11       A.   No.

12       Q.   Okay.  Am I correct that the law

13   enforcement agents would fill these out listing

14   the items that they brought in what they wanted

15   examined?

16       A.   Yes.

17       Q.   Okay, and then at some point would you

18   receive the evidence custody receipts related to

19   investigations that you were assigned to?

20       A.   Yes.  After the evidence, evidence

21   custody personnel would be sure that every item

22   that's listed has been submitted and then the case

23   goes -- this list goes to the supervisor and then

24   the supervisor gives it to a particular scientist.

25       Q.   Do you see here on page 2 of Exhibit 41

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## MARY KOCH

1    there's a stamp if you look about, I don't know, a

2    quarter of the way down, says KBI lab page number

3    and then there's a handwritten number 1, do you

4    see that?

5         A.   Yes.

6         Q.   And would the KBI lab page numbers be a

7    way that you were able to track different items

8    when you're reporting back on your testing

9    results?

10        A.   Yes.  It reflects what I tested, what

11   items.

12        Q.   Okay.  So, when you would make your

13   reports you would refer to the KBI lab page and

14   then the item that was tested, is that correct?

15        A.   Yes.

16        Q.   Okay.  You can put that to the side for

17   now.  If you can just keep it handy, please.

18   Okay, ma'am, I'm going to show you what has

19   previously been marked as Exhibit 221, if you

20   could have that handy.

21        A.   Yes.

22             MS. KLEINHAUS:  And, Shon, do you have

23   those with you?  I can send them to you if you

24   prefer that to have them on the screen.

25             MR. QUALSETH:  Yeah, I do not have those,

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# MARY KOCH

1    so, if you could send those to me that'd be great.

2             MS. KLEINHAUS:  Okay.  Just give me one

3    second to do that.

4             MR. QUALSETH:  Sure.

5             (THEREUPON, an off the record discussion

6    was held.)

7             THE VIDEOGRAPHER:  Time is 10:54 a.m.,

8    we're back on the record.

9       BY MS. KLEINHAUS:

10      **Q.   Okay, we had another brief break there**

11   **because of technical issues.  Do you have Exhibit**

12   **221 in front of you?**

13      A.   Yes, I do.

14      **Q.   Okay, and I've also shared that on the**

15   **screen.  Let me just make it a reasonable size.**

16   **Okay, are you familiar with this type of document?**

17      A.   Yes.

18      **Q.   And what is it?**

19      A.   It is from James Woods and it lists the

20   items of evidence that they want us to examine.

21   It says a suspect has been charged, identified and

22   charged in Jefferson County District Court.  At

23   the second highlighted sentence that says to -- it

24   says KBI lab with firearms highlighted and slash

25   biology.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604               Suite 101                   Suite 305
785-273-3063            Overland Park, KS 66212          Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

**MARY KOCH**

1    Q.    Okay, and how would you have received a

2    memorandum -- strike that.   Would you have

3    received a memorandum like this?

4    A.    It's not typical, but we have that

5    sometimes, yes.

6    Q.    Okay.   If a law enforcement agent chose

7    to draft a memorandum would you as someone

8    assigned to the KBI case receive a memorandum like

9    this?

10    A.    Yes.

11    Q.    And if you look there about four lines

12    down it says, it has a KBI case number, do you

13    see that part?

14    A.    Yes.

15    Q.    And would that be a unique identifier for

16    each KBI case?

17    A.    Yes.   A case number is specific to each

18    case and that if further items of evidence were

19    submitted in this case it would have the same lab

20    number as well as my worksheets.

21    Q.    And, so, this memorandum goes on to

22    request some testing on firearms.   That wasn't

23    something that you were responsible for, right?

24    A.    Right.

25    Q.    And the last two lines say, examine for

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# MARY KOCH

1   seminal and/or body fluid items 1, 4, 5, 6, KBI

2   lab page 5.

3       A.   Yes.

4       Q.   Examine for blood items 2, 4, 5, 6, KBI

5   lab page 5, and those are the instructions that

6   would apply to you as a member of the biology

7   section, is that right?

8       A.   It would be the priority of the items to

9   be examined first.

10      Q.   And when you say it would be priority,

11  that you would often test other items, but these

12  are the items that you would test first, is that

13  right?

14      A.   Typically we would use that to prioritize

15  items, but it may not be the only items that we

16  test.

17      Q.   Okay.  Outside of a memorandum like this

18  which you said sometimes you would receive,

19  sometimes you wouldn't, how would you learn what

20  items you were supposed to test and for what?  Was

21  it just the evidence custody receipts or was there

22  another source for that?

23      A.   It was generally the evidence custody

24  receipts.

25      Q.   Okay.  And on this memorandum when it

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

# MARY KOCH

1   refers to items on KBI lab page 5, those would be
2   the items listed in the previous exhibit on the
3   page that has the stamp that says KBI lab page 5,
4   is that right?
5        A.   Yes, yes.
6        Q.   Okay, and if you can go back to the
7   previous exhibit and flip through to KBI lab page
8   5, please.
9        A.   I have that.
10       Q.   Okay, great.  I'm behind you.  I'll get
11  there.  Okay.  So, this is the sixth page of
12  Exhibit 41 and items -- use my cheat sheet here --
13  1, 4, 5 and 6 would be the blue jeans, the
14  panties and panty liner, the tennis shoes and the
15  socks, right?
16       A.   Yes.  I believe so.
17       Q.   Okay.
18       A.   Yes.
19       Q.   Those were the items that you were to
20  check for seminal and/or body fluid, right?
21       A.   Yes.
22       Q.   Okay, and I know you described it
23  somewhat earlier in general, but how would you
24  test these types of items -- the panties, the
25  panty liner, the socks and shoes for seminal and

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## MARY KOCH

1    body fluid?

2        A.    I would start with a visual search using

3    an alternate light source to flouresce any

4    possible body stains.  I would also note if blood

5    was present, even though seminal fluid was asked

6    for these items, and then I would do the

7    presumptive testing and the confirmation testing

8    and submit those for DNA testing.

9        Q.    And do you recall what the presumptive

10    testing or confirmation testing was for seminal

11    fluid in late 1999-early 2000?

12        A.    Could you repeat that?

13        Q.    Sure, and if it doesn't make sense just

14    let me know.  Do you recall what the presumptive

15    testing method was for seminal fluid in late 1999,

16    2000?

17        A.    Yes.  We would look for any obvious

18    possibilities.  We would examine with the ALS,

19    alternate light source, and if those stains looked

20    like a possibility then we would take cuttings

21    from that to confirm with putting a solution, a

22    piece of that item in a test tube and use the

23    centrifuge and take a small sample from that and

24    put it on a lab slide which we let air dry and

25    then we use a kind of stain that I don't remember



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

1    to help identify the sperm cells, and kind of

2    filter out all the other things, especially blood.

3        **Q.   Got it.  And, so, where it says examine**

4    **for blood items 2, 4, 5, 6 and those items were**

5    **the T-shirt, the panties, the panty liners, shoes**

6    **and socks, how would you conduct an examination**

7    **for blood on those items?**

8        A.   Again, I would first visually inspect

9    using magnification, if necessary, and a good

10   light source and then I would make cuttings of any

11   of those items that, I called it apparent blood

12   just by the visual search.  I would take cuttings

13   of that and either -- well, we were doing DNA at

14   the time and in the process of doing DNA we

15   identified that as human blood and then we did the

16   rest of the testing.

17       **Q.   Okay, you can put Exhibit 221 to the**

18   **side, thank you.  When you would conduct the type**

19   **of test that you just described for seminal fluid**

20   **in late 1999 or early 2000 how long did the whole**

21   **testing process take from when you first started**

22   **examining the items until you had your last or**

23   **final result?**

24       A.   Part of the process of DNA testing was to

25   have another forensic scientist in biology peer



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

4/11/2023                                                                 29

**MARY KOCH**

1  review the results of the DNA testing, so, those

2  -- we could probably go from evidence to DNA

3  testing in five work days and put it in the 310

4  genetic analyzer and we got the results fairly

5  quickly, but before we could release them it had

6  to be peer-reviewed.

7       **Q.   I think you testified to this earlier so**

8  **I'm sorry if it's redundant, but were you, were**

9  **you trained in doing DNA testing?**

10      A.   Yes.

11      **Q.   Was that the STR testing?**

12      A.   Yes, an earlier version called dot blot.

13      **Q.   And what would you do in order to**

14  **conduct, did you say dot blood?**

15      A.   Dot blots.

16      **Q.   Dot blots, sorry.**

17      A.   Yes.  It wasn't used very long in our

18  laboratory because it wasn't as ident -- as good

19  an identifier of the sources of evidence.  So, we

20  didn't use that very long and then we went to STR

21  testing.

22      **Q.   Okay.  What would you do in order to**

23  **conduct the blot test, if you recall?**

24      A.   As far as -- as far as I can remember we

25  did the same thing, having the item that we were

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

4/11/2023                                                                30

## MARY KOCH

1    looking for blood or seminal fluid, we would have

2    that in a tube, separate tubes, and centrifuge it

3    and then get a sample of that and I think we went

4    right to dot blot at that point.

5         Q.    And then I'm sorry if I'm

6    misunderstanding.  When you would go to dot blot

7    what do you mean by that?  What would you do?

8         A.    I would place samples of the evidence

9    from the tubes on different strips or each item

10   and it would give, it's called a phenotype instead

11   of genotype.

12        Q.    Okay.  I'm going to show you our next

13   exhibit which should be marked 222.  Do you have

14   that in front of you?

15        A.    I'm looking -- I have, yes.  What is it?

16   Please repeat the number.

17        Q.    It's 222 and it's a memorandum dated

18   November 15th, 1999.

19        A.    Yes, I have that in front of me.

20        Q.    Okay, and this is a similar type of

21   document to Exhibit 221.  It's a memorandum from

22   KBI Agent Woods to the KBI lab,

23   firearms/biology/latent prints, correct?

24        A.    Correct.

25        Q.    And on this one the word biology is

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**MARY KOCH**

1    highlighted, right?

2         A.    Yes.

3         Q.    And it looks like in the upper right

4    corner handwritten, it looks like the initials MEK

5    are there.  Do you see that?

6         A.    Yes.

7         Q.    Are those your initials?

8         A.    They are.

9         Q.    Okay.  And would this -- if you were

10   assigned to the KBI case at issue here would this

11   memorandum have been given to you at the lab?

12        A.    Again, these kind of memorandums were not

13   always included, but if the law enforcement

14   officer had filled one out, yes, I would get a

15   copy.

16        Q.    Okay.  And it's also handwritten there

17   655.  Do you know what that stands for?

18        A.    I really don't remember.

19        Q.    Okay.  If you look under that biology

20   section it says, "Please expedite rape kit

21   examination submitted to KBI evidence on 11-12-99

22   by Shawnee County coroner's office, ECR, page 6,

23   item 2."  And, so, this is requesting as a

24   priority to conduct testing on a rape kit that was

25   submitted, correct?



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

4/11/2023                                                                 32

**MARY KOCH**

1       A.    Yes.

2       Q.    And if we look back to Exhibit 41 and go

3   to KBI lab page 6 it lists as the second item KBI

4   sexual assault kit.  Do you see that there?

5       A.    Yes, I do.

6       Q.    And I believe you testified earlier a

7   sexual assault kit coming from the coroner's

8   office like this would include swabs, vaginal,

9   rectal and oral swabs, is that right?

10       A.    Yes.

11       Q.    As well as any trace evidence that might

12   have been found on the body, right?

13       A.    Yes, those are the things I can remember.

14       Q.    Okay.  (Garbled) let me fix that.  Okay,

15   and then below that it says, "Please examine the

16   following items for blood and seminal fluid," and

17   it lists sweatshirt, bed sheet and then a number

18   of other items that aren't listed by name but are

19   listed by item based on the evidence custody

20   report page, do you see that?

21       A.    Yes.

22       Q.    Okay.  And you would have conducted the

23   same testing on the sweatshirt and bedsheets?

24       A.    Yes.

25       Q.    You would have conducted the testing in

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## MARY KOCH

1  the same manner that you already described on the

2  sweatshirt and the bedsheet, right?

3      A.   Yes, I would.  We would always begin with

4  the sexual assault kit and test that because

5  that's the most meaningful evidence to have it

6  come from the victim's body and then if we found

7  it in the sexual assault kit we usually didn't go

8  any further for seminal fluid, but we would test

9  for blood.

10     Q.   Okay.  And when you say if we found it in

11  the sexual assault kit, what do you mean by it?

12  Seminal fluid?

13     A.   If we found a presumptive positive test

14  on the swabs and then identified seminal fluid or

15  sperm, then yes, we would keep that for further

16  testing.

17     Q.   Okay, and let's see here.  The rest of

18  this refers to latent print examinations and then

19  the firearms section.  You didn't have any work

20  related to that, correct?

21     A.   No.

22     Q.   Okay.  Are you any relationship to Steve?

23     A.   We are not related in any way.

24     Q.   Steve comes from a different branch of

25  the Koch family, okay.  I'll take Exhibit 222 off

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

## MARY KOCH

1   the screen and I apologize if I asked you this

2   before, but when you would test the sexual assault

3   kit when you had the swabs, the three types of

4   swabs that you have identified, what would you do

5   to test those swabs for seminal fluid?

6        A.   Again, I would take small cuttings and

7   use the presumptive test on that and that would

8   help guide us, but we usually tested all of the

9   swabs.

10       Q.   Okay, and when you say take cuttings what

11  do you mean by that?

12       A.   Well, a swab is kind of like a cotton

13  swab that's common to most people and I would use

14  a blade and cut off a small portion to see if I

15  could identify seminal fluid.

16       Q.   And when you say you could identify,

17  would you -- does that mean putting it in the

18  solution in the test tube?

19       A.   Yes, and centrifuging it and using that

20  button to put on a microscope slide and stain it

21  so any sperm cells that were present -- and that's

22  where the DNA comes from with swabs or seminal

23  fluid samples, it's from the sperm cells itself.

24       Q.   Okay.  So, am I correct that the

25  procedure you used with the swabs was the same as



5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

**MARY KOCH**

1    what you would use for clothing except that you

2    wouldn't use the alternative light source on the

3    swabs?

4         A.    Yes.

5         Q.    You would go straight to the chemical

6    solution, right?  Or maybe I asked that wrong.

7         A.    I would cut off a small piece and do the

8    presumptive test.

9         Q.    Okay, and the presumptive test, you're

10   referring to the chemical test tube, right?

11        A.    It's done before it's put into a

12   solution.  If the presumptive test is positive

13   that gives us an indication of seminal fluid or

14   sperm, so, then we would -- if it was a

15   presumptive positive we would put another cutting

16   of that into solution, spin it down, and put it on

17   a microscope slide.

18        Q.    Okay.  I think because I lack science

19   background I got it wrong.  I thought there were

20   two tests, two steps, the first was the light and

21   the second was the presumptive, but it sounds like

22   there's actually three steps.  First is the light,

23   then the presumptive test and then the chemical

24   solution, is that correct?

25        A.    Generally we didn't use the alternate

5111 SW 21st Street      6420 W. 95th Street      800 E. 1st Street
Topeka, KS 66604            Suite 101              Suite 305
785-273-3063         Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com       913-383-1131          316-201-1612

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

36

**MARY KOCH**

1    light source for sexual assault kits swabs because

2    it may contain body fluid from the victim with her

3    DNA as well as seminal fluid.  We used the

4    alternate light source for big stain or big items

5    of evidence, such as clothing or bedding.

6         **Q.   Okay, and then for the presumptive test**

7    **what did that consist of?  Was that a chemical**

8    **test?  What did you do to do that step?**

9         A.   For seminal fluid?

10        **Q.   Yes, ma'am.**

11        A.   Yes.  I would take a small cutting of the

12   stain or try to swab the stain to see if I could

13   get a positive reaction from a biological

14   chemical, I believe it's an enzyme, that we called

15   it the AP test and I don't remember the specifics,

16   but if it turned kind of pinkish red that was

17   positive and that indicated that a cutting was

18   needed to make the microscope slide.

19        **Q.   Now I got it, thank you.  Okay, I'm going**

20   **to show you what's been previously marked as**

21   **Exhibit 223.  These are KBI examination sheets.**

22   **If you can find that in front of you, please.**

23        A.   Yes.

24        **Q.   You should be able to see that on the**

25   **screen now.**



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## MARY KOCH

1    A.    Yes.

2    Q.    **What did you use KBI -- or strike that.**

3 **Are you familiar with these KBI biology section**

4 **examination worksheets?**

5    A.    Yes.   There were other examination sheets

6 that were used after this when we were just doing

7 DNA.

8    Q.    **And generally speaking what would you use**

9 **these worksheets to document?**

10    A.    I would document, for instance, the

11 sexual assault kit sealed and identified as SK99-

12 3174, Zetta Arfmann, 11-8-99, one manila envelope

13 and one plastic vial.

14    Q.    **So, would you -- I'm sorry, what did that**

15 **paragraph on this worksheet document?   What were**

16 **you documenting?   What activity were you**

17 **documenting?**

18    A.    I forgot to read another sentence in that

19 paragraph and it said containing steps 3 -- 4

20 through 13, plus slide holder, one manilla

21 envelope and one plastic vial.

22    Q.    **And, so, would you use these worksheets**

23 **to document your activities in the lab relative to**

24 **a particular investigation?**

25    A.    Yes.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# MARY KOCH

1        Q.    Okay, and that paragraph that you just
2    read for us, are you documenting receipt, that you
3    received the sexual assault kit or what are you
4    describing there?
5        A.    I am describing the actual examination
6    worksheet, so, it's a document of how the evidence
7    came to me and a description.
8        Q.    Okay, and at the top of this page it says
9    "exam began" in the middle column.  Do you see
10   that?
11       A.    Yes, I do.
12       Q.    Okay, and, so, that documents the date
13   that you completed these worksheets, is that
14   correct?
15       A.    Yes.
16       Q.    Okay, and the examiner says MEK and those
17   are your initials, right?
18       A.    Yes.
19       Q.    Okay, and what you see here on the first
20   page of this exhibit is your handwriting, right?
21       A.    Yes, it is.
22       Q.    Okay, and when -- I think throughout this
23   it refers to steps.  For example, in the first
24   paragraph it refers to steps 4 through 13, or the
25   second paragraph refers to step 7.  What does --

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## MARY KOCH

1   what does that mean when it lists steps?

2        A.   I really don't recall.  It's probably

3   something that was identified because it was part

4   of the sexual assault kit, but I don't remember

5   what 4 through 13 is.

6        Q.   Okay, no problem.  And as you look

7   through to the end of that first page it's

8   describing that you stained the different smears,

9   correct?

10       A.   Yes, I did.

11       Q.   Okay.

12       A.   Or any kind of testing that I did, yes.

13       Q.   Okay.  And then if you continue through

14   this on to the third page of this exhibit it lists

15   as examiner MEK/JAH.  Would that have been John

16   Horn?

17       A.   Yes, it would.

18       Q.   Okay, and if you look at page 3 it looks

19   like that's not your handwriting and perhaps may

20   have been Mr. Horn's handwriting, do you see that?

21       A.   Yes.  It is not my handwriting.

22       Q.   Do you see that your initials are

23   included there in red at certain points?

24       A.   Yes.

25       Q.   Does that indicate that you were doing

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## MARY KOCH

1  some kind of peer review of another scientist's

2  work?

3       A.   I would never do peer review of a

4  different section.  Only in biology.

5       Q.   Okay, and, so, you -- do you have any

6  idea what your initials signify there?

7       A.   These reflect cuttings that would have

8  been something that DNA would, or the biology

9  section would look at and my initials are to

10  verify that those were contained in the brown

11  paper bag marked as item number 1, page 10.

12       Q.   I see, thank you.  Okay, and continuing

13  through this document, if you look at the fifth

14  page of this document it's describing item 4 from

15  page 5 which is pair of panties and panty liner

16  attached to a hanger, says obvious blood staining

17  and soiling.

18       A.   Yes, I see that.

19       Q.   The next line says two, I think it says

20  ALS positive areas, do you see that part?

21       A.   Yes, I do.

22       Q.   Do you know what ALS stands for or

23  related to?

24       A.   It's the alternate light source that we

25  used for screening larger evidence.



**MARY KOCH**

1   Q.   Okay, and the next line or on that same

2   line, the next sentence says approximately 11

3   areas tested, AP negative.  Do you see that?

4   A.   Yes, I do.

5   Q.   And what does it mean for something to

6   test AP negative?

7   A.   That that's the presumptive test for

8   seminal fluid and if that is negative then we do

9   not do further testing on it.

10   Q.   Okay.  I'm going to take that down from

11   the share screen.  Just give me one second to see

12   if I have questions on any of the rest of Exhibit

13   223.  So, did Mr. Horn also work in the biology

14   section of the KBI lab?

15   A.   No, he did not.  He worked in the

16   fingerprint section.

17   Q.   Okay.  Was it unusual for someone who

18   worked in the fingerprint section to be involved

19   in completing the examination worksheets for the

20   biology testing?

21   A.   I'm confused by this form.  I'm, I'm

22   assuming that item 4 on page 5 -- and let me find

23   that page.  My assumption is that these items were

24   in the brown paper bag identified as number 4,

25   page 5, a brown paper bag sealed and identified

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## MARY KOCH

1    was one pair of panties and one panty liner

2    attached and it shows the panty liner with obvious

3    blood staining and soiling, two ALS positive

4    areas, which is probably why my initials are there

5    to confirm that this was done; but this, as I

6    said, this is confusing to me because this is not

7    a regular kind of form that would be filled out by

8    someone else.

9       **Q.   Okay, and, so, am I correct that it would**

10    **be typical for a case that you were assigned to**

11    **for you to fill out this form regarding the**

12    **evidence that was to be tested for bodily fluids?**

13       A.   Yes.  I have initialed the panty liner

14    section and the white panties and I can see here

15    areas of apparent blood and three were taken from

16    that area.

17       **Q.   Okay, I want to show you one more page**

18    **from that document.  If you can look at page 7 of**

19    **that document the exam date on that page is 12-21-**

20    **99 if that helps.**

21       A.   Yes, it is.

22       **Q.   Okay, and if you look there it's**

23    **referring in the second paragraph, it looks like**

24    **it says item number 21, page 9.**

25       A.   Yes.



5111 SW 21st Street     6420 W. 95th Street     800 E. 1st Street
Topeka, KS 66604       Suite 101         Suite 305
785-273-3063     Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com     913-383-1131      316-201-1612

## MARY KOCH

1     Q.    **The last part of that says all stains**
2     **tested, I'm not sure of this word, but it looks**
3     **like phenolphthalin --**
4     A.    Phenolphthalein, Phenolphthalein,
5     although it's not spelled correctly.
6     Q.    **Okay, and what would you use**
7     **phenolphthalein to test for?**
8     A.    I would use that to test for blood,
9     presence of blood.  It's a presumptive test.  It
10    would rule out any items or any stains like, that
11    look like rust or a reddish kind of stain that
12    could be blood and if it was negative then no
13    further work was done on that.
14    Q.    **Okay.**
15    A.    I'm guessing that my initials and the
16    results listed, I believe that I was supervising
17    another forensic scientist who was just in
18    training, so, I would verify his results and then
19    put my initials there, and I was still listed as
20    the examiner because ultimately I was responsible
21    and would go to court to testify.
22    Q.    **Okay, one more question about this**
23    **exhibit.  If you look at page 5 of this exhibit,**
24    **it's the one that's marked 12-13-99 at the top.**
25    A.    Yes.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## MARY KOCH

1        Q.   And, so, there's a description here, item
2    number 4, page 5, brown paper bag sealed and
3    identified containing white hanger with one pair
4    of white panties and one panty liner attached to
5    the hanger.  That's the description of how you and
6    the examiner-in-training received the item?
7        A.   Yes, and it ensures a chain of custody.
8        Q.   Okay, and then the next paragraph says
9    white panty liner attached to hanger by blue
10   clothespin.  Obvious blood staining and soiling,
11   two ALS positive areas, approx 11 areas tested AP
12   negative, and am I correct that two ALS positive
13   areas means two alternative light source areas --
14       A.   Yes.
15       Q.   -- right?
16       A.   Yes, that would flouresce.
17       Q.   And 11 areas tested AP negative means
18   those areas were tested with the presumptive test
19   for seminal fluid and were negative, is that
20   right?
21       A.   Yes, that's correct.
22       Q.   Okay, and, so, if I understand your
23   testimony about supervising another examiner, the
24   initials up here for JAH likely were not Mr. Horn
25   then, it was someone training in the biology



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604                  Suite 101                     Suite 305
785-273-3063             Overland Park, KS 66212          Wichita, KS 67202
www.appinobiggs.com             913-383-1131               316-201-1612

## MARY KOCH

1   section, right?

2        A.   I'm not certain about that.  I know that

3   I was training several people at that time.  I

4   think I remember the individual but not his name,

5   so, I think -- I don't know who JAH stands for.

6   I assumed it was John Horn, but it could be the

7   trainee that I was working with.

8        Q.   Got it, okay.  You can put that exhibit

9   to the side.  Okay, I'm going to show you what

10  we'll mark as Exhibit 224.  It's a telephone

11  contact sheet.

12       A.   Yes.

13       Q.   Okay, and you should be able to see it on

14  the screen there.  Are you familiar with this type

15  of document, a telephone contact log sheet?

16       A.   Yes.

17       Q.   And what would you use telephone contact

18  log sheets for?

19       A.   Any discussion between another law

20  enforcement person and trying to get this

21  description of what went on and I took notes of

22  what this law enforcement officer had told me over

23  the phone.

24       Q.   Okay, and, so, it says agency contact Jim

25  Woods and then it says 11-22-99 and then there are



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604                Suite 101                    Suite 305
785-273-3063              Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com           913-383-1131             316-201-1612

# MARY KOCH

1    a series of notes there, correct?

2         A.    Yes.

3         Q.    Okay, and, so, does Exhibit 224 reflect a

4    conversation that you had with Jim Woods on

5    November 22nd of 1999?

6         A.    Yes, it does.

7         Q.    Okay, and is that your handwriting on

8    this sheet?

9         A.    Yes, it is.

10        Q.    Okay, and can you just read your notes on

11   your conversation with Mr. Woods into the record,

12   please.

13        A.    Yes.  It says, "11-22-99.  Look at sheets

14   next," and I have a checkmark on that to reflect

15   probably that was already done -- "found nothing

16   in the rape kit.  Tennis shoes were for latents

17   and a very dirty house."  So, it reflects some of

18   my testing to date in that I found nothing in the

19   rape kits or sexual assault kit, and the

20   instructions that the tennis shoes were for

21   latents.  Then the comment about the very dirty

22   house and then it goes to number, item number 1,

23   page 10.  "Jean fragment.  Tom claimed he tried to

24   have sex with her in truck.  She laughed.  He

25   shot her.  Tom came in with attorney after looking



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

1   for girl all weekend."  An arrow pointing to he

2   from Tom.  "He knew where she was, something

3   happened to her.  Took police to Floyd Senior to

4   trash dump site, ditch, started digging under

5   plywood, 12 inches dirt.  Shirt/bra pulled up, two

6   gunshot wounds chest, left arm, head, breast,

7   left.  Four shots" -- that's my question mark in

8   parentheses.  "Not killed there through Tom's

9   attorney.  Tried to locate the crime scene.  Tom

10  passed.  Tom says he killed her.  Floyd flunked.

11  Floyd told him they had killed her accidentally,

12  then he recanted.  Recovered three shell casings

13  and three bullets.  May have been there where she

14  was killed.  Vehicle question mark -- vehicles

15  question mark on Tom.  Floyd had some thoughts,

16  parentheses, sexual, about the girl, about girl.

17  Girl lived with them since fall, start of school.

18  Truant when she lived with mom," and in a margin I

19  also wrote down "marital problems" right at the

20  bottom.

21       Q.   Okay, and everything that you read there

22  from where it says Tom claims he tried to have sex

23  with her all the way through to the bottom where

24  it says truant when she lived with mom was

25  information that was provided to you by Mr. Woods



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

**MARY KOCH**

1    during your telephone call, right?

2         A.    Yes, it is.

3         Q.    Okay.  You can put that exhibit to the

4    side, please.  I'm going to show you what we'll

5    mark as, or has been marked as Exhibit 225.  It's

6    a memo dated December 2nd, 1999, and I'll also put

7    it up on the screen.

8         A.    I have that exhibit.

9         Q.    Okay, and this is a memorandum from

10   Jefferson County Sheriff Dunnaway, Jefferson

11   County attorney Vanderbilt, and KBI SSA Woods

12   directed to the KBI lab affected examiners,

13   correct?

14        A.    Yes.

15        Q.    And up at the top there's what looks like

16   a stamp that says case number, examiner and

17   status, and next to examiner it says MEK and it's

18   highlighted.  Do you see that part?

19        A.    Yes.

20        Q.    And MEK is your initials, correct?

21        A.    Yes, it is.

22        Q.    And to the best of your knowledge you

23   would have received a memorandum like this when

24   you were, if you were assigned to the case, right?

25        A.    Again, this is not a regular thing that

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## MARY KOCH

1    is submitted with each case, so, these are a

2    special memo.

3         Q.   Okay, and looking below that it says,

4    "Please disregard two prior memos from SSA J.

5    Woods and all prior requested exams on all ECRs in

6    this case.  Refer to the attached pages for

7    requested exams on items currently at the KBI lab.

8    Any questions please contact the above persons.  A

9    jury is tentatively set for mid February 2000,"

10   and if you look at the following page it lists a

11   number of items from the evidence custody

12   receipts, right?

13        A.   Yes.

14        Q.   Okay.  Was it unusual for you to receive

15   a memo like this telling you to stop testing on

16   items that had been received?

17        A.   I might receive a memo and --

18             MR. QUALSETH:  Let me interrupt.  I'm

19   going to object to the form.  Go ahead.

20        A.   We might receive this in a case.  Perhaps

21   if we had a positive for seminal fluid in the

22   sexual assault kit we wouldn't go any further, but

23   I would say this is a more unusual form, not

24   regularly submitted.

25             BY MS. KLEINHAUS:



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## MARY KOCH

1    Q.   Okay.  If you look at the second page

2    here it lists -- well, on the very first line

3    there it lists certain items to be, quote, hold

4    for present.  Do you see that part?

5    A.   Yes.

6    Q.   And do you have an understanding of what

7    it would mean to hold an item?

8    A.   Yes, but it may have already been tested.

9    Q.   Okay, and what does holding it for

10   present mean?

11   A.   It means to me that don't do any further

12   testing.  Hold further testing for the present.

13   Q.   Okay.  And it looks like, is this your

14   handwriting on the left-hand side next to where it

15   says page 5, it says OK?

16   A.   Yes.

17   Q.   And it lists for page 5 items 1 and 4.

18   Next to that it says seminal fluid, blood, type

19   and DNA.  Do you see that?

20   A.   Yes.

21   Q.   And, so, was it your understanding from

22   this that those items should still be tested for

23   seminal fluid, blood -- I'm sorry, seminal fluid

24   and blood?

25   A.   Yes.  The items were listed on page 6 on

**MARY KOCH**

1    the ECR and not page 5.

2        Q.    Okay.

3        A.    Oh, maybe you're up on page 5.  Yes, I

4    see, and I just wrote OK.

5        **Q.    And where it says type and DNA, what do**

6    **you understand that to mean?**

7        A.    You know, we weren't doing blood types

8    anymore.  At that time we were going directly to

9    DNA.

10       **Q.    And under what circumstances would you**

11   **submit an item for DNA testing?**

12       A.    Once seminal fluid or sperm cells were

13   identified and also when the presumptive test for

14   blood was positive.

15       **Q.    Okay.  And, so, if you located blood you**

16   **would conduct DNA testing on that?**

17       A.    Probably, yes.

18       **Q.    Okay.  Okay, you can put that exhibit to**

19   **the side.  From the time of receiving an item that**

20   **needed to be screened for blood through the DNA**

21   **testing, how long would that take?**

22       A.    It depends how many items of evidence

23   there were to examine and like I said, anywhere

24   from a week, especially with a trainee, to

25   probably another week.  So, two weeks to get into

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604              Suite 101                   Suite 305
785-273-3063            Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131              316-201-1612

## MARY KOCH

1  DNA testing.  Not many examiners were qualified to

2  do DNA testing, so, there was a wait list on some

3  cases.

4      Q.    But you were the assigned examiner for

5  this case and you were trained in DNA testing,

6  correct?

7      A.    Yes, I was.

8      Q.    Okay, and, so, if DNA testing were

9  necessary in this case you would be able to do

10  that if necessary, right?

11      A.    I believe so.  I believe I test -- I was

12  qualified for STRs at that time, yes.

13      Q.    I'm going to show you the next exhibit,

14  which has been previously marked as Exhibit 226.

15      A.    Yes, I have that

16      Q.    Okay, and this is marked at the top as

17  telephone contact log sheet.  Okay.  And this is

18  your handwriting on Exhibit 226, correct?

19      A.    Yes, it is.

20      Q.    And this is dated -- the first entry here

21  is dated 1-25-2000, correct?

22      A.    Yes.

23      Q.    And this reflects a conversation that you

24  had by telephone with Jim Woods on January 5th of

25  2000, correct?



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**MARY KOCH**

1    A.    Yes, and also Detective Carreno further

2  down.

3    **Q.    Yes, okay.  Where the ink changes from**

4  **red to blue, red is your conversation with Jim**

5  **Woods on January 25th, 2000, and blue is your**

6  **conversation with Detective Carreno on March 23rd**

7  **of 2000, correct?**

8    A.    That -- yes, that's what it looked like

9  to me having not read this before.

10   **Q.    And can you just read your handwriting**

11  **for the section that's in red into the -- is there**

12  **-- okay, I'm focusing on the section that's red.**

13  **Everything that's under 1-25 -- yeah, January**

14  **25th, 2000, can you read that section of your**

15  **handwriting into the record, please.**

16   A.    Yes.  1-25-00.  Jim Woods, status of our

17  work, need to know blood, hyphen, wants to wait to

18  see if blood on washcloth is foreign to the victim

19  before getting warrant for blood of suspect.

20  Mentioned 223 deadline, or 2-3 deadline for all

21  lab reports or court order coming.  Question mark.

22  Called Jefferson County Attorney Vanderbilt.  Jury

23  trial February 22nd, verified by secretary.  Had

24  no other knowledge of the case.  Mr. Vanderbilt

25  will return call about 3 o'clock p.m. today.  Told

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### MARY KOCH

1   him -- told him we need blood known from suspect,"

2   and can I clarify what they're talking about?

3       **Q.    Sure.**

4       A.    In any case where we find blood or

5   seminal fluid we need known samples from the

6   victim and the suspect because we need to make

7   sure that this is the victim's profile and this is

8   blood drawn from the victim and, you know, it

9   wasn't unusual that we didn't get the known blood

10  sample for the -- from the suspect until after

11  preliminary work was done.

12      **Q.    Okay.  And then can you read the portion**

13  **that's dated 3-23-2000 into the record, please.**

14      A.    Yes.  "3-23-00, Detective Carreno called

15  after I faxed him report, told him we needed blood

16  knowns from the suspect.  Reviewed which items had

17  been sent to DNA.  Gave him SRS's name as DNA

18  examiner."

19      **Q.    Okay, and that reflects a phone**

20  **conversation that you had with Detective Carreno**

21  **on March 23rd, 2000, correct?**

22      A.    Yes.

23      **Q.    And where it says reviewed which items**

24  **had been sent to DNA, that means you told him**

25  **which items had already been sent for DNA testing,**

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# MARY KOCH

1   right?

2         A.   Yes.

3         Q.   And gave him SRS's name as DNA examiner.

4   SRS, do you know whose initials those are?

5         A.   Yes, they're Sindey Schueler's.  I don't

6   remember her middle name, but -- which makes it

7   sort of apparent to me that I maybe wasn't fully

8   trained and that she was the DNA examiner, or I

9   had to stay in screening and she did all the DNA.

10        Q.   Okay.  All right, you can put that

11   exhibit to the side.  Okay, I'm going to show you

12   what's been marked as Exhibit 227.  It's a lab

13   report from February 3rd of 2000.

14        A.   Yes.

15        Q.   And that's also on the screen.  This

16   is --

17        A.   Yes.

18        Q.   This is a laboratory report that you

19   completed, correct?

20        A.   Yes.

21        Q.   And this was sent to Detective Carreno,

22   correct?

23        A.   Yes.

24        Q.   Okay, and it lists all of the items

25   examined, correct?



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

4/11/2023                                                                56

## MARY KOCH

1        A.    Yes.

2        Q.    And where it says an item number and then

3    the page next to it, that refers back to the KBI

4    lab pages that were labeled on the evidence

5    custody reports, right?

6        A.    Yes.

7        Q.    Okay, and turn with me, please, to the

8    second page of this where it says results of

9    biological examination.  The first paragraph there

10   indicates that there was blood indicated on the

11   vaginal swabs, oral swabs and swabs from the right

12   wrist.  Do you see that?

13       A.    Yes, I do.

14       Q.    And a number of other items where blood

15   was found, right?

16       A.    Yes.

17       Q.    The next paragraph refers to acid

18   phosphatase?

19       A.    Yes.

20       Q.    Was that the AP test that you described

21   earlier?

22       A.    Yes.

23       Q.    And was that the presumptive test for

24   seminal fluid?

25       A.    Yes, it is.



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## MARY KOCH

1      Q.    Okay, and according to this further

2  testing to confirm the presence of seminal fluid

3  was negative, correct?

4      A.    Yes.

5      Q.    Do you know whether testing for seminal

6  fluid has become -- has advanced since 2000?

7      A.    I'm sorry, please repeat the question.

8      Q.    Sure.  Do you know whether the testing

9  that can be done for seminal fluid has become more

10  sensitive and more advanced since 2000?

11      A.    No.  Not at the KBI.

12      Q.    Okay.  The next -- I'm sorry, a few

13  paragraphs down it says, "The vaginal swabs,

14  rectal swabs, oral swabs and swabs from the right

15  wrist along with a portion of the known blood of

16  Zetta Arfmann remain preserved at the KBI

17  laboratory," and then it goes on to list

18  additional items that were also preserved.

19      A.    Yes.

20      Q.    Why was it important for you to maintain

21  the swabs from the sexual assault kit and the

22  clothing and other items from the victim?

23      A.    In case further testing was needed on

24  those items.

25      Q.    Okay, and the next paragraph says,

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604               Suite 101                   Suite 305
785-273-3063              Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131              316-201-1612

## MARY KOCH

1    "Portions of the items examined in this case have

2    been submitted for DNA analysis."  Do you see that

3    part?

4         A.   Yes.

5         Q.   And, so, that would have been conducted

6    also at the KBI lab, correct?

7         A.   The DNA analysis?

8         Q.   Yes, ma'am.

9         A.   Yes, it would.

10        Q.   And then after DNA analysis was conducted

11   a report would be generated about that testing,

12   right?

13        A.   Yes, a separate report.

14        Q.   Okay.  And if you turn to the third page

15   here at the bottom it says your name and is that

16   your signature on page 3?

17        A.   Yes, it is.

18        Q.   Okay, you can put that exhibit to the

19   side.  Okay.  I'm going to show you the next

20   exhibit which has been marked Exhibit 228.  It's

21   supplemental lab report dated April 20th, 2000.

22        A.   Yes, I have that.

23        Q.   And this was a report that you completed

24   and sent to Detective Carreno, correct?

25        A.   Yes.

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

4/11/2023                                                                      59

**MARY KOCH**

1      Q.   And it says, "Results of biological

2  examination.  No seminal fluid was detected on the

3  vaginal swabs/smear, the rectal swabs/smear, or

4  the oral swabs/smear contained in the sexual

5  assault kit."  Do you see that?

6      A.   Yes.

7      Q.   Do you have any recollection as to why

8  the results of that test were in the supplemental

9  report as opposed to being in the earlier report

10 that we just looked at?

11     A.   I do not, unless it wasn't listed in the

12 items examined.  No, it says sexual assault kit,

13 number 2, page 6, so, I would have examined that

14 earlier.  So, I'm not sure why they wanted a

15 separate test.

16     Q.   Okay.  As far as you know, there was only

17 -- the sexual assault kit was only tested once for

18 seminal fluid?  These two reports don't indicate

19 it was tested more than once?

20     A.   Correct.

21     MS. KLEINHAUS:  Okay.  All right, you can

22 put that exhibit to the side.  Okay, ma'am, I

23 think I'm about finished with my questions for

24 you.  Let's just take a two minute break and go

25 off the record and I'll double-check my notes.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

4/11/2023                                                                60
## MARY KOCH

1  The other attorney may have questions for you, but

2  I think I'm about through, so just give me one

3  short break.  Let's go off the record, please.

4            THE VIDEOGRAPHER:  The time is 12 o'clock

5  p.m., we're going off the record.

6            (THEREUPON, a recess was taken.)

7            THE VIDEOGRAPHER:  The time is 12:14

8  p.m., we're back on the record.

9            MS. KLEINHAUS:  Okay, ma'am, I don't have

10 any further questions for you right now.  Mr.

11 Qualseth may have some questions for you.  Thank

12 you so much for your time today.

13            THE WITNESS:  Thank you.

14            (THEREUPON, an off the record discussion

15 was held.)

16            THE VIDEOGRAPHER:  The time is 12:15

17 p.m., we're back on the record.

18 CROSS-EXAMINATION

19 BY MR. QUALSETH:

20     **Q.   Ms. Koch, am I pronouncing your name**

21 **correctly?**

22     A.   No, but it's close enough.

23     **Q.   Well, how should I pronounce it?**

24     A.   Koch.

25     **Q.   Koch, got it.  Ms. Koch, my name is Shon**



## MARY KOCH

1   Qualseth and I'm with the attorney general's

2   office and I represent retired KBI agents Jim

3   Woods, Terry Morgan and the estate of George

4   Johnson.  I'm just going to go through some of

5   your, the exhibits that have been marked already

6   and if you'll turn to Exhibit 41.

7       A.   Yes.

8       Q.   Exhibit 41 is a 20-page exhibit, is that

9   correct?

10      A.   That's correct.

11      Q.   And Exhibit 41, I'm not going to go

12  through each one, but it lists several items if

13  not many -- it lists the items that were sent to

14  the KBI lab for examination in this case, correct?

15      A.   Yes.

16      Q.   Then Exhibit 221, that is another

17  memorandum on November 19th regarding the type of

18  exam to conduct, is that fair?

19      A.   That the agent wanted me to, or wanted to

20  have done.

21      Q.   Here that agent --

22      A.   Or prioritized maybe.  Excuse me, or --

23      Q.   Go ahead.

24      A.   Or he prioritized these items.

25      Q.   Meaning these items were important to be



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

1    tested by the KBI lab from the KBI agent, Jim

2    Woods?

3        A.    Yes.

4        Q.    And it looks like Exhibit 222, which is a

5    memorandum five days later dated November 15th,

6    1999, is that right?

7        A.    Yes, it is.

8        Q.    And it shows some items were crossed out

9    such as ECR page 7 item number 1, Chiefs

10   sweatshirt, ECR page 7 item number 7, bedsheet

11   also marked and then ECR page 7 item number 9.

12   Why are those crossed out?

13           MS. KLEINHAUS:  Objection, foundation.

14   You can answer if you know.

15       A.    The crossed off items to me reflect that

16   those items were no longer requested by the agent.

17       BY MR. QUALSETH:

18       Q.    Is it possible those items had already

19   been tested by that date?

20           MS. KLEINHAUS:  Objection, calls for

21   speculation.  You can answer if you know.

22       A.    I can see if those items were submitted.

23       BY MR. QUALSETH:

24       Q.    And where are you looking to see if those

25   items were submitted?


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

## MARY KOCH

1      A.    Exhibit 41, the evidence custody receipt.

2      Q.    **Ms. Koch, I'm looking at page 9 of**

3   **Exhibit 41.**

4      A.    Yes.

5      Q.    **And it appears to be marked KBI page**

6   **number 7, correct?**

7      A.    Oh, I'm sorry.  Yes.

8      Q.    **And if you compare it to Exhibit 222, at**

9   **least the first page of Exhibit 222, it shows the**

10  **items that are, have a line through them?**

11         MS. KLEINHAUS:  Objection to form.

12      BY MR. QUALSETH:

13      Q.    **Do you understand the question, Ms. Koch?**

14      A.    No, I don't.

15      Q.    **Okay, fair enough.  If you can compare**

16  **page 9 of Exhibit 41 with page 1 of Exhibit 222,**

17  **do you have those in front of you?**

18      A.    Page 1 of 222?

19      Q.    **Correct.**

20      A.    Yes, I have those.

21      Q.    **And that page 1 of 222 has your initials**

22  **at the top, correct?**

23      A.    Yes, it does.

24      Q.    **Did you cross out the items that we're**

25  **discussing on that page?**



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## MARY KOCH

1          MS. KLEINHAUS:  Objection, calls for

2   speculation.  You can answer if you know.

3       A.    I don't remember who crossed those out.

4       BY MR. QUALSETH:

5       Q.    Okay, but it looks like on page 1 of

6   Exhibit 222 it refers to ECR page 7.  Is that ECR

7   page 7 as marked by KBI page 7?

8       A.    Yes, it is.

9       Q.    And that's page 9 of Exhibit 41, correct?

10      A.    Yes, it is.

11      Q.    All right, and it looks like item number

12  1, Chiefs sweatshirt, would be item number 1,

13  Chiefs sweatshirt, correct?

14      A.    Yes.

15      Q.    And that had been tested, is that, is

16  that accurate, by the --

17          MS. KLEINHAUS:  Sorry.  Objection calls

18  for speculation.  You can answer if you know.

19      A.    I would have to look through the report

20  to make sure it was one of the items that was

21  tested.  And this is Exhibit 227, and it lists the

22  items examined and item 1 on page 7 is the Chiefs

23  sweatshirt.

24      BY MR. QUALSETH:

25      Q.    So, the Chiefs sweatshirt was in fact



5111 SW 21st Street            6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604              Suite 101                   Suite 305
785-273-3063                  Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com           913-383-1131                316-201-1612

# MARY KOCH

1    tested, is that fair?

2        A.   Yes, it was.

3        Q.   And then the -- I'm still looking at 227,

4    KBI page 7, item number 6, fitted sheet.  That was

5    tested, correct?

6        A.   Could you repeat the item number?

7        Q.   Sure.  Item number 6 described as fitted

8    sheet.

9        A.   Yes, I have that.

10       Q.   And that in fact was tested, is that

11   right?

12       A.   Yes, it was.

13       Q.   And then item number 9 lists washcloth on

14   Exhibit 227?

15       A.   Yes.

16       Q.   And that was tested as well, correct?

17       A.   Yes, it was.

18            MS. KLEINHAUS:  Objection, incomplete

19   hypothetical.  You can answer.

20       A.   Yes, it was tested according to a report

21   that I -- my report that lists the items examined.

22   BY MR. QUALSETH:

23       Q.   And that's on 227, correct?

24       A.   Yes, it is.

25       Q.   And I'll turn your attention to Exhibit

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

**MARY KOCH**

1   **223.**

2        A.    I have it.

3        Q.    **Exhibit 223, it shows -- well, strike**

4   **that.  Let me back up.  Is all of the handwriting**

5   **on Exhibit 223 yours?**

6        A.    Let me check.  No, it is not.

7        Q.    **All right, whose handwriting is on**

8   **Exhibit 223?**

9        MS. KLEINHAUS:  Objection, asked and

10  answered.  You can answer again.

11       A.    I really don't --

12  BY MR. QUALSETH:

13       Q.    **And I apologize if I'm being repetitive.**

14       A.    That's okay.  I, I don't remember whose

15  handwriting it was, but I did a lot of training of

16  biology people who were in the training process

17  that I was in when I first started and I'm

18  suggesting that it is that handwriting where I've

19  initialed.

20       Q.    **I see.  So, for example, on page 12 of**

21  **Exhibit 223 the handwriting is different than on**

22  **the first page?**

23       A.    Yes, it is.

24       Q.    **And maybe you've already answered this,**

25  **but does Exhibit 223, is that in essence your**

 Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# MARY KOCH

1  notes on the exam you conducted on the evidence

2  that was submitted to you?

3      A.   Yes, it is.

4      Q.   And it says worksheet at the top.  Is

5  this kind of a show your, show your work type of

6  exhibit?

7      A.   Yes.  Where it says item number and Phen,

8  HU, ALS, AP, SP, at the top, that means if

9  phenolphthalein test was done for presumptive for

10 blood, if the ALS was used, if an AP was tested.

11 So, we would write under the correct headings.

12     Q.   Ms. Koch, would you turn to Exhibit 225.

13     A.   Yes, I have that.

14     Q.   And it says, "Please disregard two prior

15 memos," and then "Refer to the attached pages for

16 requested exams."  Would you consider Exhibit 225

17 an update on what to test?

18          MS. KLEINHAUS:  Objection, calls for

19 speculation.  You can answer.

20     A.   It looks to me that, yes, they wanted to

21 tell us what testing they didn't want, and that's

22 not necessarily binding for the scientist.

23 BY MR. QUALSETH:

24     Q.   So, testing they did not want, but also

25 testing they did want, is that fair?



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604              Suite 101                  Suite 305
785-273-3063           Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131              316-201-1612

## MARY KOCH

1       A.    Yes, it is.  That's more accurate.

2       **Q.    And in fact, some of the items listed I**

3   **believe had already been tested, is that fair?**

4       MS. KLEINHAUS:  Objection, calls for

5   speculation.  You can answer if you know.

6       A.    I would have to look through the

7   worksheets to find when the work was done because

8   it wasn't all done on one day.  So, I would have

9   to refer to that or perhaps items examined on my

10  report.  So, it would take some looking to verify

11  whether work had been --

12      BY MR. QUALSETH:

13      **Q.    That's okay --**

14      A.    Okay.

15      **Q.    -- that's okay, ma'am, I think we've**

16  **covered it.  You testified earlier about you need**

17  **-- for blood testing you'd want samples of blood**

18  **from the suspects in question to compare it to**

19  **what blood may be on the items from the victim, is**

20  **that fair?**

21      A.    That's correct.  The tested items from

22  the victim.

23      **Q.    Are you aware that blood samples from Tom**

24  **Bledsoe and Floyd Bledsoe were submitted to the**

25  **KBI lab?**



5111 SW 21st Street    6420 W. 95th Street    800 E. 1st Street
Topeka, KS 66604       Suite 101              Suite 305
785-273-3063           Overland Park, KS 66212 Wichita, KS 67202
www.appinobiggs.com    913-383-1131           316-201-1612

## MARY KOCH

1        MS. KLEINHAUS:  Objection, calls for

2    speculation.  You can answer.

3        A.   Again, I -- it would take some work for

4    me to find out when that was done.  So, yeah, it

5    would take some work and the item number and

6    exhibit number, could you repeat that?  Oh, I see.

7    Yes, I believe some of this has been tested.  Some

8    of this lists testing done in other departments

9    than biology.

10       BY MR. QUALSETH:

11       **Q.   Which exhibit are you looking at, Ms.**

12   **Koch -- Koch, sorry?**

13       A.   I'm looking at both -- well, I'm looking

14   at Exhibit 227 which is the beginning of my report

15   and lists the items examined, and I'm trying to

16   compare it with the memo, Exhibit 225, to see if

17   those items had already been tested when this

18   request came through.

19       MR. QUALSETH:  Ms. Koch and Tess, I think

20   I'd like to take a short break so I can find a

21   document that I haven't -- I don't have with me

22   right now, but I'd like to use it as an exhibit.

23       MS. KLEINHAUS:  Okay.

24       THE VIDEOGRAPHER:  The time is 12:34

25   p.m., we're going off the record.



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## MARY KOCH

1      (THEREUPON, a recess was taken;

2  WHEREUPON, Deposition Exhibit No 403 and No 404

3  were marked for identification.)

4      THE VIDEOGRAPHER:  The time is 12:59

5  p.m., we're back on the record.

6      BY MR. QUALSETH:

7      Q.   Ms. Koch, I'm sorry, during the break I

8  had some exhibits printed out for your review.

9  The first one is Exhibit 403.  Do you have Exhibit

10  403 in front of you?

11      A.   Yes, I do.

12      Q.   And Exhibit 403 is, consists of two

13  pages, is that correct?

14      A.   That's correct.

15      Q.   And I think we mentioned before KBI page

16  numbers.  There appears to be on the first page of

17  Exhibit 403 a circled 22.  Is that the KBI page

18  number?

19      A.   The 23, the number 23, is that what

20  you're asking?

21      Q.   Well, I'm talking on the first page of

22  403, exhibit, it showed -- to me, I have exhibit

23  -- as page number 22.  What does your first page

24  show?

25      A.   All right.  On Exhibit 403, the first

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# MARY KOCH

1  page I believe shows the KBI lab ERC (sic) page

2  number 22.

3      Q.   Okay.  I want to make sure we are

4  literally on the same page.

5      A.   Yes.

6      Q.   All right.  And, so, on that page number

7  it looks like that that was a blood draw, evidence

8  custody receipt of a blood draw, is that correct?

9      A.   These are items that I don't think I

10  examined.

11      Q.   Okay.  Do you see the -- you mentioned a

12  chain of custody earlier.  At the bottom it lists

13  the chain of custody as far as who received the

14  item and who they are and what date, is that

15  right?

16      MS. KLEINHAUS:  Objection to form.  You

17  can answer.

18      A.   Yes.  It doesn't say what laboratory

19  specifically or who did the testing.  It just said

20  it was transferred to the KBI lab, to the lab.

21      BY MS. KLEINHAUS:

22      Q.   Okay, and that's under items 6 through 10

23  dated March 27th, 2000, correct?

24      A.   Yes.

25      Q.   And that's a, looks like a stamp, a stamp

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

4/11/2023                                                          72

**MARY KOCH**

1    for the KBI lab?

2        A.    I'm sorry?

3        Q.    It looks like a stamp.  The other ones

4    are handwritten as far as who received what?

5        A.    Yes, yes.  That was common.

6        Q.    And, so, the purpose of transfer

7    handwritten it says lab.  Is that right?

8        A.    Yes.

9        Q.    Is that your handwriting?

10       A.    No, it is not.

11       Q.    Do you know whose it is?

12       A.    You know, I don't even know which section

13   of the laboratory, it doesn't specify that, but,

14   you know, I can -- I have a clue by seeing what

15   was submitted.

16       Q.    You said you have a clue?

17       A.    Yes.  I mean, I can see what was

18   submitted and I don't believe I had anything to do

19   with this and it may be part of Sindey Schueler's,

20   yes.  This is Sindey Schueler's Exhibit 404.

21       Q.    That was going to be my next question.

22   You'd mentioned Sindey Schueler earlier, is that

23   right?

24       A.    Yes.

25       Q.    What was Sindey Schueler's role at the



5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

# MARY KOCH

1   KBI lab?

2       A.   At that point she was the supervisor of

3   biology, I believe.

4       Q.   **Would she have been your boss?**

5       A.   Technically, but we worked as colleagues.

6       Q.   **Fair enough, and it was -- Exhibit 404**

7   **represents the lab report that was done on several**

8   **items, is that right?**

9            MS. KLEINHAUS:   Objection, foundation.

10  You can answer if you know.

11      A.   Apparently as, by reading the items

12  listed.

13      BY MR. QUALSETH:

14      Q.   **And that was typically done by the KBI,**

15  **is to test items and issue laboratory reports, is**

16  **that right?**

17           MS. KLEINHAUS:   Objection to form.   You

18  can answer.

19      A.   Yes.   I believe so.

20      BY MR. QUALSETH:

21      Q.   **Do you have any reason -- well, let me**

22  **back up.   Have you examined Exhibit 404?**

23      A.   Yes.

24      Q.   **Do you dispute any portion of Exhibit**

25  **404?**



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604              Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# MARY KOCH

1      MS. KLEINHAUS:  Objection, foundation,

2  calls for speculation, form as to dispute.  You

3  can answer.

4      A.   I would have to go through and, and see

5  what the results were on these cuttings, but these

6  are items examined for STR DNA analysis by Sindey

7  Schueler.

8      MR. QUALSETH:  Those are all the

9  questions I have for you right now.

10      MS. KLEINHAUS:  I don't have any follow-

11  up based on that.  So, this will conclude our

12  deposition.  You have the opportunity to review

13  the transcript.  You can't change any of your

14  substantive answers but you can just check whether

15  something was taken down wrong.  That's called

16  reserving signature, or if you trust that between

17  the video and the court reporter everything was

18  taken down then you can do what's called waive

19  signature and then you don't have to review it.

20  Would you rather reserve it or waive it?

21      THE WITNESS:  I would waive it.

22      MS. KLEINHAUS:  All right, we can go off

23  the record.

24      THE VIDEOGRAPHER:  The time is 1:06 p.m.,

25  we're going off the record.  This concludes the



5111 SW 21st Street       6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604          Suite 101                 Suite 305
785-273-3063              Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com       913-383-1131              316-201-1612

## MARY KOCH

```
 1    deposition.

 2              (THEREUPON, the deposition concluded at

 3    1:06 p.m.)

 4    .

 5    .

 6                              (WAIVED)

 7                              MARY KOCH

 8    .

 9    .

10    .

11    .

12    .

13    .

14    .

15    .

16    .

17    .

18    .

19    .

20    .

21    .

22    .

23    .

24    .

25    .
```

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

76

# C E R T I F I C A T E

**STATE OF KANSAS**

**COUNTY OF SHAWNEE**

I, Barbara J. Hoskinson, a Certified Court Reporter, Commissioned as such by the Supreme Court of the State of Kansas, and authorized to take depositions and administer oaths within said State pursuant to K.S.A. 60-228, certify that the foregoing was reported by stenographic means, which matter was held on the date, and the time and place set out on the title page hereof and that the foregoing constitutes a true and accurate transcript of the same.

I further certify that I am not related to any of the parties, nor am I an employee of or related to any of the attorneys representing the parties, and I have no financial interest in the outcome of this matter.

Given under my hand and seal t... 20th day of April, 2023.



Barbara J. Hoskinson, C.C.R. No. 0434

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612