# EXHIBIT 43

16-2296   Bledsoe v. Jefferson County, et al.   05.18.23        1

1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF KANSAS
2

3    FLOYD S. BLEDSOE,

4      Plaintiff,                      Case No. 16-CV-2296-DDC-ADM

5      v.

6    JEFFERSON COUNTY, KANSAS, et al.,   Kansas City, Kansas
                                         Date:  May 18, 2023
7      Defendants.

8
     .........................
9
                TRANSCRIPT OF TELEPHONIC DISCOVERY CONFERENCE
10              BEFORE THE HONORABLE ANGEL D. MITCHELL
                   UNITED STATES MAGISTRATE JUDGE
11

12                   A P P E A R A N C E S

13   For the Plaintiff:

14   Ms. Ruth Brown
     LOEVY & LOEVY
15   311 North Aberdeen
     Third Floor
16   Chicago, Illinois 60607

17   For the Defendants
     Woods, Morgan, and Estate of
18   George Johnson:                    For Defendant Hayes:

19   Mr. Shon D. Qualseth              Mr. Vincent M. Cox
     Ms. Milesha Segun                 CAVANAUGH, BIGGS & LEMON, PA
20   OFFICE OF THE KANSAS              3200 Southwest Huntoon
     ATTORNEY GENERAL                  Topeka, Kansas 66604
21   120 Southwest 10th Avenue
     Second Floor
22   Topeka, Kansas 66612

23

24   _____
     Proceedings recorded by digital recording, transcript produced
25              by computer-aided transcription.

1               P R O C E E D I N G S

2          THE COURT:  Good morning.  We're here today in Case

3    No. 16-2296, Floyd Bledsoe as plaintiff versus Jefferson

4    County, Kansas, et al., as defendants for a discovery

5    conference.

6          Will counsel please state their appearances for the

7    record beginning with counsel for Plaintiff Bledsoe?

8          MS. BROWN:  Yes, Your Honor.  Ruth Brown for the

9    plaintiff.

10         THE COURT:  Very good.  And for the KBI defendants?

11         MR. QUALSETH:  Your Honor, Shon Qualseth and Milesha

12   Segun.

13         THE COURT:  Okay.  And for Defendant Hayes?

14         MR. COX:  Your Honor, Vincent Cox.

15         THE COURT:  All right.  Do we have anyone else on the

16   line?  Hearing none, okay, let's proceed then.

17         Okay.  Well, just by way of background, just let me

18   state that my chambers received an e-mail from Ms. Brown it

19   looks like on Monday, the 15th requesting a discovery

20   conference pursuant to Local Rule 37.1 to address a discovery

21   dispute involving the KBI defendants' objections to responding

22   to certain requests for admissions and interrogatories.

23         And so after receiving that request, I did set this

24   for a discovery conference, and I also asked the parties for

25   copies of the discovery requests at issue.  As I understand

16-2296   Bledsoe v. Jefferson County, et al.   05.18.23      3

1    it -- and I have those before me.

2         As I understand it, we have the responses and

3    objections to plaintiff's interrogatories to the Estate of

4    George Johnson as well as -- the first set of interrogatories

5    to George Johnson and the objection and responses to the second

6    set of interrogatories to Morgan and Wood, as well as a set of

7    requests -- first set of requests for admissions to all three

8    of the KBI defendants.

9         And so I have those before me, and so I have reviewed

10   those, and so why don't you take it from here, Ms. Brown, and

11   let me know how I can help.  And we can start with the

12   interrogatories to George Johnson.

13        MS. BROWN:  Certainly, Your Honor.  Thank you.  And so

14   the KBI defendants have objected to all of the discovery

15   beginning with the interrogatories --

16        THE COURT:  Yeah.

17        MS. BROWN:  -- to the Estate of George Johnson.  We

18   served only a total of ten interrogatories on the estate in an

19   eight-figure case alleging serious constitutional violations.

20   So we've been extremely judicious, and the arguments that these

21   interrogatories are burdensome or disproportionate I think is

22   therefore incorrect.

23        And in addition, since George Johnson is deceased, we

24   can't depose him, so the argument that we can't -- we should

25   have obtained this information through deposition is also I

16-2296   Bledsoe v. Jefferson County, et al.   05.18.23      4

1    think not tenable.  The interrogatories are an appropriate and

2    perhaps the only way to get information about the positions

3    that George Johnson's estate will take at summary judgment and

4    trial.  And, you know, the first four interrogatories, one

5    through four are contention interrogatories about central

6    issues in the litigation, and they're appropriate under the

7    applicable precedents.

8          We waited until the end of discovery to serve them.

9    Sometimes courts have deemed such requests premature.  We asked

10   only for material facts in evidence, not all facts in evidence.

11   We targeted these contention interrogatories towards specific

12   critical issues in the case, so they're not asking for an

13   overwhelming amount of materials or the entire defense case.

14         And, you know, these requests are actually directly

15   analogous to contention interrogatories served on us by the KBI

16   defendants which we answered in good faith.  So I mean, I can

17   stop there for a second, but I think unless the court wants me

18   to continue through the interrogatories, I think the contention

19   interrogatories are -- I just don't see the objection.

20         THE COURT:  Okay.  Let's start first with the

21   contention interrogatories because those are at issue in the

22   Estate of George Johnson, and those are essentially -- well,

23   let me turn -- let me talk to Mr. Qualseth.

24         What -- I mean, I understand that you're just

25   saying -- I understand that KBI defendants' position is we

1    shouldn't have to answer any of this stuff because it's just

2    too much work.  I mean, is that essentially the objection,

3    Mr. Qualseth?

4         MR. QUALSETH:  Well, that's just part of it.

5    Ms. Brown is correct in that we can't question George Johnson

6    about any of this case without some sort of seance, but, you

7    know, all of these issues have been asked of all of -- almost

8    all of the defendants.  For example, I know Jim Woods and Terry

9    Morgan had been asked in your professional opinion is there

10   probable cause to support X-Y-Z, and they've answered those

11   questions.

12        The other defendants have also answered those types of

13   questions.  It's just -- these interrogatories after 15

14   depositions have been taken and plaintiff has had the

15   opportunity to question all the defendants and several other

16   witnesses about all sorts of matters in the case, it's just

17   cumulative and it's unreasonably so.

18        To keep -- I'm not aware of any case that has said

19   that a defendant has to keep answering questions over and over

20   and over yet again.  You know, it's -- I mean, the horse is

21   dead; let's quit beating it.

22        And the contention interrogatories that the KBI sent

23   to plaintiff was done probably, you know, two years ago, before

24   any deposition had been taken.  So now we're sitting here

25   after -- after the depositions have been taken, and I don't

1    think it's proper for plaintiff to have to know every single

2    point of our summary judgment or trial strategy.  I just don't

3    think that's appropriate.  I don't think the benefit is -- I

4    think the benefit of answering these is nonexistent compared

5    to, you know, proportionality of any sort of chance of getting

6    some information that hasn't been answered before.

7              THE COURT:  Well, let me get to a more -- a procedural

8    point in terms of resolving that issue, and that is this case

9    is very old and we need to move it forward, and you all have a

10   discovery deadline coming up of May 31st, and so if this issue

11   goes to briefing, by the time you get all the briefing done,

12   we're going to be at the pretrial order, pretrial conference,

13   et cetera, et cetera.

14             I'm inclined to take all of these matters up today on

15   an oral motion to compel and just get them decided so that you

16   all can go forward.  And so unless anybody sees a problem with

17   that, I think that's probably the most efficient way to get

18   these issues resolved, and I think we can actually do that

19   fairly expeditiously and so -- without having to drag this

20   issue out through briefing.

21             And so thoughts on that, Ms. Brown?  Would you like to

22   make an oral motion to compel the KBI defendants to respond to

23   first the interrogatories to the Estate of George Johnson?  And

24   if so, we can go through those one by one, and I can -- we can

25   discuss my ruling.

1          MS. BROWN:  Yes, Your Honor.  I'm happy to do that.

2     My only question is if the court is going to -- if it would be

3     helpful for the court to see authority on any of these

4     interrogatories, I'd be happy to submit something in writing.

5          THE COURT:  Nope.  Nope.  Nope.  Nope.  I don't need

6     it.  I was a litigator for 20 years and dealt with issues far

7     more complex than this one, so...

8          MS. BROWN:  Wonderful.

9          THE COURT:  Turning to the first set of

10    interrogatories, the contention interrogatories which are 1, 2,

11    3, and 4, I think they are fair game.  I don't -- it's

12    immaterial frankly how many depositions -- Mr. Qualseth, I

13    understand your point, but it's frankly immaterial how many

14    depositions have been taken in the case.  There's a reason the

15    federal rules provide for both interrogatories and depositions,

16    and contention interrogatories are a key part of that.  They're

17    not at all unusual.  There are important things sometimes for a

18    party to know, and if I were in Ms. Brown's position, I would

19    probably want to know some of the things that she's asking here

20    as well.  So I think they are fair game.

21          I am going to modify them slightly.  I don't think

22    that they need to be framed in a way of whether or not the

23    defendant is going to contend these positions at summary

24    judgment or trial, but rather simply do you contend that

25    plaintiff committed the Arfmann murder, was an accomplice or

1    accessory, or assisted in concealing the murder in anyway and

2    in essentially to require the defendants to state their

3    principal and material fact in support of that contention.

4          So I am going to grant the motion to compel as to

5    issues -- as to Interrogatories No. 1, similarly as to 2, 3,

6    and 4, and I'll issue a written order that modifies these, but

7    I don't think that -- once we get into documentary and

8    testimonial evidence, et cetera, et cetera, I think that's

9    getting a little bit into too much minutia, and whether or not

10   they're going to make these contentions at summary judgment or

11   trial also I think is a little bit too much minutia.

12         But I do think Ms. Brown is entitled to know the

13   principal and material facts in support of any contention by

14   the KBI defendants as to these issues, and I don't think that

15   those are at all too burdensome to answer, particularly when

16   the case law is clear in this district that the principal and

17   material facts as to contention interrogatories are completely

18   proper and appropriate.

19         Mr. Qualseth, I think you need to provide your

20   position -- the Estate of George Johnson's positions on those

21   issues.

22         Is there anything we need to address as to those first

23   four?  If not, we'll move on to the request for admissions.

24         MS. BROWN:  Not from plaintiff, Your Honor.

25         THE COURT:  Okay.  Mr. Qualseth, anything from --

1          MR. QUALSETH:  No.  No, Your Honor.  I understand.

2          THE COURT:  Okay.  And then the next set of

3    interrogatories is numbers 5, 6, 7 -- I think -- but looks like

4    5 and 6 appear twice, 5, 6 and 7.  They look like they're

5    numbered like there's two number fives and two number sixes and

6    then there's seven; is that correct, Ms. Brown?

7          MS. BROWN:  That's correct.  I apologize for the

8    misnumbering.  I think if we refer to them as Interrogatories 5

9    through 9, and the last one we can refer to it as No. 10.  That

10   would make sense.

11         THE COURT:  Okay.  Just because I'm looking at what

12   I'm looking at, I'll go with 5, 6, and then the second 5 and

13   the second 6 and then 7.

14         I think I'm going to deny the motion to compel as to

15   those interrogatories because they are -- because each of them

16   refers to multiple denials of requests for admission, and so

17   they contain multiple discreet subparts that I do think are not

18   only do they exceed the number of interrogatories allowed

19   because of the multiple subparts, but I also think that they're

20   unreasonably burdensome and not proportional to the needs of

21   the case.

22         Moving on to the last one, which is number eight --

23         MS. BROWN:  I'm sorry --

24         THE COURT:  Oh.

25         MS. BROWN:  I'm sorry, Your Honor.  May I be heard on

1    that issue?

2            THE COURT:  Sure.

3            MS. BROWN:  Okay.  Regarding the request for admission

4    and these associated interrogatories, you --

5            THE COURT:  Why don't -- I tell you what, Ms. Brown,

6    why don't we do this:  Why don't we jump next to the request

7    for admissions because that's going to tie back to the

8    interrogatories concerning the request for admissions.

9            Okay?

10           MS. BROWN:  Yes.

11           THE COURT:  I understand the defendants' objection to

12   these requests for admissions.  And do we also want to take

13   that up -- issue up today?  In other words, Ms. Brown, do you

14   wish to make a motion to compel the defendants to respond to

15   those request for admissions as well?

16           MS. BROWN:  Your Honor, my preference would be to have

17   a briefing on a very short schedule to make sure the court is

18   apprised of all the issues.  I can -- I can state them orally

19   and I'm prepared to do that now, but I guess my preference

20   would be a very short briefing schedule.

21           THE COURT:  I'm probably not going to do that simply

22   because of the timeline that we're on, so this is your

23   opportunity to either make an oral motion or no motion.

24           MS. BROWN:  Then I'll make an oral motion.  Thank you.

25           THE COURT:  Okay.  Okay.  Very well then.  Tell me why

1   you need 147 requests for admissions.

2            MS. BROWN:  Okay.  So, you know, some necessary

3   background here is that these are -- the purpose of the

4   requests to admit, our claim is to streamline and simplify the

5   issues pertaining to plaintiff's *Brady* claims for summary

6   judgment in particular.

7            By asking the KBI defendants to admit that certain key

8   exculpatory evidence that they recorded, for example, in their

9   handwritten field notes was withheld, meaning that it's not

10  anywhere in the police reports, it's not anywhere in the

11  prosecutor's file, it's not anywhere in the criminal

12  defendant's file, it's not anywhere in the Jefferson County

13  Attorney's Office's production that the parties have had for

14  years now.

15           And although there are 150 or so requests for

16  admissions, they actually relate to a much smaller number of

17  issues, something like maybe ten, perhaps 12 or so issues based

18  on an even smaller number of documents.  It's, you know, four

19  key field notes that were written by Defendant Woods, one key

20  field note written by Defendant Johnson, and, you know, maybe

21  two or three other -- other matters.

22           And so what -- as plaintiff counsel we have reviewed

23  the documents in the case and we have satisfied ourselves that

24  these admissions are true, and what we're trying to avoid is a

25  situation where we go to summary judgment and we have to prove

1   this particular field note, information in this field note is

2   not in the criminal defense attorney's files, not in the

3   prosecutor's files, not anywhere in the production that was

4   produced for the first time before KBI in the KBI subpoena

5   response.

6        And so rather than having us produce large exhibits

7   before the court, it makes a lot more sense for the parties

8   right now to figure out, you know, do the defendants dispute

9   that these core pieces of evidence are not in these particular

10  files.  You know, the plaintiff has looked through them.  It's

11  an eight-figure case, and it's I think undisputable that these

12  are true, and so there's no reason for the court, you know, to

13  have to wrestle with large exhibits at summary judgment to

14  establish what is readily ascertainable now.

15       And so it's a core function of request for admissions

16  to streamline issues for summary judgment, and, you know, it's

17  like we're trying to prove the absence of a document in a file,

18  and I think a request for admission is an appropriate way to do

19  that.

20       And so then we have these corresponding

21  interrogatories, and the purpose of those is to say --

22       THE COURT:  Well, we'll -- we'll come back to those.

23       So, Mr. Qualseth, what -- what is the defendants' -- I

24  understand you say they're too burdensome, there's 147 of them,

25  but what I'm hearing Ms. Brown say is it shouldn't be hard to

16-2296   Bledsoe v. Jefferson County, et al.   05.18.23   13

1   admit these things and just remove them from the issues in the

2   case.  So why not just do that, Mr. Qualseth?

3           MR. QUALSETH:  Well, plaintiff wants us to admit

4   things that don't exist, and those notes have been questioned

5   with Terry Morgan, with Jim Woods.  As far as the notes they've

6   gone over them extensively already, so again, you know, it's

7   just -- it's just keep asking the same thing.

8           THE COURT:  But as I'm looking at these, no one of

9   them is that difficult.  I mean, for example, let's look at 69,

10  for example.  I'm just -- I just flipped to a page.  Admit the

11  defendant did not create any police report that documented

12  information received from Camille Arfmann -- from the Camille

13  -- during the Camille Arfmann homicide investigation about a

14  statement provided by Tom Bledsoe's attorney to the effect that

15  Camille Arfmann was, quote, not killed there.

16          Why not just admit that?  Why not?

17          MR. QUALSETH:  It's been answered repeatedly.

18          THE COURT:  But my point is not just -- but why not

19  just provide an answer to the request for admission?

20          MR. QUALSETH:  Because I -- I stated the reasons for

21  my objection in my response, and I cited cases that --

22          THE COURT:  But how hard -- but how hard would that be

23  is my question?

24          MR. QUALSETH:  That one particular one, not hard.

25          THE COURT:  Yeah, yeah.

1          MR. QUALSETH:  But if we keep going on and on, all

2    these questions have been answered multiple times by multiple

3    defendants.

4          THE COURT:  Well, I'll tell you what I'm inclined to

5    do on this one is to give the plaintiff an opportunity to

6    select which of these -- subset of these -- I think -- I think

7    that any one of these in particular is probably not that

8    burdensome or unfair.  I just think 147 of them honestly is

9    just pretty ridiculous.

10         I appreciate that plaintiff may be trying to pare down

11   some issues for trial, but I think that answering 147 of them

12   in particular is burdensome at this late stage of the

13   litigation, and so what I'm inclined to do is to give you all a

14   choice of a couple things.

15         Number one, the plaintiff can either serve within a

16   day or two the number -- the number of these -- a pared down

17   number of these that the plaintiff wants answered, or if the

18   plaintiff doesn't want to do that, the defendants can choose

19   which of these they want to answer, whether that's -- whether

20   we go with 25 or 30 or something along those lines, but I think

21   that 147 is just too many particularly this late in the game.

22         And so that's what I'm inclined to do, and so with

23   that, Ms. Brown, is there a particular number of these -- I

24   know you want all 147, but you're just not going to get them,

25   and so is there a particular number of these that you think

1  would be particularly helpful to target issues that you really

2  do need clarifications to whether or not they're controverted,

3  Ms. Brown?

4          If you all can come up with a reasonable number here,

5  we'll do it.  If not, I'll just pick a number.

6          So, Ms. Brown, how many would you say?

7          MS. BROWN:  I mean, I guess I would say there -- so

8  just thinking out loud for a second, there's about ten core

9  issues, but for each issue we need to prove it wasn't in the

10  prosecutor's file, the defendant's file, or the Jefferson

11  County production, and then we also need to --

12          THE COURT:  Why not just -- why not just -- why not

13  just -- why not just say it hasn't been produced in the case?

14  Why do you need multiple requests for admissions?  What I hear

15  you --

16          MS. BROWN:  Yeah --

17          THE COURT:  -- saying is you're talking about ten

18  issues.  Why not just serve ten requests for admissions that

19  are broader and are a whole lot easier to answer?

20          MS. BROWN:  That works for plaintiff.  I'm certainly

21  happy to do that.  But it would have to be more than ten, but

22  we could do 30.  If the court prefers that method where we --

23  instead of being specific, we just say it was only produced in

24  the KBI subpoena and not anywhere else in the productions, that

25  works fine for plaintiff.  We're happy to do that.  And then we

1    can get by with 30.

2         THE COURT:  Mr. Qualseth, thoughts on that approach?

3    Wouldn't that be a lot easier to answer if there were just 30,

4    and they were only produced by the KBI?

5         MR. QUALSETH:  Less is better, sure, but the KBI

6    produced had it produced.  My client are being asked questions,

7    they don't have any of these files.  The KBI produced whatever

8    they produced.  And my clients can't vouch for what the KBI

9    produced.  They gave everything they had to the KBI when the

10   case was over.

11        THE COURT:  Okay.  So what you're saying -- so what

12   you're saying essentially is what -- what -- without -- let me

13   just summarize these at a high level.  I think what I'm hearing

14   you say, Mr. Qualseth, is what Ms. Brown, what the plaintiff

15   here is asking is for the KBI defendants to admit that no one

16   else in the case produced certain types of documents, and your

17   point is my clients don't know what everybody else produced;

18   they only know what they produced.

19        Am I accurately summarizing that argument?

20        MR. QUALSETH:  Correct.

21        THE COURT:  Ms. Brown, why should the KBI defendants

22   have to answer for what other defendants produced in the case?

23        MS. BROWN:  That's because requests for admissions,

24   unlike deposition testimony, requires the defendants to respond

25   based on all the information that not only they have themselves

1   personally but also their counsel have because they need to

2   make a reasonable inquiry.  That inquiry includes the

3   information within their counsel's possession.

4           And I think Mr. Qualseth mentioned, you know, this was

5   established in depositions, and now we just need -- the KBI

6   defendants were not able to establish it at their deposition

7   because they could say I don't know what was produced in the

8   case.  You know, it would have been a ridiculous question to

9   ask them at their deposition, but that's why it's an

10  appropriate request for admission because with the benefit of

11  their counsel and access to all the documents in the case, they

12  can confirm the absence of the documents.

13          THE COURT:  Okay.  But, Mr. Qualseth -- I mean, I

14  understand in most cases counsel would review a lot of the

15  documents in the case, but they're not required to review a lot

16  of documents some other party produced in the case.

17          I mean, Ms. Brown, you've reviewed them all, I assume

18  or your team has because you're the plaintiff.  But when you

19  have separate defendant entity groups, they're not accountable

20  for what other parties have done in the case, so I don't

21  understand why these are even requests for admissions.  You

22  have what you -- you have what you know -- what you need on

23  that; you do, Ms. Brown.

24          MS. BROWN:  Well, we're trying to reduce this to proof

25  that can be used at summary judgment, right, because we don't

1    want to put a -- a 1500-page defense file exhibit before the

2    court unnecessarily to say, you know, it's undisputed that

3    there is no -- the KBI field notes do not appear in this file

4    or the 5,000-page prosecutor's file.  You know, we're just

5    trying to get the defendants to admit these -- you know, this

6    uncontrovertible fact that these particular documents do not

7    appear in these larger files because they're going to have --

8            THE COURT:  Then the way -- (inaudible due to

9    simultaneous conversation), then the way to do that on summary

10   judgment would be -- well, let me put it this way, why don't

11   you all include some stipulations or maybe you don't want to

12   include stipulations in the pretrial order if they're requests

13   for admission.  But to me, Ms. Brown, the way you're going to

14   prove that on summary judgment is not to put in a 1500-page

15   exhibit, which I can assure you the district judge is not going

16   to want to see.

17           But just to say, you know, no one but the KBI produced

18   these files, period.  And then see who controverts it.  And if

19   you're right that nobody produced it, then nobody is going to

20   controvert it.

21           MS. BROWN:  Well, it's not exactly nobody produced it;

22   it's a *Brady* claim, so the question is what was withheld, and

23   so the way you know something was withheld is if it's not in

24   the prosecutor file, it's not in the criminal defense file,

25   it's not anywhere in the, you know, prosecutor's office

16-2296   Bledsoe v. Jefferson County, et al.   05.18.23     19

1    production.  We don't need to prove --

2           THE COURT:  So you would -- so you would say that

3    then.  You know, why wouldn't that be your fact, that it was

4    not in the prosecutor's file?

5           And then the onus -- and that would put the onus on

6    the other -- I mean, whenever you allege a negative, you can

7    allege the negative, it wasn't there.  If you have testimony on

8    that point, I don't understand why -- why there's 147 requests

9    for admission on these issues.  I mean, that's really

10   burdensome, and you're asking the KBI defendants to vouch for

11   things that aren't in their possession.  I'm just -- I -- to me

12   that seems horribly abusive.

13          MS. BROWN:  Well, these documents are in their

14   possession, and that's why we're asking them to say, look, if

15   you're going to argue that these KBI field notes are elsewhere,

16   you know, were given to the prosecutor, were given to the

17   criminal defense attorney, then show us where they were.

18          THE COURT:  Okay.  So why not serve an interrogatory

19   to that effect?

20          MS. BROWN:  That's the interrogatories that we served.

21   They were corresponding with the requests for admissions.

22          THE COURT:  Okay.

23          MS. BROWN:  And I know that they referenced multiple

24   requests for admissions within a particular interrogatory, but

25   they weren't on the same subject.

1        THE COURT:  Okay.  So why not just -- instead of

2    referring to all the requests for admissions, why not lodge or

3    serve interrogatories that target just specific issues that you

4    want to know because as written, they all address multiple --

5    they have multiple, discreet subparts.

6        MS. BROWN:  I'm happy to try to re-craft the discovery

7    in, you know, a way that makes sense.  My concern is trying to

8    avoid this untenable situation where we have to -- you know,

9    where -- I guess if the defendants are going to force us to

10   prove -- Mr. Qualseth even said that this is beaten, you know,

11   in the deposition, you know, established, and so I'm not sure

12   why -- why the defendants are allowed to avoid admitting

13   obvious admissions and forcing us to have to prove those in an

14   unnecessarily complicated way.

15       So I'm happy to figure out a way to -- maybe it would

16   make sense for the parties to discuss -- maybe we can jointly

17   discuss language for requests for admissions that would be

18   tenable to Mr. Qualseth and the number and then bring those to

19   the court.  You know, we can rework them, but I still think --

20   I still think it's important.

21       THE COURT:  Here's -- here's my ruling for today.  I'm

22   going to deny the motion to compel the KBI defendants to

23   respond to the plaintiff's first request for admission because

24   I think as currently postured, they're disproportionate to the

25   needs of the case; 147 of them are particularly burdensome,

1  particularly when -- when they're targeted to other parties'

2  productions, and so that's my ruling as to the request for

3  admission.

4       Now we can jump to the interrogatories.  Number five,

5  the interrogatory to the Estate of George Johnson Nos. 5, 6,

6  and the second No. 5 and the second No. 6 and the number seven

7  which correlate to those request for admissions, and what I

8  would be inclined to do, Ms. Brown, is to allow you to withdraw

9  those as currently written and try to reframe them in more of

10  the language that you were just using to get the admissions

11  that you need from the KBI defendants in a more efficient

12  fashion.

13       Is that something that you want to try to do?

14       MS. BROWN:  Sure.  I would be happy to do that.

15       THE COURT:  Okay.  Mr. Qualseth, do you think that

16  there's a way that those interrogatories could be asked that

17  would get a little bit more to the point of contention, like to

18  the extent that the KBI defendants are going to contend

19  whatever the issue is?  I'm wording this unartfully on the fly,

20  I realize.

21       MR. QUALSETH:  That's okay.

22       THE COURT:  There's probably a more efficient way for

23  Ms. Brown to get to what she's wanting to understand if the KBI

24  defendants are going to controvert certain things.  Is there

25  some way that you could work with her to maybe come up with a

1   more efficient way to get those questions answered for her in

2   order to trim down the issues?  Because I do think there's a

3   lot of value in terms of trimming down the issues for summary

4   judgment and trial so that you all know where there's going to

5   be areas of disagreement.

6          So thoughts on that from your perspective,

7   Mr. Qualseth, in terms of you all might be able to move those

8   issues forward a little bit more efficiently?

9          MR. QUALSETH:  I'm not sure if we can.  I hate to

10  comment on something that may come out in the future as far as

11  how the wording is.

12         I will say, if I heard correctly, Ms. Brown said that

13  the defendants were questioned repeatedly about these issues,

14  and as far as documents here or not there, and my clients, I

15  think Jim Woods and Terry Morgan said they don't know.  So I

16  don't anticipate taking any contrary stance in a motion for

17  summary judgment or at trial than what my folks testified to.

18         THE COURT:  Okay.  Okay.  What I'm inclined to do then

19  or what I'm going to do then today then is I'm going to deny

20  Ms. Brown's motion to compel on the first set of

21  interrogatories to the Estate of George Johnson as to

22  Interrogatories No. 5, 6, the second No. 5, the second No. 6,

23  and 7.  I'm going to deny that.

24         But, Ms. Brown, if you wish to, you can put together

25  five replacement interrogatories and file a motion for leave to

1    serve those out of time because we're on the -- we're beyond

2    the discovery deadline, and so if there's a more efficient way

3    that you can word those to get to what you want to get to, you

4    can file that motion, and we'll set a briefing schedule here

5    shortly where you can seek leave to serve those out of time.

6           And I'll set a very abbreviated briefing schedule for

7    Mr. Qualseth to be able to respond to that and then give you a

8    reply, and we'll get it ruled on very quickly so you all can

9    have -- and I will say that if I order -- if I allow those to

10   be served, I'm going to require the KBI defendants to respond

11   to them in a very short turnaround, and so it's up to you all

12   whether you want to spend your time briefing or just answer

13   them.  But either way, it's going to get done very quickly.

14          MR. QUALSETH:  Understood.

15          THE COURT:  So, Ms. Brown, with that, how soon would

16   you want to file a motion for leave to serve replacement

17   interrogatories?

18          MS. BROWN:  We can do that by Tuesday.

19          THE COURT:  Okay.  Well, I just lost my network

20   connection.  Let me pull up a different calendar on my phone.

21          And you'll attach the proposed interrogatories, so

22   file that motion for leave to serve interrogatory --

23   replacement interrogatories out of time by Tuesday, May 23rd.

24   And how many pages of briefing do you need on that?  I usually

25   do 7 or 10.  Would seven be enough, Ms. Brown, and attached the

1    proposed interrogatories?

2         MS. BROWN:  Yes, Your Honor.

3         THE COURT:  Okay.  And then, Mr. Qualseth, how soon

4    can you file your response and is seven pages enough?

5         MR. QUALSETH:  Seven pages is plenty.  By the 30th, a

6    week after the motion.

7         THE COURT:  Can we do the 26th?

8         MR. QUALSETH:  The 26th?  Let me see.

9         THE COURT:  Yeah.

10        MR. QUALSETH:  Yeah, I can make that work.

11        THE COURT:  Okay.  And then any reply by the plaintiff

12   will be due Tuesday, the 30th.  No more than two pages.  And

13   I'll try to get that issue ruled -- I'll aim to get it ruled on

14   by Friday, the 2nd, and if I do allow them, Mr. Qualseth, I'll

15   probably have like a seven-day response time.

16        MR. QUALSETH:  Understood.

17        THE COURT:  Okay.  Okay.  So I'll issue an order

18   memorializing those deadlines because I know you all have your

19   pretrial order coming up, but I want to make sure everybody has

20   what they need for that.

21        With that, let's turn to Interrogatory No. 8 in the

22   Estate of George Johnson.  It says if you will contend at

23   summary judgment or trial that there are any material errors in

24   the following transcription of the field notes of KBI subpoena

25   1628 to 1631 including any reference to illegible words or

1   phrases, please identify those errors with specificity and

2   provide your alternative transcription.

3          I mean, to this one -- to me I thought this one seemed

4   very straightforward and easy to answer.  And so I guess,

5   Mr. Qualseth, I understand your global objection to answering

6   all of them, but is there a reason why this one in particular

7   is particularly problematic?

8          MR. QUALSETH:  This one again, it was discussed at

9   several depositions.  It was asked of several witnesses what

10  the wording and what it appears to say.  I think the responses

11  from the defendants and the other parties was, well, that looks

12  right, but as far as making out whatever the handwriting is,

13  none of my folks are handwriting experts.  It speaks for

14  itself.  It says what it says.  And, you know, there's several

15  spots where it says illegible, and I don't know if that's true,

16  but I know it's been asked about.  It's in the exhibit that

17  plaintiff uses repeatedly (inaudible).

18         THE COURT:  Okay.  But if I were Ms. Brown, I would

19  want a binding -- I mean, obviously -- I don't know -- I would

20  assume these particular field notes are important in the grand

21  scheme of the case, and if I were Ms. Brown, I would want to

22  know going into trial if there's going to be some argument that

23  these are somehow inaccurate.  I mean, I think that's a fair

24  question.

25         And so I don't understand why you wouldn't just

1    provide a response to that, Mr. Qualseth.  Can you help me

2    understand?

3        I understand there's been deposition testimony on

4    that, but why not just provide a response that -- (inaudible)

5    where you're going to argue these are -- where the KBI is going

6    to argue these are inaccurate?

7        MR. QUALSETH:  Well, I mean, I think my client

8    testified about the note repeatedly, and I'm not going to -- I

9    mean, at summary judgment or at trial, again I'm not going

10   to -- we're not going to make the argument contrary to what my

11   folks testified to.  So they've got --

12       THE COURT:  So why not just provide a response that

13   summarizes their testimony?  I've done that a million times as

14   a lawyer.  If that's going to be your position at trial, why

15   not provide an interrogatory response that summarizes that?

16       And I guess I just don't understand this resistance to

17   contention interrogatories.  They're very common.  They're very

18   useful to (inaudible) issues at trial and clarify the issues,

19   and I don't understand why you wouldn't just provide that.

20       MR. QUALSETH:  I understand, Your Honor, that point,

21   but again, my global objection is I thought these

22   interrogatories and requests for admissions on the whole were

23   abusive and unnecessary.  That's why.

24       THE COURT:  Okay.  Ms. Brown, anything further on the

25   last interrogatory?

1        MS. BROWN:  Just that this is also going to streamline
2   matters for the court at summary judgment because we're going
3   to be putting this note -- field note, four-page handwritten
4   field note before the court, and, you know, we'd prefer to iron
5   out if there's any differences in the transcriptions so the
6   court doesn't have to look at the handwriting either, so I
7   think it's appropriate.
8        And one last thing I'll say is this was a field note
9   by George Johnson, who's deceased, and so there was no
10   deposition testimony that read the report -- you know, read his
11   handwriting out loud.  That was not available to the plaintiff,
12   and the only way to get this information is an interrogatory to
13   his estate.
14        THE COURT:  Okay.  Okay.  All right, well, I am going
15   to grant the motion to compel as to Interrogatory No. 8 for the
16   Estate of George Johnson.  I am going to clarify, I'll include
17   language in my order that clarifies this, but essentially
18   rather than saying if you will contend at summary judgment or
19   trial, I don't think they have to specify whether they're going
20   to contend at summary judgment or trial; they just have to
21   state the position -- what the position of George Johnson is
22   going to be on this issue, and so I'll word it to say that to
23   the extent you contend there are material errors in the
24   following transcription, et cetera, et cetera.
25        And so I will clarify that in an order that you all

1   will get shortly after we get done today.  And does that take

2   care of everything with respect to the interrogatories to

3   George Johnson's estate, Ms. Brown?

4           MS. BROWN:  Yes, Your Honor.

5           THE COURT:  Okay.  Let's move on then to the second

6   set of interrogatories to Terry Morgan and Jim Woods, and I

7   noticed that on this one the interrogatories themselves were

8   numbered 1 through 9, but then the defendants' objection

9   targeted -- began with 2 and then 3 through 8, so I wasn't sure

10  if there were issues regarding -- well, let's just start with

11  issue number -- with No. 1.

12          Are there disputes on that, Ms. Brown?

13          MS. BROWN:  I'm sorry, Your Honor.  I'm just pulling

14  them up.  I apologize, if I could just have a moment.

15          THE COURT:  Sure.

16          MS. BROWN:  Okay.  So, yeah, Request No. 1, that's the

17  one that's analogous to -- yeah, they were a little bit out of

18  order, but this is identical to one of the requests we talked

19  about for the Estate of George Johnson.

20          THE COURT:  Right.  And so -- and so -- well, first,

21  for the record let me just say do you also wish to make a

22  motion to compel the defendant to respond to these

23  interrogatories, Ms. Brown?

24          MS. BROWN:  Yes, Your Honor.

25          THE COURT:  Okay.  So, Mr. Qualseth, any different

1    argument on Request No. 1 in the second set of interrogatories

2    to Morgan and Woods, any different considerations then as to

3    the first set, 1 through 4 in the interrogatories to the

4    Johnson estate?

5         MR. QUALSETH:  Nothing to add.  Same objection.

6         THE COURT:  Okay.  My ruling will be the same on that

7    one then, and I will again issue an order that clarifies how

8    I'm going to modify that language somewhat to be a little bit

9    less -- to be a little bit more proper and in line with the

10   local rules.

11        And then when we get to the number -- or Interrogatory

12   No. 2, which for punitive damages purposes, estimate your final

13   worth, describe how that net worth has been calculated, et

14   cetera, et cetera.

15        I think I understand why you want that information,

16   Ms. Brown, but I want to give you a chance to illuminate that

17   issue.

18        MS. BROWN:  Sure.  And I think that there's been no

19   dispute that the information is relevant, and the reason it's

20   relevant is it's relevant for punitive damages purposes.  If --

21   so that the jury can evaluate the scope -- you know, the scope

22   of an appropriate punitive damage of the award at trial.

23        And so the defendants have -- it's true they have

24   produced some documents on this issue and it is true that there

25   has been some deposition testimony on this issue, but I think

1   what plaintiff disagrees with is that those sources of

2   information have fully answered the interrogatory because, for

3   example, at the deposition, you know, certain defendants were

4   able to say, you know, I don't know or I don't remember to many

5   of plaintiff's questions, and in interrogatory response, you

6   know, they're required to conduct a diligent investigation, and

7   to the extent they want to incorporate any of their testimony

8   or any of the documents, they can do so.

9         THE COURT:  Okay.  Mr. Qualseth, I take it that --

10  from the gist of the KBI defendants' response to this is that

11  they said we've already produced some documents, financial

12  statements, (inaudible) depositions to answer questions in your

13  depositions, and so therefore you don't believe you should have

14  to answer this; is that correct, Mr. Qualseth?

15        MR. QUALSETH:  That's correct.  We've provided deeds

16  to their homes, bank statements, and financial companies that

17  are holding their retirement accounts and giving totals on

18  those.  I just don't know -- I'm at a loss as far as what more

19  that needs to be done here.

20        THE COURT:  Okay.  Well, I'm going to grant the motion

21  to compel as to this interrogatory.  Again, there's nothing in

22  the federal rules that says that just because you give

23  information at a deposition or in a document production that

24  you don't have to also answer interrogatories regarding that

25  issue, and so I think this is fair game, and so I will grant

1    the motion to compel.

2         Mr. Qualseth, if you want to, you know, provide an

3    answer in a little more abbreviated fashion, you're certainly

4    welcome to provide a Rule 33(d) response that refers to the

5    documents and provide an appropriate narrative so that there's

6    appropriate, you know, fulsome information here.  Obviously you

7    can refer to those documents, but I think that Ms. Brown is

8    entitled to a full answer to this one.

9         And so the next set of interrogatories is 3, 4, 5, 6,

10   7, and again, these are interrogatories to the effect that if

11   you deny the groups' request for admission, essentially

12   identify why, I'm highly summarizing here, but for the same

13   reason that I denied the motion to compel as to similar

14   interrogatories to the Estate of George Johnson, I'm inclined

15   to deny the motion to compel as to those five interrogatories.

16        But again, Ms. Brown, allow you the opportunity to

17   also serve replacement interrogatories or file a motion for

18   leave to serve replacement interrogatories as to these

19   particular interrogatories.  Will that work in terms of moving

20   that issue forward, Ms. Brown?

21        MS. BROWN:  That's understood, yes, Your Honor.  I

22   think it makes sense (inaudible due to simultaneous

23   conversation) in the same way as the other ones.

24        THE COURT:  Okay.  Okay.  Mr. Qualseth, any further

25   questions on that issue?

1          MR. QUALSETH:  Not on that issue.  I do want to go
2     back to No. 2 in the financial information.  I may need some
3     time to get my clients to come up with that.  Can we have
4     30 days to respond to that?
5          THE COURT:  Well, you've already had 30 days to
6     respond to that and you haven't.  So, no, not another 30 days.
7     We've got to -- you know, the pretrial order is due less than a
8     month -- less than 30 days from now, and so how can we move
9     that forward quicker?  I'm happy to give you a little bit more
10    time, but how much more time do you need, Mr. Qualseth?
11         MR. QUALSETH:  I just don't know how much -- for Jim
12    Woods, his son keeps track of all his accounts at this point.
13    I mean, I'll do the best I can, but I'll try to get it in two
14    weeks.
15         THE COURT:  Okay.  I'll give you 14 days.  I think
16    actually the deadlines are helpful because you can go to your
17    client and say the court ordered us to produce these -- you
18    know, provide this information within 14 days.
19         So I'm not trying to be mean; I just really do want to
20    keep this moving so that you all will have the information you
21    need to assemble a meaningful pretrial order by the current
22    deadline to keep this case moving.  So we'll go with 14 days
23    then on that one.
24         Okay?  Okay.  Making myself a note on that.  And
25    actually all of these interrogatories where I'm compelling the

1    defendants to provide a response, I'll plan to do 14 days from

2    today unless for some reason that doesn't work for you,

3    Ms. Brown.

4              MS. BROWN:  That's fine, Your Honor.

5              THE COURT:  Does that work?  Okay.

6              Anything further on that one, Mr. Qualseth?

7              MR. QUALSETH:  No, Your Honor.

8              THE COURT:  Okay.  Number eight, that's another

9    contention interrogatory as to whether or not the plaintiff has

10   committed the Arfmann murder.  My ruling on that one would be

11   the same as to the ruling on the first interrogatory to the

12   Estate of George Johnson.

13             Do we need to address anything further on that,

14   Ms. Brown?

15             MS. BROWN:  No, Your Honor.

16             THE COURT:  Mr. Qualseth?

17             MR. QUALSETH:  No, Judge.

18             THE COURT:  Okay.  And lastly as to Interrogatory No.

19   9, in the second set of interrogatories to Jim Woods and Terry

20   Morgan, my ruling on that would also be the same as to the last

21   interrogatory to Johnson.

22             Is there anything further we need to address on that,

23   Ms. Brown?

24             MS. BROWN:  No.  Thank you.

25             THE COURT:  Okay.  Anything further, Mr. Qualseth?

1          MR. QUALSETH:  No, Your Honor.

2          THE COURT:  Okay.  Okay.  Well, with that then I think

3    that takes care of everything.  I will get a written order out

4    along the lines of what we've discussed.  With that, is there

5    anything further that we need to take up today on behalf of the

6    plaintiff, Ms. Brown?

7          MS. BROWN:  No, Your Honor.  Thank you.

8          THE COURT:  Okay.  Anything further, Mr. Qualseth?

9          MR. QUALSETH:  No, Judge.

10          THE COURT:  Okay.  Well, I appreciate that you all

11    have been very busy in this case, and you're rounding the curve

12    to moving to the next stage of the case in terms of getting the

13    pretrial order entered and then moving on to summary judgment.

14          And so thank you all for your good work and attention

15    to this case.  I know it's old and we need to keep it moving,

16    and I'm sure we're all I'm sure doing what we can to make that

17    happen.  So with that it was good to speak with you all today.

18          And, Mr. Cox, I haven't given you an opportunity to

19    speak at all.  Is there anything that you want to weigh in on

20    here?

21          MR. COX:  No, Judge, not today.

22          THE COURT:  Okay.  Very good then.  With that, I will

23    get an order out along the lines of what we've discussed.

24          And the court stands adjourned.  Thank you everyone.

25          (The proceedings were adjourned.)

```
 1                    C E R T I F I C A T E

 2       I certify that the foregoing is a true and correct

 3   transcript from the digital record of proceedings as understood

 4   and transcribed from the digital recording in the

 5   above-entitled matter.

 6       SIGNED 22nd of May, 2023

 7

                         /s/Danielle R. Murray
 8                       DANIELLE R. MURRAY, RMR, CRR
                         United States Court Reporter
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```